**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CAMBRIA COMPANY LLC,

        Plaintiff,

        v.

HIRSCH GLASS CORP.
d/b/a SPECTRUM QUARTZ,

        Defendant.

Civil Action No. 21-10092 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court for the construction of claims in Plaintiff Cambria Company LLC's ("Cambria") patents, U.S. Patent No. 9,718,303 ("'303 Patent") (ECF No. 1-1), U.S. Patent No. 9,993,942 ("'942 Patent") (ECF No. 1-2), and U.S. Patent No. 10,300,626 ("'626 Patent") (ECF No. 1-3). Defendant Hirsch Glass Corp. ("Hirsch") challenges those patents and raises several defenses against the underlying infringement claim. The Court, having carefully considered the parties' submissions and having conducted a *Markman* Hearing on May 16, 2022, provides its constructions as set forth below.[1]

**I.   BACKGROUND**

    This case involves a patent dispute between two U.S. companies, Cambria and Hirsch, centered on engineered quartz used in the creation of designed interior home and business surfaces

---

[1] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).

such as countertops, wet bars, vanities, and fireplaces. (*See* Compl. ¶¶ 2, 3 11, ECF No. 1.) Cambria manufactures and designs a variety of quartz products. (*Id.* ¶ 11.) Although manmade, Cambria began designing quartz countertops that resembled natural quarried stones after 2011. (*Id.* ¶ 15.) Hirsch is also involved in the manufacturing and sale of quartz products. (*Id.* ¶ 47.) In February 2021, Cambria brought a civil action against Hirsch for infringement of three utility patents—the '303 Patent, '942 Patent, and '626 Patent (the "Asserted Patents").[2] (*Id.* ¶ 1.) Further, beyond infringing products themselves, Cambria alleges that Hirsch's processes for making the products also infringes on its patents. (*Id.*)

As mentioned, the claimed inventions are quartz surface products installed in homes and businesses as countertops, floor tiles, vanities, fireplace surrounds and shower surrounds. (Pl.'s Opening Br. 1, ECF No. 61.) The '303 Patent, '942 Patent, and '626 Patent are related patents sharing a common specification with the filing date of August 19, 2014, under the America Invents Act. (*Id.* at 3 (referencing Leahy-Smith America Invents Act, Pub. L. No. 112-29 (125 Stat. 284) (Sep. 16, 2011)).) The '303 and '626 patent claims pertain to slab products while the '942 patent claim focuses on the process of making the products.[3] (*Id.*) The terms at issue in this instant matter relate to claims 1, 3, and 13 of the '303 Patent; claims 1 and 12 of the '626 Patent; and claims 2, 4, 20, and 29 of the '942 Patent. (*Id.* at 12, 18, 19, 26.)

---

[2] The Asserted Patents in the Complaint also include five design patents, but only the three utility patents are at issue at the claim construction stage. (Compl. ¶ 1.) The underlying products associated with the Asserted Patents include the following: "Annicca, Bentley, Brittanicca, Brittanicca Gold, Brittanicca Warm, Clairidge, Clareanne, Clovelly, Delgatie, Ella, Gladstone, Golden Dragon, Ironsbridge, Levven, Mersey, Oakmoor, Portrush, Queen Anne, Roxwell, and Skara Brae." (Compl. ¶¶ 25, 28, 31.)

[3] As detailed in the '942 Patent, Cambria manufactures its slabs through the process of filling vertical slab molds with a variety of different mineral mixes and then adjusting the slab molds horizontally before vibrating and compacting the different mineral mixes into a hard surface. (Compl. ¶ 75.)

2

Originally filed in the Eastern District of Virginia (ECF No. 1), the case was transferred to this District in April 2021 (ECF No. 34). Several months later, after disagreeing over the construction of certain patent claims, the parties requested judicial resolution. (ECF No. 56.) Comprehensive briefing and a nearly four-hour *Markman* hearing followed. (ECF Nos. 59, 60, 61, 64, 65, 77.) Now before the Court are the parties' disputed claims and proposed constructions.

## II. LEGAL STANDARD

### A. Claim Construction

Claim construction is typically a threshold issue the Court must address before analyzing either infringement or invalidity. Claim construction is a question of law that the Court decides, not a jury. *See Markman*, 517 U.S. at 391. "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks and citation omitted). "District courts generally do not have a duty to construe claim terms whose meaning the parties do not dispute." Ch. 3, III Annotated Patent Digest § 3:11 (Apr. 2022).

"[W]ords of a claim 'are generally given their ordinary and customary meaning.'" *Phillips*, 415 F.3d at 1312 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question [(the "POSA")] at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Id.* at 1313 (citations omitted). A POSA is a hypothetical person who "is deemed to [have] read the claim term not only in the context of the particular claim in which the disputed term appears, but [also] in the context of the entire patent, including the specification." *Id.*

For claim construction, courts begin with the "intrinsic evidence of the patent—the claims, the specification, and the prosecution history—and may require consultation of extrinsic evidence

3

to understand the state of the art during the relevant time period." *Horizon Pharma Ir. Ltd. v. Actavis Lab'ys, UT, Inc.*, No. 14-7992, 2016 WL 4408990, at *2 (D.N.J. Aug. 17, 2016) (citing *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331-32 (2015)). The specification from which a technical term arose remains the best source for understanding it, "informed, as needed, by the prosecution history." *Phillips*, 415 F.3d at 1315 (internal quotation marks and citation omitted). Intrinsic evidence also constitutes any "prior art cited in a patent or cited in the prosecution history of the patent." *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1311 (Fed. Cir. 2005) (citations omitted).

Courts may also consider extrinsic evidence; however, that evidence "is less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (internal quotation marks and citation omitted). Should the intrinsic evidence alone illustrate the meaning of the claim limitation, "it is improper to rely on extrinsic evidence other than that used to ascertain the ordinary meaning of the claim limitation." *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp.*, 262 F.3d 1258, 1268-69 (Fed. Cir. 2001) (citation omitted). Extrinsic evidence may not be used to vary or contradict the claim language, either. *See Markman*, 52 F.3d at 980. Instead, in limited circumstances, it may provide context to "explain scientific principles, the meaning of technical terms, and terms of art that appear in the patent and prosecution history." *Id.* Finally, extrinsic evidence "ensure[s] that the court's understanding of the technical aspects of the patent is consistent with that of a [POSA]." *Phillips*, 415 F.3d at 1318.

### B. Indefiniteness

A patent may be invalidated for indefiniteness "if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, [a POSA] about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). It is the POSA's viewpoint that provides the lens from which courts

4

view definiteness, and more specifically that viewpoint at the "time the patent was filed." *Id.* at 908 (citation omitted). Patents must be precise enough to make it clear to the public what is claimed, but a definiteness analysis permits a "modicum of uncertainty" because of the inherent limitations of language. *Id.* at 909 (citations omitted). A patent is presumptively valid, and to demonstrate indefiniteness, an allegedly infringing party must show "by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008); *N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*, 7 F.3d 1571, 1579 (Fed. Cir. 1993).

### III. **DISCUSSION**

For the claim construction before the Court, the parties raise three separate issues. *First*, what is the applicable definition of a POSA? *Second*, may Hirsch successfully raise the defense of indefiniteness at the claim construction stage on the patents before the Court? *Third and finally*, how should the Court construct the six different terms or phrases at issue here? The Court will address each of these questions in turn.

#### A.     Person of Ordinary Skill in the Art

Before a court can review the disputed claim terms and phrases, it must determine "the level of skill that a POSA possessed at the time of the invention." *Supernus Pharm., Inc. v. Actavis, Inc.*, No. 14-6102, 2016 WL 901837, at *2 (D.N.J. Mar. 9, 2016) (citing *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1240 (Fed. Cir. 2007)). A POSA is a "person of ordinary skill in the art," and of "ordinary creativity" who is "presumed to be one who thinks along the line of conventional wisdom in the art and is not one who undertakes to innovate." *Id.* (citations omitted). At bottom, a POSA is a hypothetical person that is presumed proficient in the subject matter that underlies the patent or patents.

To start, relevant to the Asserted Patents, the parties define a POSA similarly. They primarily disagree on the specificity of the POSA's educational level and the years of work experience required. Cambria argues that it is unnecessary to define the level of ordinary skill in the art at this stage, given the "straightforward nature of the claim language" in this matter. (Pl.'s Opening Br. 11.) But in the alternative, Cambria submits that a POSA for the Asserted Patents would include a person with (1) "at least a bachelor's degree in mechanical engineering, chemical engineering, materials science, materials engineering, or a related field," and (2) "at least two years of work experience or the equivalent graduate study in the design or manufacture of composites with thermosetting resins." (*Id.*) In contrast, Hirsch proposes a "broader definition of relevant graduate studies or work experience."[4] (Def.'s Resp. Br. 3.) To be sure, the parties agree that the distinction between their proposed definitions is so minimal that it would not have any material impact on the outcome of this claim construction.[5] (*Id.*) That is, the parties are on the same page but for a negligible discrepancy.

Even if the definition adopted does not necessarily affect construction of the disputed claim terms, and even if the parties concede that the Court's decision to agree with either party's proffered POSA is immaterial, the Court nonetheless will define the POSA in the context of the Asserted Patents. *See Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, No. 10-1376, 2012 WL 2358102, at *4 n.3 (S.D. Ind. June 20, 2012) (finding that determining a POSA was necessary to

---

[4] Hirsch proposes the graduate studies or work experience should include the "fabrication of composite products . . . using pigments, particulate material, and resin binders." (Def.'s Resp. Br. 3, ECF No. 64.)

[5] At the *Markman* hearing, the Court asked the parties whether "the distinction between the way that [the parties] view[] the POSA . . . has any appreciable impact on the Court's analysis." (Markman Hr'g Tr. 24:13-15, ECF No. 78.) Hirsch "agree[d] they seem very similar" and could not articulate any distinction; Cambria also agreed that there was no "material impact on claim construction." (*Id.* at 24:16-25.)

6

resolve the dispute despite both parties agreeing that the issue was not dispositive with respect to claim construction). The Court considers the following factors in determining the POSA: "(1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field." *Env't Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 696 (Fed. Cir. 1983) (citation omitted). Not all listed factors may be relevant and "one or more of these or other factors may predominate in a particular case." *Id.* at 696-97.

On review of the Asserted Patents, the Court finds that a simplified POSA definition is adequate. A simple POSA definition suffices when the inventions are not highly technical or complex. *See Cap Exp., LLC v. Zinus, Inc.*, No. 16-371, 2019 WL 982883, at *3 (C.D. Cal. Jan. 24, 2019) (agreeing that a patent for a bed did not require the POSA to possess a high level of skill or extensive academic credentials); *Green Pet Shop Enters., LLC v. Comfort Revolution, LLC*, No. 20-2130, 2021 WL 5450185, at *3 (D.N.J. Nov. 19, 2021) (determining that a more specific POSA definition was not necessary for the easily understandable invention). The patents in this case are not complex, and Hirsch fails to provide reasoning for why a broader definition is necessary or required in this matter. *Id.* (declining to adopt defendant's definition because it provided no persuasive justification or reasoning for its POSA position). Thus, the Court rejects Hirsch's expanded definition of POSA as unnecessary in this case and applies the following definition: a person with (1) at least a bachelor's degree in mechanical engineering, chemical engineering, materials science, materials engineering, or a related field, and (2) at least two years of work experience or the equivalent graduate study in the design or manufacture of composites with thermosetting resins.

### B. Whether Indefiniteness Applies at this Juncture

Next, attempting to deliver a severe blow to Cambria at this stage, Hirsch urges the Court to declare that two of the six disputed claims are invalid for indefiniteness.[6] Determining indefiniteness is not a requirement at the claim construction stage, and courts often decline to address it if they find "the claim at issue 'is sufficiently definite to survive claim construction.'" *Merck Sharp & Dohme Corp. v. Teva Pharms. USA, Inc.*, No. 17-6921, 2019 WL 943532, at *6 (D.N.J. Feb. 26, 2019) (quoting *Pharmastem Therapeutics, Inc. v. Viacell Inc.*, No. 02-148, 2003 WL 124149, at *1 (D. Del. Jan. 13, 2003)). An indefiniteness decision at the claim construction stage, however, may be unavoidable if the claim has "*no* meaning to a person skilled in the art." *Cipher Pharms. Inc. v. Actavis Labs. FL, Inc.*, 99 F. Supp. 3d 508, 514 (D.N.J. 2015). But if the issues are not "as closely dependent on each other," the decision is better left for summary judgment. *Id.* That is, it is common practice for courts to defer on the indefiniteness determination until the summary judgment stage, allowing the parties the benefits of discovery and further development of the facts. *See Int'l Dev. LLC v. Richmond*, No. 09-2495, 2010 WL 4703779, at *7 (D.N.J. Nov. 12, 2010) (refusing to rule on indefiniteness until summary judgment because of "(1) the high burden of proof required to show indefiniteness and (2) its potentially dispositive, patent-invalidating nature"); *see also Pharmastem Therapeutics, Inc.*, 2003 WL 124149, at *1 n.1 ("While the court recognizes that a determination of indefiniteness is necessarily intertwined to some degree with claim construction, it is clear that the court must first attempt to determine what a claim means before it can determine whether the claim is invalid for indefiniteness.")

In evaluating the disputed claims, the Court declines Hirsch's invitation to find indefiniteness at the claim construction stage. This is so because Hirsch has not met its high burden

---

[6] Hirsch contends the phrases "emulates [the/an] appearance of a quarried stone slab" and "substantially bowed pigmented vein" are indefinite. (Def.'s Opening Br. 19, 34, ECF No. 59.)

8

of showing "by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim." *Halliburton Energy Servs., Inc.*, 514 F.3d at 1249-50. For one, the claims are not so abstract or meaningless to render them indecipherable. *See Merck Sharp & Dohme Corp.*, 2019 WL 943532, at *6 (deferring the parties' argument on indefiniteness because the claim was definite enough to survive the claim construction stage). Starting with the first phrase that Hirsch challenges as indefinite, "emulates [the/an] appearance of a quarried stone slab" found in the '303 and '626 Patents, Hirsch fails to carry its high burden. (Def.'s Opening Br. 2.) For one, on its face the phrase is straightforward and self-explanatory. What's more, the supporting specification (*e.g.*, '303 Patent Fig. 1B, ECF No. 1-1) includes various examples and diagrams that leave little doubt "that a skilled artisan would have understood the term with reasonable certainty." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1379 (Fed. Cir. 2017). Thus, looking at the intrinsic record, the Court finds that the phrase informs with reasonable certainty those skilled in the art. *Cox Commc'ns, Inc. v. Sprint Commc'n Co.*, 838 F.3d 1224, 1231 (Fed. Cir. 2016). In doing so, the Court rejects Hirsch's argument that "'emulates' the appearance of a quarried stone slab" is too "subjective" to inform a POSA of the invention's scope. (Def.'s Opening Br. 20.)

Similarly, Hirsch also challenges the phrase "substantially bowed pigmented vein" as being fatally vague. (Def.'s Opening Br. 34.) The Court disagrees and finds neither the use of the words "substantially" or "bowed" to create a level of uncertainty that requires an indefiniteness finding at this stage.[7] *Sonix Tech. Co.*, 844 F.3d at 1377 ("mathematical precision" is not required "to comply with the definiteness requirement"). Indeed, "[e]xpressions such as 'substantially'" are routinely "used in patent documents when warranted by the nature of the invention" to allow for

---

[7] Again, when considering the challenged phrase along with the larger intrinsic record, the diagrams and corresponding descriptions provide additional guidance as to what is meant by the phrase "substantially bowed pigmented vein." ('626 Patent Fig. 7, ECF No. 1-3.) Under that holistic approach, Hirsch falls short of meeting its indefiniteness burden.

9

minor variations. *Verve LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1120 (Fed. Cir. 2002). To be sure, Hirsch's contentions that the phrase "injects too much ambiguity" into the mix and requires a subjective assessment that "depends on the person evaluating the stone" are equally unavailing. (Def.'s Opening Br. 19, 34. *But see Cipher Pharms. Inc.*, 99 F. Supp. 3d at 514.) Some ambiguity is of a different flavor than the requisite "clear and convincing evidence" needed to demonstrate that a POSA "could not discern the boundaries of the claim." *Waddington N. Am., Inc. v. Sabert Corp.*, No. 09-4883, 2010 WL 4363137, at *2, *8 (D.N.J. Oct. 27, 2010) ("[A] term is not indefinite merely because it . . . contains some ambiguity."); *Halliburton Energy Servs., Inc.*, 514 F.3d at 1249-50.

Thus, the Court finds that the claims are sufficiently definite to survive at this stage. Hirsch's application that the Court find two of the claims indefinite is denied without prejudice.

### C.  Disputed Claim Terms and Phrases

The Court presses on to the core of the instant dispute: constructing the claim terms and phrases that Hirsch challenges. "[T]he construction of claims is simply a way of elaborating the normally terse claim language . . . in order to understand and explain, but not to change, the scope of the claims." *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991); *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1382 (Fed. Cir. 2005). It follows, then, that the words of the claims themselves provide the starting point for the Court's analysis. *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) ("In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to 'particularly point out and distinctly claim the subject matter which the patentee regards as his invention.'"). There remains a presumption that the "ordinary and accustomed meaning" controls. *Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013). That is, a party that attempts to "alter the meaning of a clear

claim term must overcome the presumption that the ordinary and accustomed meaning is the proper one, demonstrating why such an alteration is required." *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1363 (Fed. Cir. 1999).

Cambria's position is straightforward: the terms do not require construction because they are written in plain English and have ordinary, commonly used meanings. (Pl.'s Opening Br. 1.) Hirsch, of course, disagrees. According to Hirsch, each phrase requires construction to better inform a POSA. (Def.'s Opening Br. 2-3.) In addressing the parties' competing positions, the Court begins with the four related terms—the "predefined" series of claim terms—which will be analyzed together. Then, the Court will consider the phrase "substantially bowed pigmented vein," followed by the final phrase, "emulates [the/an] appearance of a quarried stone slab."

> 1. **"[P]redefined layer pattern," "predefined pattern," "predefined and repeatable pattern," and "predetermined pattern"**

The following chart illustrates the disputed claim terms for the "predefined" series and each of the parties' proffered construction.

| Claim Term | Cambria's Position | Hirsch's Position |
|---|---|---|
| "predefined and repeatable pattern" ('942 Patent: claims 2, 29) | Plain and ordinary meaning, i.e., no construction is required. | "The specific pattern of how the minerals are dispensed into the mold is defined before the manufacturing of the slab begins, and that pattern can be precisely repeated from one slab to the next." |
| "predefined layer pattern" ('303 Patent: claims 1, 3) | Plain and ordinary meaning, i.e., no construction is required. | "The specific pattern of the pigmented veins in the finished slab is defined before the manufacturing of the slab begins." |
| "predefined pattern" ('626 Patent: claim 1) ('942 Patent: claim 20) | Plain and ordinary meaning, i.e., no construction is required. | **'626 Patent:** "The specific pattern of the pigmented veins in the finished slab is defined before manufacturing of the slab begins." **'942 Patent:** "The specific pattern of how the minerals are dispensed into the mold is defined before the manufacturing of the slab begins." |

| | | |
|---|---|---|
| "predetermined pattern" ('942 Patent: claim 4) | Plain and ordinary meaning, i.e., no construction is required. | "The specific pattern of how the minerals are dispensed into the mold is defined before the manufacturing of the slab begins." |

(Pl.'s Opening Br. 1; Def.'s Opening Br. 22, 30, 32.)

As illustrated above, the parties disagree on the construction of "predefined layer pattern" in claims 1 and 3 of the '303 Patent ('303 Patent col. 12:45-46, 14:40); "predefined pattern" in claim 1 of the '626 Patent ('626 Patent col. 12:55); and claim 20 of the '942 Patent ('942 Patent col. 14:2), "predefined and repeatable pattern" in claims 2 and 29 of the '942 Patent (*Id.* at 12:55-56, 14:45-46), and "predetermined pattern" in claim 4 of the '942 Patent (*Id.* 12:65). While the parties advance distinct arguments for individual terms or phrases, the Court will consider them as a group (the "disputed predefined group") because the intrinsic record provides the same foundation for all these terms.

Before the Court are two separate (but related) issues raised by the parties. The Court *first* addresses the underlying dispute in determining the scope of the terms and *second* examines the claim constructions presented by the parties.

Hirsch raises a "predicate dispute" concerning the "scope of the terms, rather than a question of meaning." (Def.'s Opening Br. 29-30; Def.'s Resp. Br. 15 (citing *O2 Micro Int'l. Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008)).) Here, Hirsch attempts to draw a distinction between the product and process claims by proposing different constructions for "predefined pattern" in the '626 Patent and '942 Patent. (Def.'s Resp. Br. 15.) Hirsch further highlights that the '942 Patent claims are directed to a process, while the '626 Patent claims are directed to finished products. (*Id.* at 21-23.) Hirsch asserts that the proper construction of "predefined layer pattern" and "predefined pattern" in the '303 Patent and '626 Patent should be "the specific pattern of the pigmented veins in the finished slab is defined before the manufacturing

12

of the slab begins" (*id.* at 19), but that "predefined pattern" in context of the '942 Patent should be construed as "the specific pattern of how the minerals are dispensed into the mold is defined before the manufacturing of the slab begins" (*id.* at 20).

Cambria counters that the claim terms in the related patents should have the same meaning, whether referring to the processes for making the slabs or the slabs themselves. (Pl.'s Resp. Br. 20, ECF No. 65.) In addition, Cambria contends that no distinction is necessary because "predefined layer pattern" and "predefined pattern" reference "the predefined pattern of mixes that are distributed to form the slab, not the finished slab's appearance." (*Id.* at 18.) Further, Cambria argues that references in the specification to the disputed language are in the context of "dispensing," "distributing," "pouring," or "transporting" the mixes—or "otherwise refers to the process of 'producing' the product or 'filling' the mold with the mineral mixes."[8] (*Id.* at 20-21.)

The Court finds that the disputed predefined group should be construed the same across all the challenged patents. As the Federal Circuit instructs, courts must "presume, unless otherwise

---

[8] (*See* '303 Patent col. 1:55 ("*dispensed* according to predefined pattern"), 2:10–11 ("*distributed* in the series of successive layers according to the predefined pattern"), 2:40–42 ("*pouring* multiple differently pigmented particulate quartz mixes . . . according to a predetermined pattern"), 3:1–2 ("*deposited* according to predefined and repeatable dispensation pattern"), 3:62–65 ("*produce* one or more synthetic molded slabs . . . according to a predefined pattern"), 4:5–7 ("*poured* according to predefined and repeatable dispensation pattern"), 4:13–15 ("*poured* according to predefined and repeatable dispensation pattern"), 4:19–22 ("depending upon the predefined *dispensation* pattern"), 4:40–42 ("*dispensed* . . . according to the predefined and repeatable dispensation pattern"), 4:57–58 ("conveyor line may *transport* the respective mix according to a predefined pattern"), 8:9–13 ("*controllably dispense* the particulate mineral mix . . . , thereby providing a predetermined pattern"), 9:13–14 ("mineral mixes *poured* into each of the molds according to a predetermined pattern"), 10:42–44 ("[o]nce the slab mold 130 is sufficiently *filled* with the particulate mineral mixes 502 according to the predefined pattern"), 10:66–67 ("*poured* according to predefined pattern"), 11:3–4 ("predefined *dispensation* pattern"), 11:31–33 ("*dispensed* vertically into the mold 130 according to the predefined and repeatable dispensation pattern") (emphases added).)

compelled, that the same claim term in the same patent or related patents carries the same construed meaning." *Omega Eng'g, Inc., v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003). Because these terms appear in related patents and all refer to the production of the product, the Court declines Hirsch's invitation to define them differently. *See Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, No. 14-4274, 2018 WL 6716828, at *3-4 (D.N.J. Dec. 21, 2018) (determining the term at issue carries the same meaning across related patents and that no party demonstrated otherwise). And a review of the patents' specifications leaves little doubt that the predefined phrases do not refer to finished patterns in the slab *products*, as Hirsch avers, but rather to the *process* of creating the products. (*See generally* '303 Patent, '626 Patent.)

Turning next to whether the language needs to be further construed, the Court finds that the disputed predefined group's "terms are in common parlance and have no special definition in the art or in the intrinsic record." *IGT v. Bally Gaming Int'l, Inc.*, 659 F.3d 1109, 1119 (Fed. Cir. 2011) ("[T]he plain language of the claim must control, and the term 'predefined' has a well-known definition."). Meaning, claim construction is not required where terms use commonly understood language, as is the case here. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997); *Eagle View Techs., Inc. v. Xactware Sols., Inc.*, No. 15-07025, 2017 WL 6025364, at *4 (D.N.J. Dec. 5, 2017) ("[F]ind[ing] the plain and ordinary meaning of these terms unambiguous" and "no claim construction is necessary"). Nor does Hirsch argue that the patentee assigned the phrase a unique meaning in the specifications that rebuts the ordinary-meaning-controls presumption. (*See generally* Def.'s Opening Br. *Cf. Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004) ("[T]he patent applicant set out the different meaning in the specification in a manner sufficient to give one of ordinary skill in the art notice of the change from ordinary meaning." (citation omitted))). In reviewing the plain

language of the disputed terms, "predefined and repeatable pattern," "predefined layer pattern," "predefined pattern," and "predetermined pattern" all have ordinary meanings which control.

As explained above, the references to "predefined pattern" or "predetermined pattern" do not refer to any pattern in the finished slab but rather to the actions of dispensing, pouring, or transporting the mixes. Also contrary to Hirsch's suggestion of adding the word "specific" into the fray, the specification does not require a "specific pattern" to be defined in advance. Rather, the claim language describes that the invention can result in slabs whose veins "have a *similar* appearance to one another" ('303 Patent col. 1:47 (emphasis added)), and that when "mixes [are] dispensed . . . according to the predefined and repeatable dispensation pattern, multiple slabs in the set of separately molded slabs can have *substantially the same* appearance to one another" (*id.* at 4:40-44 (emphasis added)). Further rebuffing Hirsch's proposed construction, neither the claims themselves nor their specifications require absolute precision. *See Merit Indus., Inc. v. JVL Corp.*, No. 03-1618, 2007 WL 2463377, at *21 (E.D. Pa. Aug. 27, 2007) (finding the specification did not require the word "specific" to be included in the claim construction). Instead, the specifications express that the slabs have an appearance that is "generally repeatable" or "substantially repeatable." ('303 Patent col. 1:48-49, 3:4–5, 4:9, 8:52–53.) Hirsch's narrowing construction adds extrinsic limitations to what is simplified claim language.

What's more, Hirsch's proposal runs contrary to the intrinsic evidence. Adding the word "specific" to the word "pattern" and converting the term "repeatable" to "precisely repeated from one slab to the next" is inadvisable because "[n]either the claims nor the specification ever use [these] word[s]," and the result would be a "heightened and undefined level of specificity" of the claims. (Pl.'s Resp. Br. 25 (citing Asserted Patents).) And although Hirsch is not making a lexicography argument (rather than contending that its construction is "grounded in a review of

the specification in light of the claim language"), the Court is unpersuaded. (Def.'s Resp. Br. 17.) Hirsch, holding the proverbial pen, appears to do no more than give the terms narrowed constructions that change their meanings and goes against the intrinsic evidence. *See Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1352 (Fed. Cir. 2010) ("[C]ourts must not import limitations into the claims from the specifications . . . unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest execution or restriction." (internal quotations and citations omitted)). The Court finds no further claim construction is necessary.

### 2. "[S]ubstantially bowed pigmented vein"

Second, the Court examines the claim language of "substantially bowed pigmented vein" found in claim 1 of the '626 Patent. ('626 Patent col. 12:50-51.) Again, the parties disagree on the proper construction of this phrase. Cambria, on the one hand, contends that this phrase need not be construed because it "consists of ordinary English language that would be readily understandable to a jury." (Pl.'s Opening Br. 26.) In contrast, Hirsch asserts that the proper construction is "a vein that forms a continuous lengthwise arc on the slab from one edge to the other." (Def.'s Resp. Br. 26.)

To begin, the Court finds that no construction is necessary here, either, because the terms are not technical but rather reflect common usage. *Green Pet Shop Enters., LLC*, 2021 WL 5450185, at *5. In any event, Hirsch's proposed construction is undercut by the caselaw and its own expert witness.[9] Hirsch's construction is based on Figure 7 in the intrinsic record, which it

---

[9] Cambria contends that Hirsch's reliance on Dr. John R. Dorgan, its expert witness, is improper because Hirsch waived the ability to rely on an expert by failing to disclose his expected testimony in time. (Pl.'s Resp. Br. 4-5 (citing L. Pat. R. 4.2(b)).) But Cambria then goes on to demonstrate why Dr. Dorgan's testimony undermines Hirsch's position through his concessions that the terms have ordinary meaning. (*See id.*) Because Cambria extensively incorporated Dr. Dorgan's testimony into its *Markman* presentation and briefing, the Court will consider his testimony.

argues is "the only depiction . . . of a 'bowed' (i.e. curved) vein." (Def.'s Resp. Br. 26.) But claims and patents must be viewed in their entirety and not cherry-picked in a vacuum; further, "[c]laims, not the specification embodiments, define the scope of protection" and a "claim construction that excludes a preferred embodiment is 'rarely, if ever, correct.'" *Dow Chem. Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1378 (Fed. Cir. 2001) (emphasis omitted). To this end, and as conceded by Dr. Dorgan, "[f]igures 1A and 1B also show examples of bowed veins," and the veins in those figures do not form a "continuous lengthwise arc." (Dorgan Dep. 170:1-8, ECF No. 65-1.) Thus, Hirsch's construction contradicts certain embodiments in the intrinsic record (i.e. Figures 1A and 1B) and, so, it cannot be correct. In addition, claim 10 of the '626 Patent provides that the "substantially bowed pigmented veins each include more than one bowed portion," which further contradicts Hirsch's reasoning that a "substantially bowed pigmented vein" merely "forms a continuous lengthwise arc." ('626 Patent col. 13:25-28.)

To put a nail in the coffin, Cambria argues that the Court should reject Hirsch's proposed construction because it does not appear in the intrinsic record, is not a definition in the specification, and was not discussed in the prosecution history. (Markman Hr'g Tr. 64:21-25; Pl.'s Opening Br. 28 (Hirsch's construction "does not appear anywhere in the intrinsic record, and Defendant appears to have invented it out of thin air").) Cambria has a point. The Court is not persuaded by Hirsch's rebuttal that its proposed language is merely reflecting "what the person of ordinary skill would understand the term to mean based on his or her review of the intrinsic record." (Def.'s Resp. Br. 11.) While the Court acknowledges that Hirsch is not arguing lexicography, it does not agree that the terms are technical, and therefore a person of ordinary skill would understand the claim language as written. *Green Pet Shop Enters.*, 2021 WL 5450185, at

*5. Even more so with the assistance of the intrinsic record. The Court finds that the plain and ordinary meaning of the claim language controls, and no further claim construction is needed.

### 3. "[E]mulates [the/an] appearance of a quarried stone slab"

Third, the Court moves to the last contested phrase, "emulates [the/an] appearance of a quarried stone slab," which appears in claim 13 of the '303 Patent and claim 12 of the '626 Patent. Cambria argues that the phrase does not require construction because it is an "ordinary phrase that does not have any special definition and is not subject to any disclaimer." (Pl.'s Opening Br. 12.) Hirsch proposes the claim construction to read, "replicates the appearance of one particular quarried stone [slab] sample." (Def.'s Resp. Br. 10 (alteration in original).) Hirsch contends this revised language is necessary because "a comparison to a particular quarried stone is the only way the term 'emulates' provides any guidance . . . as to the scope of the claim." (*Id.*) Both parties agree that the terms "are substantially identical" between the '303 and '626 Patents, "varying only by the articles 'an' and 'the.'" (Def.'s Opening Br. 16.)

In rhythm with the Court's findings above, it also finds no further construction of this claim is warranted. Starting with the current construct of the claim language, the word "emulate" (as used here) has a plain and ordinary meaning, and Hirsch's proposed dictionary definition of the term confirms this notion. (*See* Def.'s Opening Br. 18 n.6 (defining emulate as "try[ing] to equal").) Dr. Dorgan conceded the same (Ex. 1 at 99:18-20) and acknowledged that the ordinary meaning of "emulate" does not require exact replication (*Id.* at 103:16-19). So when Hirsch proposes replacing of the word "emulates" with the word "replicates" (Def.'s Opening Br. 16), it flies in the face of common parlance, the intrinsic record, and Hirsch's own expert. As illustrated in the specifications, "each respective slab in [a] set has *similarly* positioned and colored substantially lengthwise veins," and "multiple slabs in the set can have *similarly* positioned veins in the major surface and can provide *substantially* the same appearance to one another." ('303

18

Patent col. 2:20-22, 11:33-36 (emphases added).) These specifications go on to provide several examples of emulating the appearance of a quarried stone slab, such as describing certain types of quarried stone (*Id.* at 4:21-23), and are more consistent with the definition of "emulate" than "replicate." Specification examples may adequately guide a POSA in further explaining the claim language, should there be any remaining doubt as to this claim. *See Sonix Tech. Co.*, 844 F.3d at 1379 (noting that a POSA could reference examples to supplement the claim's written description). Words matter; and the Court finds nothing in the intrinsic evidence to justify substituting the word "emulates" with "replicates."

As to Hirsch's attempt to replace "a" quarried stone slab with "one particular . . . slab," the Court finds this equally unsettling because under the principles of patent law, generally, the words "a" or "an" in a patent claim mean "one or more," and exceptions to this rule are limited and require a clear intent to construe "a" or "an" to mean "one." *01 Communique Lab'y, Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1297 (Fed. Cir. 2012) ("As a general rule, the words 'a' or 'an' in a patent claim carry the meaning of 'one or more.'" (citation omitted)). Hirsch provides no evidential support that there was any patentee intent to limit the claims to one stone slab. *See id.* Nor could the Court engraft such a limitation when the intrinsic evidence directly refutes Hirsch's proposal of a "particular quarried [stone] slab." The specification broadly states, "emulat[ing] the aesthetics of quarried stone *slabs*." ('303 Patent col. 11:46 (emphasis added).) Moreover, no reference to any "one particular" slab is ever mentioned in the intrinsic record. Rather, the specification refers to the different types of stones generally. (*Id.* at 1:24 ("Granite, marble, soapstone, and other quarried stones.").)

Thus, the Court concludes that construction is not needed and finds that the claim language, as is, adequately describes "emulating the aesthetics of quarried stones . . . by providing veins that

extend across the length and/or through the thickness of the [stone] slab." (Pl.'s Opening Br. 15-16.)

In sum, the Court finds that the plain and ordinary language controls for all claim language at issue.[10]

## IV. CONCLUSION

For the reasons discussed above, the Court denies Hirsch's request for a finding of indefiniteness without prejudice and adopts the plain and ordinary constructions of the six disputed claim terms. The Court will enter an order consistent with this Memorandum Opinion.

                                        /s/ Michael A. Shipp
                                        MICHAEL A. SHIPP
                                        UNITED STATES DISTRICT JUDGE

---

[10] Because the Court finds that Hirsch's preferred constructions—submitted in December 2021—fail, the Court need not reach Cambria's timeliness argument. (*See* Pl.'s Opening Br. 23 ("To the extent the Court allows Defendant to alter its constructions for the '942 [P]atent at this late stage, those constructions are similarly flawed and should also be rejected.").)