

**Douglas A. Robinson**
Direct Dial: 314-726-7500
drobinson@hdp.com

February 16, 2023

**BY ECF**
Honorable Lois H. Goodman, U.S.M.J.
United States District Court
Clarkson S. Fisher Federal Building & U.S. Courthouse
402 E. State Street
Trenton, New Jersey 08608

      Re:    *Cambria Company LLC v. Hirsch Glass Corp. d/b/a Spectrum Quartz*
               Civil Action No. 21 CV 10092 (MAS)(LHG)

Dear Judge Goodman:

Pursuant to L. Civ. R. 37.1 and L. Pat. R. 3.7, Defendant Hirsch Glass Corp. and Plaintiff Cambria Company LLC respectfully submit this joint letter to set forth their respective positions on certain amendments proposed by Hirsch to its noninfringement and invalidity contentions. The parties have separately submitted a joint application regarding certain proposed amendments to contentions that are unopposed. D.I. 99. This letter addresses only the additional proposed amendments for which Hirsch seeks leave that Cambria opposes.

**I.**     <u>**Defendant Hirsch's Position In Support of Leave to Amend**</u>

Hirsch seeks leave for the following proposed amendments discussed below:

(1) amendments to the non-infringement contentions to specify that the accused products are made by a process that results in inherent randomness of the appearances of the products, even within individual product lines ("the inherent randomness contentions") and which Hirsch contends are responsive to Cambria's proposed amended infringement contention; and

(2) amendments to the invalidity contentions to add prior art that Hirsch contends is relevant to the five asserted design patents asserted at issue in this case and which was discovered after service of Hirsch's preliminary invalidity contentions ("the design patent prior art contentions").

Local Patent Rule 3.7 requires good cause for amendments to non-infringement and invalidity contentions. The Rule states that recent discovery of material prior art despite earlier diligent search and consent of the parties plus a showing that the schedule will not be impacted are non-exhaustive examples of circumstances that may support a finding of good cause. Under this Court's precedent, "the key factor to look at to determine whether good cause exists is the diligence of the moving party. Diligence has two aspects to it. One is whether the moving party acted diligently to discover that a supplement or amendment was appropriate. The second aspect is whether the moving party promptly moved to amend its contentions after it learned an amendment was necessary." *AS Am., Inc. v. Masco Corp. of Indiana*, No. CIV. 13-05-JBS/JS,

2013 WL 4084237, at *2 (D.N.J. Aug. 13, 2013). However, the Local Patent Rules and applicable case law do not require perfect diligence. *Id.*; *see also THX, Ltd. v. Apple, Inc.* No. 13-CV-01161-HSG, 2016 WL 1718137, at *2 (N.D. Cal. Apr. 29, 2016) ("good cause 'does not require perfect diligence.'").

Here, Cambria does not argue that Hirsch's request is made too late. Rather, the contested issues presently before the Court relate to Hirsch's diligence in presenting Cambria with Hirsch's inherent randomness contentions and design patent prior art contentions. Further, and as explained below, Hirsch's proposed amendments will have no effect on the case schedule.

### A. The Inherent Randomness Contentions

Hirsch proposes to add non-infringement contentions based on the inherent randomness of the process used to make the accused products. More specifically, the accused products are quartz slabs that were[1] sold for use as, for example, kitchen countertops. The accused quartz slabs were sold as alternatives to natural stone countertops like granite and marble. A goal of quartz countertops is to mimic the appearance of natural stone, but including design elements like speckles, lines, and different colors like seen in natural stone. To do this, the accused products were made by dispensing different quartz compositions (in particulate form, similar to sand) and resin binder particulates into a vertical mold, and then vibrating and compacting the material. The materials were essentially dropped into the mold from an open top. Even when the dispensing was controlled, it was impossible to control the location of each particle as it fell into the mold. Further, the slabs were made one at a time. As a result, even when the same compositions were dispensed in the same way, each slab had a different final appearance due to the inherent randomness of particle distribution caused by the manufacturing process.

Cambria's initial infringement contentions, served on July 6, 2021, relied on patents invented by Alex Xie, a principal of Hirsch, as a proxy for the accused products in its infringement allegations concerning its asserted design patents. That is, Cambria asserted that the inventions described in the Xie patents would infringe Cambria's asserted utility patents. But, a patent cannot infringe another patent; rather, only the manufacture, use, sale, offer for sale, or importation of an infringing product or method can provide the basis for a finding of infringement. *See Bio-Tech Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996) ("It is elementary that a patent grants on the right *to exclude others* and confers no right on its holder to make, use, or sell.") (emphasis in original).

Cambria's July 2022 proposed amended infringement contentions deviated from its prior contentions in that they were no longer based on Mr. Xie's patents, but rather relied on pictures of slabs and slab samples that were either produced or viewed by Cambria at a product inspection on June 8, 2022. In addition, Cambria's proposed amended contentions allege that these pictures are "representative" of the accused product lines. For example, Cambria asserts that the following product lines infringe its utility patents: Symphony, Expanse, Horizon, Terrace, Summit, Sierra, Pinnacle, Arctic, Snowdrift, Salt Flats, White Sands, Diamond Mist, Elevation, Utopia, Mirage, Sahara, Snowpack, Cirrus, Tundra, Glacial, and QM8821. For each product line, Cambria's proposed amended infringement contentions assert that one or two particular slabs are

---

[1] Hirsch discontinued manufacture of its accused products as of 2020. Although Hirsch does still have some accused slabs in inventory that could be purchased, Hirsch ceased all marketing and sales efforts regarding the products.

"representative" of the entire product line, notwithstanding the fact that each Hirsch slab, regardless of being part of a product line, has a unique appearance. This "representativeness" theory did not appear in Cambria's initial invalidity contentions. Thus, Cambria's proposed amended infringement contentions represent a fundamental change in its theories, both by shifting its basis from patents to actual products, and by adding the "representativeness" theory for the slabs on which it relies.

In response to Cambria's amended infringement contentions, Hirsch timely served additional proposed amended non-infringement contentions on September 9, 2022, which added the inherent randomness contentions. By these amendments, Hirsch seeks to amend its non-infringement contentions to state that each slab in each accused product line does not necessarily have the claimed appearance, because of the inherent randomness of the process used to make those slabs.

The parties have met and conferred regarding Cambria's proposed amendments and Hirsch's inherent randomness contentions. Hirsch believes that the infringement issues should be resolved on the merits. Thus, Hirsch consents to Cambria's proposed amendments.[2] However, Cambria wants this to be a one-way street, and has refused to consent to the addition of Hirsch's inherent randomness contentions—despite those amendments being in direct response to Cambria's amendments. Cambria argues the contentions should have been included in Hirsch's initial non-infringement contentions, before Cambria indicated a reliance on the "representativeness" of sample slabs. Cambria's argument is illogical and an unfair reading of the local rules concerning contention amendments, because Hirsch's amendments are directly responsive to Cambria's amended infringement contentions. *See AstraZeneca AB v. Hanmi, USA, Inc.*, No. CIV.A. 11-760-JAP, 2013 WL 264609, at *2 (D.N.J. Jan. 23, 2013) (granting defendant's motion to amend non-infringement contentions, where the amendments were responsive to non-infringement arguments raised in plaintiff's response in opposition to plaintiff's motion for summary judgment of non-infringement); *Janssen Pharms., Inc. v. Sandoz, Inc.*, No. CIV.A 11-7247-FLW, 2013 SWL 7901841, at *6 (D.N.J. May 22, 2013) (defendant's amended contentions timely when they were warranted in response to plaintiff's amended infringement contentions); *see also Sloan Valve Co. v. Zurn Indus., Inc.,* No. 1:10-CV-00204, 2012 WL 6214608, at *4 (N.D. Ill.[3] Dec. 13, 2012) (allowing amendments "to the extent that those amendments are necessary to respond to the permissible amendments to Amended Final Infringement Contentions.").

As a matter of fairness, Hirsch should be allowed to add its inherent randomness contentions because those are in direct response to infringement contentions amendments proposed by Cambria. Thus, Hirsch respectfully requests leave to add the inherent randomness contentions to its non-infringement contentions pursuant to L. Pat. R. 3.7.

---

[2] In an effort to streamline issues for the Court to decide, during the meet-and-confer process Hirsch also agreed to withdraw proposed added defenses based on 35 U.S.C. § 112 and 35 U.S.C. § 101, and to also withdraw some proposed additional prior art.

[3] This Court has previously looked to decisions from the Northern District of California and the Eastern District of Texas concerning amendments under local patent rules, because those district have similar rules to this Court. *Voxpath RS, LLC v. LG Elecs., U.S.A., Inc.*, No. 2:12-CV-952-DMC-MF, 2012 WL 5818143, at *3 n. 3 (D.N.J. Nov. 14, 2012). The Northern District of Illinois also has similar local patent rules, *see* https://www.ilnd.uscourts.gov/LocalRules.aspx.

B.      **The Design Patent Prior Art**

The final category of contention amendments proposed by Hirsch concerns the addition of prior art to the five design patents asserted by Cambria. This added prior art was identified through subpoenas issued by Hirsch in this case and through additional prior art searching by Hirsch after the service of Hirsch's preliminary invalidity contentions. Based on the objections raised by Cambria, the question for the Court is straightforward: did Hirsch act with the requisite diligence in locating and presenting this prior art (Hirsch's position), or should the Court find that Hirsch should have located that prior art before serving its initial contentions (Cambria's position)? The facts and applicable precedent show that the Court should grant Hirsch leave to add these prior art references.

This Court has weighed the following factors in determining whether to allow amendments to invalidity contentions: "(1) the reason for the delay and whether the party has been diligent; (2) the importance of what is to be excluded; (3) the danger of unfair prejudice; and (4) the availability of a continuance and the potential impact of a delay on judicial proceedings." *Oy Ajat, Ltd. v. Vatech Am., Inc.*, No. CIV.A 10-4875-PGS, 2012 WL 1067900, at *20 (D.N.J. Mar. 29, 2012).

Here, Hirsch identified the additional prior art to Cambria on September 9, 2022. Fact discovery is set to close on March 10, 2023—seven months after Hirsch gave notice to Cambria. Under the case schedule (ECF 98), expert discovery will occur after fact discovery closes. No trial date has been set. Further, only one fact deposition has occurred.[4] Thus, Cambria has full and complete ability to address the prior art on the merits, and Cambria is not unduly prejudiced by the timing of Hirsch's proposed amendments to its invalidity contentions. Cambria will need to address Hirsch's earlier-disclosed prior art to the design patents in either event, meaning it will not be unfairly forced to expend significant additional resources based on Hirsch's amendments. *See Celgene Corp. v. Natco Pharma Ltd.*, No. CIV.A 10-5197-SDW, 2015 WL 4138982, at *4 (D.N.J. July 9, 2015); *see also In re Fetizma,* No. 2:17-CV-10230-ES-SCM, 2020 WL 468438, at *5 (D.N.J. Jan. 29, 2020) ("Additional work does not mean there is unfair prejudice."). Nor will Hirsch's proposed amendments require any change to the case schedule or cause any delay. *Janssen Pharms., Inc. v. PharmaScience, Inc.*, No. CV 19-21590-CCC, 2021 WL 2593337, at *3 (D.N.J. June 24, 2021) (granting leave when case was still in fact discovery); *cf. Synchronoss Techs., Inc. v. Dropbox Inic.*, No. 416-CV-00119-HSG-KAW, 2018 WL 5619743, at *6 (N.D. Cal. Oct. 29, 2018) (allowing invalidity contention amendments even after close of fact discovery but two months before expert report rebuttal deadline);

Further, other than art submitted with the IPRs, the design patent prior art in Hirsch's amended invalidity contentions came to counsel's attention between June and August 2022—i.e., shortly before Hirsch served its second amended invalidity contentions. During this time, Hirsch's ongoing investigation revealed new references with slab products exhibiting naturally occurring stone aesthetics like those claimed by Asserted Patents—in addition to photographs of natural stone newly produced by Cambria that are also cited in the amended contentions. Study of these products in turn prompted Hirsch to issue subpoenas to third parties in July who, in response, produced in August their own prior art illustrating slab products with similar naturally occurring stone aesthetics. Hirsch then worked diligently to prepare its proposed amended invalidity contentions for service on September 9, 2022. This timeline further illustrates that Hirsch has not

---

[4] Cambria also deposed Hirsch's expert during the claim construction phase, but that does not impact this design patent prior art issue.

engaged in gamesmanship with respect to its amended contentions. *See Yodlee, Inc. v. CashEdge, Inc.*, No. C05-01550 SI, 2007 WL 1454259, at *2 (N.D. Cal. May 17, 2007) (lack of gamesmanship weighed in favor of granting leave to amend contentions.

Next, the proposed added prior art is material to the five design patents asserted in this case. One of Hirsch's key defenses is that Cambria's Asserted Design Patents are anticipated and obvious—and thus invalid—in view of naturally occurring stone aesthetics that have existed in nature well before Cambria applied for the asserted patents and other products that mimic these natural aesthetics. In fact, Cambria's own documents—produced well after Hirsch's initial invalidity contentions—confirm that Cambria's patented products seek to mimic the appearance of natural stone. As such, each of the supplemental prior art references and products that Hirsch seeks to add to its invalidity contentions contain designs that exhibit the particular natural stone aesthetics of the Asserted Design Patents. Preventing Hirsch from presenting this material evidence of invalidity would be counter to the Third Circuit's strong policy for resolution on the merits. *See Dole v. Arco Chem. Co.*, 921 F.2d 484, 486–487 (3d Cir. 1990); *see also Yodlee*, 2007 WL 1454259, at *2 ("If the new prior art is as material as CashEdge says it is, it would be unjust for information so highly material to "the merits to be avoided on the basis of such mere technicalities."); *Helsinn Healthcare S.A. v. Dr. Reddy's Lab'ys Ltd.*, No. CIV.A. 11-3962 MLC, 2013 WL 3336859, at *5 (D.N.J. July 2, 2013) ("[P]reventing Sandoz from presenting all of its defenses would not facilitate resolution on the merits.").

Further, this additional prior art was difficult to find. Hirsch acted diligently in preparing its preliminary invalidity contentions, including by retaining two separate outside search firms to locate prior art (in addition to addressing non-infringement and invalidity issues for the 75 utility patent claims that were then asserted by Cambria). But design patent prior art is by its nature very difficult to locate, because, unlike utility patents, keyword searching is generally not useful for design patent art. In addition, prior art that is normally cited against utility patents—i.e., patents, scholarly articles, and books—is generally indexed and easily searchable. In contrast, designs are not amenable to such indexing, requiring more detailed and time-consuming searching for prior art designs. This searching difficulty is not due to any failing on Hirsch's part, but is based on the nature of the relevant art. This weighs in favor of leave to amend. *See Acco Brands, Inc. v. PC Guardian Anti-Theft Prod., Inc.*, No. C-04-03526-SI, 2008 WL 2168379, at *1 (N.D. Cal. May 22, 2008) (difficulty of locating the prior art weighed in favor of leave to amend); *Yodlee,* 2007 WL 1454259, at *2 (same).

Cambria's position is that Hirsch should have found this prior art before its initial invalidity contentions because, per Cambria, anything that is prior art is by its nature public, and thus was in theory identifiable before Hirsch's preliminary invalidity contentions. But this is far too strict of a reading of L. Pat. R. 3.7's diligence requirement. Hirsch is unaware of any court requiring a defendant to be aware of all possible prior art at the early stage at which preliminary invalidity contentions are due. Such a rule would be inconsistent with the policy of L. Pat. R. 3.7, which this Court has recognized "is not a straightjacket into which litigations are locked from the moment their contentions are served." *THF Publications, Inc. v. Doskocil Mfg. Co.*, 705 F. Supp. 2d 361, 366 (D.N.J. 2010); *cf. Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990) (discussing strong policy for resolving claims on the merits as opposed to technicalities, albeit in the context of pleading amendments and not local patent rule contentions).

Ample case law addressing similar circumstances to those here supports Hirsch's position that it should be allowed leave to amend its invalidity contentions. *Celgene Corp.,* 2015 WL

Hon. Lois H. Goodman, U.S.M.J.
February 16, 2023
Page 6 of 14

4138982, at *4 (granting leave to amend where expert reports had not be served, fact discovery was already closed but could be re-opened, no trial date had been set, and expenses in responding to the amendments did not constitute undue prejudice); *THX, Ltd.*, 2016 WL 1718137, at *2 (allowing invalidity contention amendments after defendant engaged multiple search firms and served subpoenas to obtain prior art, and promptly notified patentee of the art); *Yodlee,* 2007 WL 1454259, at *2 (good cause existed for amendments to invalidity contentions where newly discovered prior art was highly material, the request for leave was not motivated by gamesmanship, the prior art was particularly difficult to find because of the nature of the technology, and patentee would not be unfairly prejudiced because the amendments would not impact any pending motion and plenty of time was left in discovery); *Helsinn*, 2013 WL 3336859, at *5 (granting leave to amend where expert discovery was ongoing, the dispositive motion deadline was a month away, no trial had been set, plaintiff would not be unfairly prejudiced, and defendant would be prejudiced by exclusion of new defenses); *see also Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1323 (Fed. Cir. 2016) (not abuse of discretion to allow amendments to invalidity contentions where exert depositions had not occurred, plaintiff had the full length of time to prepare a rebuttal expert report, and discovery close was a month and a half away).

Lastly, Cambria does not assert that Hirsch's request for leave to amend is untimely; rather, Cambria's objection is based on its argument that Hirsch was not diligent enough in finding the prior art. Further, because of the stay in this case that spanned from September 27 to December 9, fact discovery is still on going, and, particularly, the earlier notice Hirsch provided to Cambria regarding the design patent prior art, Hirsch's request should be deemed timely. *See Bd. Of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, No. C 05-04158-MHP, 2008 WL 624771, at *3 (N.D. Cal. Mar. 4, 2008) (earlier notice to opponent weighed in favor of a finding of timeliness); *Radware Ltd. v. F5 Networks, Inc.,* No. C-13-2024-RMW, 2014 WL 3728482, at *2 (N.D. Cal. Jan. 1, 2014) (same).

Accordingly, Hirsch respectfully requests, pursuant to L. Civ. R. 37.1, leave to amend is invalidity contentions to add design patent prior art.

## II. <u>Cambria's Position Against Leave to Amend</u>

This is the second time that Hirsch is seeking leave to amend its contentions to add new case theories. Although Cambria agreed, in the interest of compromise, to Hirsch's first amended contentions proposed in April 2022 (*see* D.I. 74), Cambria opposes Hirsch's unjustified attempt to add even more prior art and dispute even more claim limitations.

Notably, Hirsch's application fails to cite or identify the specific prior art that it seeks to add and the specific claim limitations it seeks to dispute. These amendments are attached as Exhibit 1 (a redline of Hirsch's second amended contentions)[5] and Exhibit 2 (Hirsch's new appendices adding prior art). Hirsch's original contentions, dated August 2021, are attached as Exhibit 3, and its first amended contentions, dated April 2022, are attached as Exhibit 4.

Contrary to Hirsch's repeated statements about "preliminary" contentions, this Court's Local Patent Rules do not provide for "preliminary" contentions that can be freely amended.

---

[5] Hirsch's proposed second amended contentions also included certain additional arguments under 35 U.S.C. §§ 101 and 112, and 171, for which Hirsch has elected not to seek leave.

"Pursuant to L. Pat. R. 3.7, leave to amend invalidity contentions may be granted 'only by order of the Court upon a timely application and showing of good cause.'" *MSD Consumer Prods. v. Zydus Pharms. (USA) Inc.*, No. 11-7437 (PGS)(LHG), 2013 WL 12158379, at *2 (D.N.J. Aug. 9, 2013); *see also Janssen Prod., L.P. v. Lupin Ltd.*, No. 10-5954 (WHW), 2013 WL 1966051, at *4 (D.N.J. May 9, 2013), (applying same standard for amending noninfringement contentions).

"Good cause considers first whether the moving party was diligent in amending its contentions and then whether the non-moving party would suffer prejudice if the motion to amend were granted." *MSD Computer Prods.*, 2013 WL 12158379, at *2 (quotation omitted). "The Court may only consider prejudice to the non-moving party, however, if the moving party is able to demonstrate diligence." *Id*. "As with good cause in general, the burden is on the movant to establish diligence rather than on the opposing party to establish lack of diligence." *Id*. (quotation omitted). Here, as shown below, Hirsch fails to prove diligence for both of its proposed disputed amendments. Cambria thus respectfully requests that Hirsch's application be denied.

**A.     Hirsch fails to meet its burden to show good cause for adding new prior art.**

Hirsch seeks to add dozens of new prior art references for the five asserted design patents that it failed to identify in both its original contentions dated August 2021 and its first amended contentions dated April 2022. *Compare* Ex. 2 *with* Exs. 3, 4. Although Hirsch bears the burden of proving its diligence in identifying each of these new prior art references, Hirsch offers only vague and unsupported attorney arguments that fall well short of its burden.

Hirsch's main argument is that these references will not result in undue prejudice. *Supra* at 4. But a lack of undue prejudice, without more, is not good cause. "If the moving party has not shown its diligence in finding the new information or seeking leave to amend, the court does not even reach the issue of whether the proposed amendment would prejudice the non-moving party." *Merck Sharp & Dohme Corp. v. Sandoz, Inc.*, No. 12-3289 (PGS)(LHG), 2014 WL 997532, at *7 (D.N.J. Jan. 6, 2014); *see also MSD Consumer Prods.*, 2013 WL 12158379, at *5 (where "the Court fails to find that Defendant acted with diligence, it need not consider prejudice at all").

As to diligence, Hirsch has little to say. It vaguely alleges that the new prior art "came to counsel's attention between June and August 2022" because "ongoing investigation revealed new references with slab products exhibiting naturally occurring stone aesthetics like those claimed by Asserted Patents." *Supra* at 4. But August 2022 is *a year* after Hirsch's invalidity contentions were due in August 2021. D.I. 43 at 2. Hirsch does not explain what it was doing for 10 months between August 2021 and June 2021, or why it took so long to begin a prior art search that should have been undertaken at the outset of the case. *See Merck*, 2014 WL 997532, at *7 (denying leave to amend where defendant did "not explain what it was doing between November 2012 and July 2013 . . . and why it could not have uncovered the New Prior Art earlier").

The Local Patent Rules do not contemplate the addition of new prior art upon its discovery for *any* reason, but only the "recent discovery of material prior art *despite earlier diligent search*." L. Pat. R. 3.7(b) (emphasis added). While Hirsch offers attorney argument that its new prior art was difficult to find (*supra* at 5), Hirsch does not explain why this process took an entire year. Hirsch's only basis for alleging difficulty is that "design patent prior art" *in general* is hard to find. *Id*. Hirsch cites no evidence or authority for this proposition. Its cited cases (*Acco* and *Yodlee*) are both outside this District and have nothing to do with design patents. *Acco* involved difficulty finding specific computers from the 1980s based on declaratory evidence (2008 WL 2168379, at

\*2), and *Yodlee* noted that any difficulties did "not fully excuse [the defendant]'s failure to identify this prior art sooner" (2007 WL 1454259, at \*2). Notably, the Local Patent Rules do not contain any exception to proving diligence for locating design patent prior art. In fact, the only exception that the Local Patent Rules include for design patents makes it *easier*, not harder, to timely assert prior art defenses for design patents by allowing defendants to forego claim charts. *See* L. Pat. R. 3.3(c) (requiring, "[o]*ther than for design patents*, a chart identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found . . .") (emphasis added).

Unable to justify its own delays, Hirsch tries to blame them on Cambria. This attempt to shift responsibility lacks merit. Hirsch states that its proposed amendments include "photographs of natural stone newly produced by Cambria." *Supra* at 4. But Hirsch does not identify or distinguish between any alleged prior art produced by Cambria and other prior art that Hirsch obtained from publicly available sources. Based on Hirsch's proposed appendices, it appears the only alleged prior art that Hirsch is referring to is a 2014 "trip report" to a quarry and unidentified "[n]atural stones" cited only by Bates number. Ex. 2 at 7-8, 19-20, 36-37, 43-44. This does not account for the vast majority of prior art that Hirsch seeks to add, which was not produced by Cambria and for which Hirsch has no excuse for its extreme delay.

Hirsch also argues that "Cambria's own documents—produced well after Hirsch's initial invalidity contentions—confirm that Cambria's patented products seek to mimic the appearance of natural stone." *Supra* at 4. But Hirsch did not need any documents from Cambria to allege this. Indeed, its original invalidity contentions made the same argument in August 2021. *See* Ex. 3 at 53 (arguing that "each of the Asserted Design Patents simulate naturally-occurring stone"). To the extent Hirsch is seeking to add additional arguments about Cambria's patents allegedly mimicking natural stone, these could have been raised at the outset of the case.

In addition to Cambria, Hirsch tries to shift responsibility to unnamed third parties that it subpoenaed. This argument also fails. According to Hirsch, these third parties "produced in August their own prior art illustrating slab products with similar naturally occurring stone aesthetics." *Supra* at 4. But Hirsch was already aware of many of these products *before* it received any documents from third parties, as shown by Hirsch's subpoenas, which requested documents about specific products by name. *See* Ex. 5 (highlighting requests in Hirsch's subpoenas for products that Hirsch seeks to add to its contentions). Regardless, even if Hirsch uncovered prior art through its subpoenas, Hirsch does not explain why it chose to serve the subpoenas in July 2022 (*id.*), a year after fact discovery opened and at the very end of the original discovery period that was scheduled to close in August 2022 (D.I. 43 at 3). Either way, Hirsch has not demonstrated the required diligence in adding such third-party prior art.

Hirsch's only other argument is that its new prior art is "material" and relevant to a resolution on the merits. *Supra* at 5. But that is true for any request to amend contentions. Hirsch cites a generic policy preference to resolve cases on the merits from *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990), yet it admits that this policy applies in the context of amendments to *pleadings*, not contentions under the Local Patent Rules. *Supra* at 5. As this Court has recognized, the standard for amending contentions under L. Pat. R. 3.7 "is readily distinguishable from the liberal standard for amending the pleadings in that it is decidedly conservative," with only "a modest degree of flexibility." *Merck*, 2014 WL 997532, at \*3 (quotation, alteration omitted). Because Hirsch fails to meet this "decidedly conservative" standard, Cambria respectfully submits that Hirsch's application to add new prior art should be denied.

### B. Hirsch fails to meet its burden to show good cause for disputing claim limitations that it previously conceded.

In addition to dozens of new prior art references for the asserted design patents, Hirsch seeks to raise new disputes over dozens of claim limitations in the asserted utility patents. *See* Ex. 1 at 8–26. Notably, Hirsch not only seeks to add new arguments for claim limitations that were already disputed, but also seeks to dispute *entire claim limitations* that it previously conceded are met by its accused products and process—both in its original contentions dated August 2021 and in its first amended contentions dated April 2022. *See* Ex. 3 at 7–21 (not disputing multiple claim limitations across all asserted utility patents); Ex. 4 at 8–21 (adding only a single noninfringement argument and continuing to concede multiple claim limitations).

Hirsch offers no plausible reason why it could not have disputed these claim limitations and included its new arguments in its original contentions over a year ago, or at a minimum, in its first amended contentions. There is no dispute that Hirsch was in the best position to evaluate its own products and process. If Hirsch had any basis to dispute that its products and process meet certain claim limitations, it could have done so at the outset of this case.

Without specifically addressing any limitations, Hirsch argues that its amendments relate to the "inherent randomness" of making quartz surface products. *Supra* at 2. But that is not a recently discovered argument. Hirsch's original contentions in August 2021 made the same argument that "the design of the Accused Instrumentalities has a significant degree of randomness that cannot be, and is not, controlled by Defendant." Ex. 3 at 6. Hirsch chose to use this argument as a basis to dispute only "the 'predefined,' 'repeatable' and 'predetermined'" limitations in the asserted claim. *Id*. Hirsch strategically chose *not* to use the alleged "inherent randomness" of its products to dispute any other claim limitation. Hirsch provides no basis to undo these strategic choices, which the parties have relied on for over a year.

Indeed, the parties raised claim construction disputes regarding the "predefined," "repeatable," and "predetermined" limitations that Hirsch originally disputed, and the Court resolved those disputes in Cambria's favor. *See* D.I. 88 at 11–16. It is only now that Hirsch's constructions for those limitations have been rejected by the Court that Hirsch is seeking to repackage the same argument under different claim limitations that it never contested or sought to construe before. This is improper. Allowing Hirsch to dispute new limitations after claim construction is completed—based on an argument that Hirsch has been aware of since this case began—would defeat the Local Patent Rule's central purpose of "prevent[ing] the shifting sands approach to claim construction." *Merck*, 2014 WL 997532, at *3 (quotation omitted).[6]

Unable to prove its own diligence, Hirsch again tries to shift the blame to Cambria by arguing that it is merely responding to Cambria's amended infringement contentions (which Hirsch did not oppose). That is a red herring. Hirsch's amendments have nothing to do with Cambria's unopposed amendments. Again, Hirsch is seeking to dispute claim limitations that it could have disputed before yet *chose* to concede, regardless of Cambria's infringement evidence.

---

[6] Hirsch's "inherent randomness" argument is that it is "impossible to control the location of each particle as it fell into the mold" and thus "each slab had a different appearance." *Supra* at 2. The Court has already rejected the argument that this alleged randomness is relevant to the asserted claims because the specification of Cambria's asserted patents "does not require a 'specific pattern' to be defined in advance" and "neither the claims themselves nor their specifications require absolute precision." D.I. 88 at 15.

Hirsch also mischaracterizes Cambria's unopposed amendments to its infringement contentions. Hirsch argues that Cambria's amendments reflect "a fundamental change in its theories" because Cambria's original contentions cited (among other evidence) admissions in patents by Hirsch's principal, Alex Xie, while Cambria's amended contentions cite (among other evidence) pictures of slabs and samples that were produced or inspected in June 2022. *Supra* at 2-3. But citing additional *evidence* is not a change in theory. It was reasonable for Cambria's original contentions to cite the Xie patents as *evidence* that the accused products and process infringe. *See TexasLDPC Inc. v. Broadcom Inc.*, No. 18-1966-SB, 2021 WL 1092578, at *1 (D. Del. Mar. 22, 2021) (finding it reasonable to rely on defendant's patents to allege infringement prior to discovery because "[i]f a company patents a way to do a task, then sells a product that does the task, it is plausible that the product implements the patent"). Likewise, it was reasonable for Cambria to supplement its infringement contentions with additional *evidence* obtained in discovery—i.e., pictures of the specific products that Hirsch made available for the first time in June 2022 (despite Cambria's repeated requests for earlier inspection)—particularly since Cambria diligently provided its amended contentions the following month in July 2022.

It makes no sense for Hirsch to argue that Cambria's reliance on pictures of products that *Hirsch* produced in discovery somehow justify Hirsch's new noninfringement arguments. The pictured products have been in Hirsch's possession (not Cambria's) since this case began. Hirsch could have evaluated these products for infringement or representativeness at the outset of the case. Instead, with possession and full knowledge of its products and process, Hirsch chose to concede multiple limitations in the asserted claims. It has no basis to change course now.

Nevertheless, Hirsch pretends that *Cambria* is the one introducing a new argument by assuming that the products Hirsch provided for inspection in June 2022 are "representative" of the accused product lines. *Supra* at 2. Hirsch's argument is baseless. Cambria's initial discovery requests, served on August 17, 2021, expressly sought "two representative samples" and "two representative slabs" of each accused product. Ex. 6 at 14 (Nos. 64-65). In response, Hirsch agreed that "Plaintiff may inspect Defendant's accused products at Defendant's facilities as [*sic*] a mutually agreeable time and date." Ex. 7 at 24-25. Notably, Hirsch did not lodge any objection to Cambria's request for "representative" products and thus waived any such objection. *See Hayes v. Bergus*, No. 13-4266 (SDW)(SCM), 2015 WL 5666128, at *3 (D.N.J. Sept. 24, 2015) ("objections not asserted in the initial response to a discovery request . . . will be deemed waived") (quotation omitted). When Hirsch finally made the requested products available in June 2022—after months of delays by Hirsch despite Cambria's repeated requests—Cambria reasonably assumed these products were representative, as Cambria had requested.

By contrast, Hirsch's view that it can (i) unilaterally delay an inspection of the accused products for nearly a year, (ii) select the specific slabs of accused products that it finally makes available for inspection after months of delays, and (iii) then turn around and assert that the specific slabs *it chose* to provide in discovery are not "representative" after all smacks of gamesmanship and should not be rewarded. While Hirsch has provided no basis to dispute that the inspected slabs are, in fact, representative of the accused products, the clear implication of Hirsch's argument is that it withheld from discovery other slabs that either *are* representative or allegedly do not infringe. But Hirsch cannot rely on evidence that it withheld from discovery. *See*

Fed. R. Civ. P. 37(c). Because Hirsch cannot rely on any allegedly representative or noninfringing products that it withheld from inspection, its proposed amendment is improper and futile.[7]

In short, Hirsch's amendments are not responsive to any "new" argument in Cambria's amended contentions; Hirsch's cited case law is distinguishable for this reason alone. Hirsch was fully aware of the alleged basis for its non-representativeness argument when it served its original contentions in August 2021 by arguing that "the Accused Instrumentalities ha[ve] a significant degree of randomness that cannot be, and is not, controlled by Defendant." Ex. 3 at 6. Again, despite making this argument, Hirsch chose not to dispute many limitations in the asserted claims, and further chose not to produce any alleged products that do not meet such limitations. Because Hirsch has failed to demonstrate good cause to dispute claim limitations that it chose to concede in both its original contentions and its first amended contentions, Cambria respectfully submits that Hirsch's application to amend its noninfringement contentions should be denied.

### III. Hirsch's Reply to Cambria's Opposition

Cambria's argument fails to overcome Hirsch's showing that it should be granted leave to amend its contentions. Notably, Cambria's only argument is that Hirsch was insufficiently "diligent" under Local Patent Rule 3.7. Cambria does not and cannot argue that it would be unfairly prejudiced by Hirsch's proposed amendments, which were served on Cambria six months before the current close of fact discovery. Nor does Cambria argue that Hirsch's amendments will require any modification of the case schedule (and they will not). Rather, Cambria seeks to impose a prohibitively—and excessively—high standard of "diligence" that is unsupported by the local rules or case law. Hirsch should be granted leave to amend its contentions.

#### A. The Design Patent Prior Art

At its core, Cambria's argument is simply that Hirsch should have found the design patent prior art sooner. Cambria does not indicate what amount of time, if any beyond preliminary[8] invalidity disclosures that were served in August 2021, would have been an appropriate time to supplement the prior art. Contrary to Cambria's argument, Hirsch has explained that it was diligent. As is normal in patent litigation, Hirsch and its counsel continued to investigate the prior art, which mainly consists of products that are not easily searchable, during discovery. That investigation led Hirsch to subpoena third parties to make sure it could establish the prior art status of the relevant art. That investigation also was based on Cambria's position during discovery that its products mimic natural stone. Further, Hirsch was diligent before its preliminary invalidity contentions, including by commissioning multiple prior art searches for design patent prior art.

---

[7] Hirsch's reply below cites an email in which Hirsch also offered to show, in addition to the slabs shown in New Jersey, a small number of slabs for four designs, including "b-grade" material, in Anaheim, California. *Infra* at 14; Ex. 8. Hirsch's exhibit conveniently omits Cambria's response asking whether Hirsch plans to rely on those slabs. Ex. 9. Hirsch never responded. Nor has Hirsch produced any photographs of those slabs or contended that they are representative of Hirsch's product lines or differ materially from the inspected slabs. As to the slabs in New Jersey, the notion that Cambria unilaterally chose to inspect a limited number of slabs is incorrect. Cambria inspected all slabs that were made available by Hirsch, and in some cases Hirsch represented that only one or two were available, as its own email confirms. Ex. 8.

[8] Cambria admonishes Hirsch for referring to the first round of contentions as "preliminary." *Supra*, p. 6). But the Court has also used this nomenclature. *See THF*, 705 F. Supp. 2d at 366 ("it is important to recognize that preliminary infringement contentions are still preliminary") (quote marks and citation omitted).

Hirsch also provided its supplemental prior art well before the close of discovery. The timing shows Hirsch acted with the requisite diligence that should be expected of a patent defendant. Further, nothing in the local rules or precedent states a black letter rule, as Cambria seems to assert, that a defendant cannot continue to search for prior art after service of the L. Pat. R. 3.3 contentions. Such a rule would undermine the interest in resolution of claim on the merits, especially where there is no prejudice to Cambria.

Cambria's other arguments amount to potshots that may be dismissed. Cambria criticizes Hirsch's statement that design patent prior art is inherently difficult to find, but notably does not attempt to rebut it in any way. Indeed, as noted above, precedent has recognized the difficulties in search for prior art weigh in favor of leave to amend. *See Acco Brands,* 2008 WL 2168379, at *1 (difficulty of locating the prior art weighed in favor of leave to amend); *Yodlee,* 2007 WL 1454259, at *2 (same).. Cambria argues both that the Local Patent Rules contain no diligence exception for design patent prior art and that the Local Patent Rules make it easier to assert prior art defenses against design patents. Both of these arguments are red herrings. If the Local Patent Rules contained a specific provision for additional design patent prior art, there would be never be a need for requests like Hirsch's—but the rules do plainly allow Hirsch to make its request. Second, the fact that the Local Patent Rules do not require claim charts for design patents is, presumably, based on the fact that design patent claims are pictures, not a list of limitations that can be charted as with utility patents. But, this has nothing to do with Hirsch's request, which is addressed to identifying additional prior art references, not claim charting.

Next, Cambria argues that its production of prior art is irrelevant. But Hirsch has already explained that Cambria's own production of prior art further informed Hirsch of Cambria's position as to what natural stone it hopes to emulate, which further informed Hirsch's prior art search efforts. Cambria's argument fails to undermine Hirsch's showing of diligence. Rather, Hirsch's defense of this case has included analysis of Cambria's document production, which is consistent with the realities of patent litigation, where documents are often produced after the exchange of preliminary contentions. This is a part of Hirsch's diligence argument, and Cambria's attempt to dismiss its own production does not undermine Hirsch's showing of diligence.

Finally, Cambria seeks to distance Hirsch's request from the Third Circuit's stated preference for resolution on the merits. This too is a red herring, because Hirsch explained that its request does meet the requirements of L. Pat. R. 3.7.

Hirsch was diligent in its efforts to identify prior art to the five design patents asserted by Cambria. The Court should grant Hirsch leave to add those references to its invalidity contentions.

  **B.**  **The Inherent Randomness Contentions**

At the status conference on February 1, 2023, the Court indicated Cambria would be allowed to amend its infringement contentions. As a matter of fairness, Hirsch should be able to amend its non-infringement contentions to counter the changes Cambria has made to is infringement positions. Specifically, Cambria does not dispute that the claim charting in its first infringement contentions cited passages to patents invented by Alex Xie, and not to any actual products. Nor does Cambria dispute that its first infringement contentions did not include the "representativeness" assertions contained in its amended contentions. Nor does Cambria argue that the time between service of Cambria's proposed amended infringement contentions and Hirsch's proposed amended non-infringement contentions shows a lack of diligence. Rather,

Cambria argues that Hirsch should have been more prescient in anticipating Cambria's change in approach, and have included its now-proposed amendments in its preliminary non-infringement contentions. The Court should reject Cambria's position.

Cambria first argues that Hirsch's preliminary non-infringement contentions "conceded" certain limitations. This is not true. Local Patent Rule 3.2A(b) requires that non-infringement contention "responses shall follow the order of the infringement claims chart that is required under L.Pat.R. 3.1(c), and shall set forth the party's agreement or disagreement with each allegation therein." Cambria's infringement allegations were based on patents, not pictures of slabs, and did not contain the "representativeness" argument added in its amended contentions. Thus, Hirsch responded to the allegations that were actually in the contentions, not hypothetical infringement allegations that could have been included. Similarly, Hirsch's responses to separate claim limitations ("predefined," "repeatable," and "predetermined") were a separate issue, and Cambria's allegations as to those limitations did not require Hirsch to predict what other arguments Cambria might make. Further, Hirsch is not changing its claim construction arguments[9], so Cambria's "shifting sands" argument is inapposite. If anything, it is Cambria that has shifted its approach.

Next, Cambria argues that it simply cited "additional evidence" in its amended infringement contentions. Hirsch disagrees. In its amended contentions, Cambria removes references to the Xie patents, and instead relies on actual products. Further, Cambria's "representativeness" allegation is new in its amended contentions. This is not merely adding new evidence, but rather a change in approach. Hirsch believes infringement allegations should be evaluated on their merits, and has consented to Cambria's amendments. But it is unfair for foreclose Hirsch's ability to respond to those changes.

Cambria next appears to argue that Hirsch has waived any objection to Cambria's "representativeness" argument. Cambria's argument is convoluted, and incorrect. Hirsch has been clear with Cambria that there is inherent randomness in its products' appearances. Hirsch's Responses to Cambria's Second Set of Requests for Admission Nos. 31, 33, 34, 35 (June 20, 2022), Hirsch's Supplemental Responses to Cambria's First Set of Requests for Admissions Nos. 6, 7, 9, 17, 21, 24 (Jul. 25, 2022); Hirsch's Second Supplemental Response to Cambria's First Interrogatories No. 1 at 25–26 (Sep. 2, 2022) [10]; Hirsch's Preliminary Non-Infringement and Invalidity Contentions at 6 (Aug. 20, 201) ("[T]he design of the Accused Instrumentalities has a significant degree of randomness that cannot be, and is not, controlled by Defendant.")

Finally, Cambria misrepresents the facts surrounding its inspection of Hirsch's products. First, there were logistical difficulties in arranging the inspection. Hirsch discontinued the manufacture of its accused products years ago. Further, these slabs are very large (weighing many hundreds of pounds). Thus, Hirsch maintained inventory of different products at its different warehouses through the country, and mainly on the east and west coasts. For the inspection, Hirsch paid to move slabs to its New Jersey location, in order to make things easier on everyone. Cambria agreed to that approach, but those logistics took time. Cambria was not required to move to compel the inspection, and has not argued that the inspection was inadequate. Further, the timing on the inspection did not prejudice Cambria in any way, including because it has been

---

[9] If needed, Hirsch reserves all right to appeal the Court's claim construction ruling.

[10] These materials have been marked under the Discovery Confidentiality Order in this case, and Hirsch will submit them for the Court's in camera review if the Court wishes.

allowed to amend its infringement contentions based on that inspection. Next, it is incorrect for Cambria to say that Hirsch selectively made slabs available for inspection. When available, Hirsch made many slabs available at inspection (Exh. 8, Email from D. Robinson to E. Reig (May 27, 2022)), and was prepared to spend as much time as needed to move slabs to allow Cambria to inspect as many as it wanted. In addition, many of Hirsch's slabs have been sold, yet Cambria made no effort to inspect those slabs. During the telephonic meet-and-confer process to arrange the inspection, Hirsch clearly conveyed that its slabs had inherent randomness in appearance. Thus, Cambria's complains about the inspection are a red herring for many reasons.

In sum, Hirsch simply asks for the ability to respond to the new allegations made in Cambria's amended infringement contentions. Hirsch has not made the concessions that Cambria says it has, and Cambria's complaints about prejudice are unfounded. As a matter of fairness, Hirsch should be allowed to amend its non-infringement contentions.

* * *

The parties thank Your Honor for considering the above positions. Should Your Honor have any questions, we are available at your convenience.

Respectfully submitted,

s/ Erik Dykema
Counsel for Defendant
Hirsch Glass Corp.

Respectfully submitted,

s/ James S. Richter
Counsel for Plaintiff
Cambria Company LLC

Encls. (Exs. 1–9)

cc: All Counsel of Record (by ECF)

63152069.2
63168434.1