# EXHIBIT 4

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

——————————————  x
                             :
CAMBRIA COMPANY LLC,         :   Honorable Michael A. Shipp, U.S.D.J.
                             :
              Plaintiff,     :   Civil No. 21 CV 10092 (MAS)(LHG)
v.                           :
                             :
                             :
HIRSCH GLASS CORP.,          :
d/b/a SPECTRUM QUARTZ        :
                             :
              Defendant.     :
                             :
                             :
——————————————  x

**DEFENDANT HIRSCH GLASS CORP.'S**
**AMENDED L. PAT. RULE 3.2A, 3.3, AND 3.4 DISCLOSURES**

**I.    INTRODUCTORY STATEMENT**

Defendant Hirsch Glass Corp. ("Defendant" or "Hirsch"), by and through its counsel, hereby serves its ~~Preliminary~~ Amended Non-Infringement Contentions and Amended, ~~Preliminary~~ Invalidity Contentions pursuant to L. Pat. Rules 3.2A, 3.3, and 3.7, and by agreement of Parties (collectively the "Contentions")~~, and accompanying document disclosure (collectively the "Contentions")~~ on Plaintiff Cambria Company LLC ("Cambria" or "Plaintiff"), regarding all claims currently asserted to be infringed (the "Asserted Claims"), namely, for U.S. Patent Nos. 9,718,303 (the "'303 Patent"), 9,993,942 (the "'942 Patent"), and 10,300,626 (the "'626 Patent") (collectively, the "Asserted Utility Patents"), and U.S. Patent Nos. D712,670 (the "D'670 Patent"), D737,577 (the "D'577 Patent"), D750,905 (the "D'905 Patent"), D780,332 (the "D'332 Patent"), and D780,333 (the "D'333 Patent") (collectively, the "Asserted Design Patents," and, together with the Asserted Utility Patents, the "Asserted Patents"). The required accompanying document disclosures were provided with Hirsch's Preliminary Non-Infringement Contentions, Preliminary

1

Invalidity Contentions, and accompanying document disclosures dated August 20, 2021 and via service to Cambria of the documents filed in *Inter Partes* Review Nos. IPR2022-00582 (dated February 10, 2022, regarding U.S. Patent No. 9,718,303), IPR2022-00583 (dated February 11, 2022, regarding US. Patent No. 10,300,626), and IPR 2022-00589 (dated February 10, 2022, regarding U.S. Patent No. 9,993,942).These Contentions are served pursuant to L. Pat. Rules 3.2A, 3.3, and 3.4, and this Court's Scheduling Order (Dkt. 43).

Each of the Asserted Claims of the Patents-in-Suit is either non-infringed or invalid (or both). Non-infringement of the Asserted Utility Patents' claims occur where the accused technology lacks an element of the claim (both literally and under the doctrine of equivalents). Non-infringement of the Asserted Design Patents occurs where the ordinary observer, familiar with prior art designs, would be deceived in the believing the accused materials are the same as the patented designs. Invalidity occurs where the Asserted Patents' claims fail to comply with 35 U.S.C. §§ 101, 102, 103, 112, and/or, in the case of design patents, failure to comply with 35 U.S.C. § 171. Invalidity can also occur based on judicially-created rules, e.g., obviousness-type double patenting. The applicable Local Patent Rules only require disclosure of a subset of possible invalidity theories.

With respect to the Asserted Claims and based on its investigation to date, Hirsch' hereby provides the information required by L. Pat. Rules 3.2A and, 3.3, and 3.4.

## II.    RESERVATIONS

These Contentions are based on Defendant's current understanding of the Asserted Claims as applied in Plaintiffs' Infringement Contentions, served July 6, 2021. To the extent that these Contentions reflect constructions of claim limitations consistent with or implicit in Plaintiffs' Infringement Contentions, no inference is intended, nor should any be drawn, that Defendant agrees with the construction. These Contentions are based on Defendant's present understanding

2

of the terms in the Asserted Claims and may address various potential and alternative positions regarding the meaning and scope of the Asserted Claims. Defendant reserves the right to contest Plaintiffs' proposed claim constructions at *Markman* and to amend and/or supplement these Contentions in response to any *Markman* ruling in this case or as otherwise allowed. To the extent that these Contentions reflect or suggest a particular interpretation or reading of the claim elements, Hirsch also does not adopt, advocate, or acquiesce to such an interpretation or reading. Moreover, these should not be construed as constituting any admission by Hirsch that any accused products or services, including any current or past versions of those products or services, are covered by any asserted claim. To the extent that prior art cited for a particular limitation discloses functionality that is the same or similar in some respect to the alleged functionality in the accused products and/or services as set forth in the Contentions, Defendant does not concede that those limitations are in fact met by those accused functionalities.

Defendant continues its search for and analysis of relevant prior art and, therefore, reserves its right to revise, amend, and/or supplement the information provided herein, including identifying, charting, and relying on additional references and/or specimens should Defendant's continued search and analysis yield additional information or reference(s). Prior art not included in this document, whether known or not known to Defendant, may become relevant. In particular, Hirsch is currently unaware of the extent, if any, to which Plaintiff will contend the limitations of Asserted Claims are not disclosed in the prior art identified herein. To the extent that such an issue arises, Defendant reserves the right to identify other references (whether currently known or unknown) that would render obvious the allegedly missing limitation(s) of the disclosed device or method and to supplement its contentions accordingly. Defendant further reserves all rights to amend these Contentions in response to learning additional information, such as the identification

3

of other prior art references, information received from Plaintiffs or third parties during discovery, and/or in response to any decision by the Court, such as a claim construction ruling.

Defendant's example claim charts cite teachings and disclosures of the prior art as applied to limitations of the Asserted Claims. Persons having ordinary skill in the art ("PHOSITA") may, however, view an item of prior art in context of other publications, literature, products, and the PHOSITA's understanding. As such, the cited portions identified in the claim charts are only representative examples. Defendant reserves the right to rely on any other, uncited portions of the prior art references and on other publications, including prosecution history and documents relating to prior litigation, and expert testimony as aids in understanding and interpreting the cited portions, as providing context thereof, and as additional evidence that the prior art discloses a claim limitation or the invention as a whole. Defendant reserves the right to rely on uncited portions of the prior art references (including any other references identified herein but not cited in the exemplary claim charts included herewith), other publications, and testimony to establish the basis for anticipation and/or the combination of certain cited references that render obvious the Asserted Claims. Defendant also reserves all rights to challenge any of the claim terms and/or limitations herein under 35 U.S.C. § 112, including arguing that a claim term or limitation are indefinite, not supported by the written description, and/or not enabled. Nothing herein shall be construed as a waiver of any argument available under 35 U.S.C. § 112. Similarly, Defendant reserves all rights to challenge the claims based on non-compliance with 35 U.S.C. § 101. Defendant also reserves all right to raise invalidity challenges that are not required to be disclosed under L. Pat. Rule 3.3, e.g., non-compliance with 35 U.S.C. § 171 and obviousness—type double patenting.

The references discussed in the example claim charts (as well as other references identified herein) may disclose the elements of the Asserted Claims explicitly and/or inherently and may be

relied upon to show the state of art in the relevant time frame. The example obviousness combinations are intended to be representative of the combinations that may be relied upon to demonstrate that the Asserted Claims are obvious, and are provided as alternatives to the anticipation contentions and are not to be construed as suggesting that any reference included in any of the combinations is not by itself anticipatory. Defendant reserves the right to rely on other combinations of the prior art references identified herein (and/or any other references that are identified during the course of discovery), whether or not such combinations are explicitly set forth in the example claim charts.

Further, Defendant may also rely on the invalidity positions and arguments made in the following documents, pleadings, transcripts, and exhibits, each of which is incorporated by reference as if fully set forth herein:

- The file history of the Asserted Patents and any related applications, whether foreign or domestic, and any references cited therein;
- Any contentions, briefs, or documents filed or served in this or other proceedings that involve manufactured decoration slab technology (e.g., other patent cases filed by Cambria, and any related IPRs or PGRs);
- Any documents or deposition discovery provided in the future in response to any outstanding subpoena or discovery request in this case; and
- Any *inter partes* review or other post-grant trial involving the Asserted Patents or other Cambria technology, whether filed by Defendant or otherwise.

Defendant reserves the right to supplement or otherwise amend these Contentions in response to any expert report, or in response to the Court's claim construction order. Defendant also reserves

the right to supplement or otherwise amend these Contentions in response to any rebuttal evidence by Plaintiff or as otherwise may be necessary or appropriate under the circumstances.

**III.    L. PAT. R. 3.2A: NON-INFRINGEMENT CONTENTIONS AND RESPONSES**

**A.    L. Pat. R. 3.2A(a) and (b)**

L. Pat. Rule 3.2A requires (a) The written basis for [Defendant's] Non-Infringement Contentions and responses that is in the following form: (b) The party's responses shall follow the order of the infringement claims chart that is required under L. Pat. R. 3.1(c), and shall set forth the parties agreement or disagreement with each allegation therein, including any additional or different claims at issue."

With respect to asserted claims of the Asserted Utility Patents, the written basis for Defendant's Non-Infringement Contentions and responses are that one or more limitation of the asserted claim is missing from the Accused Instrumentality, both literally and under the doctrine of equivalents (where available). The Asserted Utility Patents generally related to various permutations of a few claim limitations. The Accused Instrumentalities lack certain fundamental features of the claimed inventions. For example, the design of the Accused Instrumentalities has a significant degree of randomness that cannot be, and is not, controlled by Defendant. Thus, the Accused Instrumentalities lack the "predefined," "repeatable" and "predetermined" patterns required by various of Plaintiff's claims. The Accused Instrumentalities also lack transvers veins. The Accused Instrumentalities are also not offered or manufactured as a "set," as required by certain claims of the '626 and '303 patents. By way of further example, the Accused Instrumentalities have substantial mixing between the different particulate mixes, which differentiates the Accused Instrumentalities from the claims requiring "substantially unmixed" veins or that one particulate be "absent" from another. These and other differences between the Asserted Utility Patents' claims and the Accused Instrumentalities are identified in the charts

6

below. Furthermore, the Accused Instrumentalities encompass a wide variety of designs, and, as noted below, certain Accused Instrumentalities lack the particular design elements claims in certain of the asserted dependent claims.

Moreover, Plaintiff's L. Pat. R. 3.1 infringement contentions chart for the Asserted Utility Patents relies on patent documents. A patent, by its mere existence, does not infringe another patent because a patent does not make, use, sell, offer to sell, or import another patent's claim(s). Further, Defendant do not concede that the Xie patents relied on by Plaintiff in its infringement contentions are necessarily an accurate proxy for Defendant's actual products and method of making them vis-à-vis the asserted patent claims. As a result, Plaintiff's infringement contentions fail to show infringement by Defendant's actual products and methods. Defendant reserves all rights to supplement its non-infringement contentions and invalidity contentions should Plaintiff correct its infringement contentions to rely on products and methods rather than patent disclosures.

For the Asserted Design Patents, the written basis for Defendant's Non-Infringement Contentions and responses are that the Accused Instrumentalities fail to infringe any of the Asserted Design Patents under the Federal Circuit's ordinary observer test. That is, the ordinary observer would not believe that that the design of the Accused Instrumentalities is not the same as any of the designs claimed in Plaintiffs' design patents.

For the Asserted Utility Patents' claims, below is a chart that follows the order of the infringement charts required under L. Pat. R. 3.1(c) and which identifies the elements missing in the Accused Instrumentalities. L. Pat. R. 3.1(c) does not require a claim chart for design patents, and so no charting regarding the Asserted Design Patents is provided herein. Hirsch denies that it is liable for infringement of any of Cambria's design patents.

| U.S. Patent 9,718,303 | Limitations Missing from the Accused Instrumentalities |
|---|---|
| 1. A processed slab, comprising: | |
| a major surface at least 2 feet wide by at least 6 feet long and extending perpendicularly to a slab thickness, | |
| the major surface having at least a first pigmented vein extending generally lengthwise from edge-to-edge that separates at least second and third pigmented veins extending generally lengthwise and positioned on opposing sides of the first pigmented vein, | |
| wherein the first pigmented vein is defined by a first particulate mineral mix and at least the first particulate mineral mix is separated from and forms a substantially unmixed layer with respect to a second particulate mineral mix defining the second pigmented vein | The Accused Instrumentalities lack the claimed "substantially unmixed layer." |
| according to a predefined layer pattern | The Accused Instrumentalities lack the claimed "predefined layer pattern." |
| such that each of the first and second pigmented veins has a vein thickness equal to and parallel to the slab thickness, | The Accused Instrumentalities lack the claimed "vein thickness equal to and parallel to the slab thickness." |
| the second particulate mineral mix being different than the first particulate mineral mix. | |
| 2. The processed slab of claim 1, wherein the third pigmented vein is defined by the second particulate mineral mix. | See claim 1. |
| 3. The processed slab of claim 1, wherein the third pigmented vein is defined by a third particulate mineral mix, and at least the first particulate mineral mix is separated from and forms a substantially unmixed layer with respect to the third particulate mineral mix according to the predefined layer pattern. | The Accused Instrumentalities lack the claimed "substantially unmixed layer" and "predefined layer pattern." See also claim 1. |
| 4. The processed slab of claim 3, comprising a fourth pigmented vein, wherein the fourth pigmented vein is defined by a fourth particulate mineral mix, and at least the first particulate mineral mix is separated from and forms a substantially unmixed layer with respect | The Accused Instrumentalities lack the claimed "fourth particulate mineral mix," "substantially unmixed layer," and "predefined layer patter." See also claims 1 and 3. |

Formatted: Keep with next

8

| | |
|---|---|
| to the fourth particulate mineral mix according to the predefined layer pattern. | |
| 5. The processed slab of claim 1, further comprising a plurality of transverse pigmented veins extending transversely to and intersecting the first pigmented vein, the transverse pigmented veins having a different color than the first pigmented vein. | The Accused Instrumentalities lack the claimed "plurality of transverse pigmented veins extending transversely to and intersecting the first pigmented vein, the transverse pigmented veins having a different color than the first pigmented veins." See also claim 1. |
| 6. The processed slab of claim 5, wherein at least one of the transverse pigmented veins extends generally widthwise from edge-to-edge. | The Accused Instrumentalities lack the claimed "at least of one the transverse pigmented veins extends generally widthwise from edge-to-edge." See also claims 1 and 5. |
| 7. The processed slab of claim 5, wherein the transverse pigmented veins are thinner than the first pigmented vein. | The Accused Instrumentalities lack the claimed "transverse pigmented veins are thinner than the first pigmented vein." See also claims 1 and 5. |
| 8. The processed slab of claim 1, wherein each of the particulate mineral mixes includes a quartz material and at least one binder. | See claim 1. |
| 9. The processed slab of claim 1, wherein the slab comprises at least four differently colored particulate mineral mixes distributed in a series of successive unmixed layers according to the predefined layer pattern. | The Accused Instrumentalities lack the claimed "at least four differently colored particulate mineral mixes," "successive unmixed layers," and "predefined layer pattern." See also claim 1. |
| 10. The processed slab of claim 1, wherein the second and third pigmented veins extend generally lengthwise from edge-to-edge of the slab. | Certain of the Accused Instrumentalities lack the claimed "second and third pigmented veins extend generally lengthwise from edge-to-edge of the slab." |
| 11. The processed slab of claim 1, wherein each of the first, second, and third pigmented veins has a vein thickness equal to and parallel to the slab thickness. | The Accused Instrumentalities lack the claimed "vein thickness equal to and parallel to the slab thickness." See also claim 1. |
| 12. The processed slab of claim 11, further comprising a plurality of transverse pigmented veins extending transversely to and intersecting the first pigmented vein, the transverse pigmented veins having a different color than the first, second, and third pigmented veins, wherein at least one of the transverse pigmented veins extends generally widthwise from edge-to-edge, and wherein the transverse pigmented veins | The Accused Instrumentalities lack the claimed "plurality of transverse pigmented veins extending transversely to and intersecting the first pigmented vein, the transvers pigmented veins having a different color than the first, second, and third pigmented veins, wherein at least one of the transverse pigmented veins extends generally widthwise from edge-to-edge, and wherein the transvers pigmented veins have a vein thickness less than the slab thickness." See also claims 1 and 11. |

9

| | |
|---|---|
| have a vein thickness less than the slab thickness. | |
| 13. The processed slab of claim 1, wherein the major surface of the slab is polished and emulates the appearance of a quarried stone slab due at least in part to the first and second particulate mineral mixes distributed according to the predefined pattern. | The Accused Instrumentalities lack the claimed "predefined pattern." See also claim 1. |
| 14. A set of separately molded processed slabs, each respective slab of the set comprising | The Accused Instrumentalities are not offered or manufactured as a "set." |
| a major surface at least 2 feet wide by at least 6 feet long and extending perpendicularly to a slab thickness, | |
| the major surface having at least a first pigmented vein extending generally lengthwise that separates at least second and third pigmented veins extending generally lengthwise and positioned on opposing sides of the first pigmented vein, | |
| wherein the first pigmented vein is defined by a first particulate mineral mix and at least the first particulate mineral mix is separated from and forms a substantially unmixed layer with respect to a second particulate mineral mix defining the second pigmented vein | The Accused Instrumentalities lack the claimed "substantially unmixed layer." |
| according to a predefined layer pattern | The Accused Instrumentalities lack the claimed "predefined layer pattern." |
| such that each of the first and second pigmented veins has a vein thickness equal to and parallel to the slab thickness, the second particulate mineral mix being different than the first particulate mineral mix, | The Accused Instrumentalities lack the claimed "vein thickness equal to and parallel to the slab thickness." |
| and wherein the first, second and third pigmented veins extend substantially lengthwise on each respective slab such that the major surface of each respective slab in the set has similarly positioned and colored substantially lengthwise veins. | The Accused Instrumentalities are not offered or manufactured as a set and therefore lack the claimed "each respective slab." |
| 15. The set of separately molded processed slabs of claim 14, wherein at least one of the lengthwise extending pigmented veins of each respective slab | Certain of the Accused Instrumentalities lack the claimed "at least one of the lengthwise extending pigmented veins of each respective slab extends |

10

| | |
|---|---|
| extends fully lengthwise from edge-to-edge of the respective slab. | fully lengthwise from edge-to-edge of the respective slab."  See also claim 14. |
| 16. The set of separately molded processed slabs of claim 14, wherein the major surface of each respective slab of the set further comprises a plurality of transverse pigmented veins extending transversely to and intersecting the substantially lengthwise veins, the transverse pigmented veins having a different color than the substantially lengthwise veins. | The Accused Instrumentalities lack the claimed "plurality of transverse pigmented veins extending transversely to and intersecting the substantially lengthwise veins, the transverse pigmented veins having a different color than the substantially lengthwise veins." See also claim 14. |
| 17. The set of separately molded processed slabs of claim 16, wherein the transverse pigmented veins of each respective slab are thinner than the substantially lengthwise veins of the respective slab. | The Accused Instrumentalities lack the claimed "transverse pigmented veins of each respective slab are thinner than the substantially lengthwise veins of the respective slab." See also claims 14 and 16. |
| 18. The set of separately molded processed slabs of claim 14, wherein each of the first, second, and third pigmented veins has a vein thickness equal to and parallel to the slab thickness. | The Accused Instrumentalities lack the claimed "each of the first, second, and third pigmented veins has a vein thickness equal to and parallel to the slab thickness." See also claim 1. |
| 19. The set of separately molded processed slabs of claim 14, wherein the third pigmented vein is defined by the second particulate mineral mix. | See claim 14. |
| 20. The set of separately molded processed slabs of claim 14, wherein the third pigmented vein is defined by a third particulate mineral mix, and at least the first particulate mineral mix is separated from and forms a substantially unmixed layer with respect to the third particulate mineral mix according to the predefined layer pattern, and wherein each of the first, second, and third pigmented veins has a vein thickness equal to and parallel to the slab thickness. | The Accused Instrumentalities lack the claimed "substantially unmixed layer" and "wherein each of the first, second, and third pigmented veins has a vein thickness equal to and parallel to the slab thickness." See also claim 14. |

| | |
|---|---|
| U.S. Patent 9,993,942 | Limitations Missing from the Accused Instrumentalities |

11

| | |
|---|---|
| 1. A process of forming a processed slab from different particulate mineral mixes, comprising: | |
| positioning a slab mold in a substantially non-horizontal orientation; | |
| dispensing multiple different particulate mineral mixes into the substantially non-horizontally oriented mold so as to fill a mold space that is at least 6 feet long by at least 2 feet wide, the multiple different particulate mineral mixes being differently pigmented; | |
| adjusting the mold to a substantially horizontal orientation while the multiple different particulate mineral mixes are in the mold; and | |
| vibrating and compacting the multiple different particulate mineral mixes arranged in the mold while the mold is in the substantially horizontal orientation. | In the Accused Instrumentalities, the combined quartz composite material is not vibrated or compacted while in "the mold." Instead, the quartz composite material is removed from "the mold" prior to being vibrated and compressed. |
| 2. The process of claim 1, wherein the dispensing comprises depositing the multiple different particulate mineral mixes into the mold according to a predefined and repeatable pattern so as to define successive layers of multiple different particulate mineral mixes. | The Accused Instrumentalities lack the claimed "predefined and repeatable pattern." See also claim 1. |
| 3. The process of claim 2, wherein at least some of the successive layers of multiple different particulate mineral mixes provide lengthwise veins of the processed slab. | Certain of the Accused Instrumentalities lack the claimed "lengthwise veins." See also claim 2. |
| 4. The process of claim 1, wherein the dispensing multiple different particulate mineral mixes comprises pouring multiple differently pigmented particulate quartz mixes into the substantially non-horizontally oriented mold according to a predetermined pattern. | The Accused Instrumentalities lack the claimed "predetermined pattern." See also claim 1. |
| 5. The process of claim 4, wherein the substantially non-horizontally oriented mold defines a mold space having a first edge thickness that is smaller than and parallel to a second edge thickness | The Accused Instrumentalities lack the claimed "first edge thickness that is smaller than and parallel to a second edge thickness proximate to an upwardly facing opening of the mold." See also claim 4. |

| | |
|---|---|
| proximate to an upwardly facing opening of the mold. | |
| 6. The process of claim 5, wherein the vibrating and compacting is contemporaneous and provides a rectangular processed slab having a thickness that is generally constant at its four edges. | See claim 5. |
| 7. The process of claim 4, wherein the pouring according to the predetermined pattern provides successive layers of differently pigmented particulate quartz mixes, wherein at least some of the successive layers of differently pigmented particulate quartz mixes provide lengthwise veins of the processed slab. | The Accused Instrumentalities lack the claimed "predetermined pattern." See also claim 4. |
| 8. The process of claim 7, wherein the successive layers of differently pigmented particulate quartz mixes provide at least a first vein extending generally lengthwise from edge-to-edge. | Certain of the Accused Instrumentalities lack the claimed "at least a first vein extending generally lengthwise from edge-to-edge." See also claim 7. |
| 9. The process of claim 8, wherein the first vein is defined by a first particulate quartz mix, a second vein is defined by a second particulate quartz mix, and a third vein is defined by a third particulate quartz mix. | See claim 8. |
| 10. The process of claim 9, wherein the first vein is substantially unmixed with respect to at least second and third veins extending generally lengthwise and positioned on opposing sides of the first vein. | The Accused Instrumentalities lack the claimed "substantially unmixed" limitation. See also claim 9. |
| 11. The process of claim 8, wherein the first vein is defined by a first particulate quartz mix, and the second and third veins are defined by a second particulate quartz mix. | See claim 8. |
| 12. The process of claim 8, comprising dispensing a particulate mineral mix to provide a transverse vein. | The Accused Instrumentalities lack the claimed "transverse vein." See also claim 8. |
| 13. The process of claim 12, wherein dispensing the particulate mineral mix to provide the transverse vein occurs after adjusting the mold to a substantially horizontal position. | The Accused Instrumentalities lack the claimed "transverse vein" that is made after adjusting the mold to a substantially horizontal position. See also claim 12. |

13

| | |
|---|---|
| 14. The process of claim 3, wherein at least two of the lengthwise veins each have a vein thickness equal to and parallel to the slab thickness. | The Accused Instrumentalities lack the claimed "vein thickness equal to and parallel to the slab thickness." See also claim 3. |
| 15. The process of claim 14, wherein at least one of the lengthwise veins has a vein width on a front major face of the processed slab that is greater than the slab thickness. | Certain of the Accused Instrumentalities lack the claimed "at least one of the lengthwise veins has a vein width on a front major face of the processed slab that is greater than the slab thickness." See also claim 14. |
| 16. The process of claim 14, wherein at least one of the lengthwise veins has a vein width on a front major face of the processed slab that is less than the slab thickness. | See claim 14. |
| 17. The process of claim 3, wherein at least one of the veins is visible on both a front major surface and a rear major surface of the processed slab. | See claim 3. |
| 18. The process of claim 8, wherein the dispensing comprises depositing the multiple different particulate mineral mixes into an open end of the mold. | See claim 8. |
| 19. The process of claim 8, comprising adjusting a mold end cap from an open position to a closed position before adjusting the mold to the substantially horizontal orientation. | See claim 8. |
| 20. A process of forming a processed slab from particulate mineral mixes, comprising: | |
| positioning a slab mold in a substantially vertical orientation; | |
| dispensing at least first and second particulate mineral mixes into the substantially vertically oriented mold so as to fill a mold space that is at least 6 feet long by at least 2 feet wide; | |
| adjusting the mold to a substantially horizontal orientation while the first and second particulate mineral mixes are positioned in the mold; and | |
| compacting the particulate mineral mixes arranged in the mold while the mold is in the substantially horizontal orientation; | In the Accused Instrumentalities, the combined quartz composite material is not compacted while in "the mold." Instead, the quartz composite material is removed from "the mold" prior to being vibrated and compressed. |

14

| | |
|---|---|
| wherein the first and second particulate mineral mixes are dispensed according to a predefined pattern to provide at least a first vein extending generally lengthwise from edge-to-edge defined by the first particulate mineral mix. | The Accused Instrumentalities lack the claimed "predefined pattern" and "at least a first vein extending generally lengthwise from edge-to-edge." |
| 21. The process of claim 20, comprising dispensing a third particulate mineral mix into the substantially vertically oriented mold, wherein the third particulate mineral mix is dispensed according to the predefined pattern such that at least the first vein is separate and substantially unmixed with respect to a third vein defined by the third particulate mineral mix. | The Accused Instrumentalities lack the claimed "predefined pattern" and "substantially unmixed" limitations. Certain of the Accused Instrumentalities lack the claimed "third vein defined by the third particulate mineral mix." See also claim 20. |
| 22. The process of claim 20, comprising vibrating the particulate mineral mixes arranged in the mold while the mold is in the substantially horizontal orientation. | See claim 20. |
| 23. The process of claim 20, wherein the first and second particulate mineral mixes are dispensed according to a predefined pattern to provide the first vein and a second vein, and wherein each of the first and second veins has a vein thickness equal to and parallel to the slab thickness. | The Accused Instrumentalities lack the claimed "predefined pattern" and "each of the first and second veins has a vein thickness equal to and parallel to the slab thickness."  See also claim 20. |
| 24. The process of claim 20, wherein the first and second particulate mineral mixes each comprise between 8% and 95% quartz material. | See claim 20. |
| 25. The process of claim 23, wherein at least one of the lengthwise veins has a vein width on a front major face of the processed slab that is greater than the slab thickness. | Certain of the Accused Instrumentalities lack the claimed "at least one of the lengthwise veins has a vein width on a front major face of the processed slab that is greater than the slab thickness." See also claim 23. |
| 26. The process of claim 23, wherein at least one of the lengthwise veins has a vein width on a front major face of the processed slab that is less than the slab thickness. | See claim 23. |
| 27. A process of forming a processed slab, comprising: | |
| positioning a slab mold in a substantially non-horizontal orientation; | |

15

| | |
|---|---|
| dispensing more than one particulate mineral mixes into the slab mold while the slab mold is retained in the substantially non-horizontal orientation; and | |
| vibrating and compacting the more than one particulate mineral mixes after adjusting the mold to a substantially horizontal orientation. | In the Accused Instrumentalities, the combined quartz composite material is not vibrated or compacted while in "the mold." Instead, the quartz composite material is removed from "the mold" prior to being vibrated and compressed. |
| 28. The process of claim 27, wherein the substantially non-horizontal orientation is a substantially vertical orientation. | See claim 27. |
| 29. The process of claim 28, wherein the step of dispensing comprises depositing the more than one particulate mineral mixes into the mold according to a predefined and repeatable pattern so as to define successive layers of the more than one particulate mineral mixes. | The Accused Instrumentalities lack the claimed "predefined and repeatable pattern." |
| 30. A processed slab formed according to the process of claim 1, wherein the processed slab has a length of at least 6 feet, a width of at least 2 feet and a slab thickness between about 0.2 cm and 5 cm. | See claim 1. |
| 31. The processed slab of claim 30, wherein at least one of the multiple different particulate mineral mixes is dispensed to provide at least one lengthwise vein of the processed slab extending from edge-to-edge of the processed slab and having vein thickness equal to and parallel to the slab thickness. | The Accused Instrumentalities lack the claimed "lengthwise vein of the processed slab extending from edge-to-edge of the processed slab" and a "vein thickness equal to and parallel to the slab thickness." See also claim 30. |
| 32. The processed slab of claim 30, wherein the multiple different particulate mineral mixes are dispensed to provide a first vein of the processed slab defined by a first particulate quartz mix, and a second vein of the processed slab defined by a second particulate quartz mix, the first and second veins being differently pigmented. | See claim 30. |
| 33. The processed slab of claim 32, wherein the multiple different particulate mineral mixes are dispensed to provide the first vein, the second vein, and a third vein of the processed slab, wherein the first vein is defined by the first particulate | Certain of the Accused Instrumentalities lack the claimed "third vein." See also claim 32. |

16

| | |
|---|---|
| quartz mix, and the second and third veins are defined by the second particulate quartz mix. | |
| 34. The processed slab of claim 32, wherein the first and second veins of the processed slab each have a vein thickness equal to and parallel to the slab thickness. | Certain of the Accused Instrumentalities lack the claimed "vein thickness equal to and parallel to the slab thickness." See also claim 32. |
| 35. The processed slab of claim 30, wherein the slab thickness of the processed slab is the same at its four edges. | See also claim 30. |

| U.S. Patent 10,300,626 | Limitations Missing from the Accused Instrumentalities |
|---|---|
| 1. A processed slab comprising a quartz material, comprising: | |
| a major surface at least 2 feet wide by at least 6 feet long and extending perpendicularly to a slab thickness, | |
| the major surface having a first substantially bowed pigmented vein that extends generally lengthwise from edge-to-edge, | The Accused Instrumentalities lack the claimed "substantially bowed pigmented vein that extends generally lengthwise from edge-to-edge." |
| wherein the first substantially bowed pigmented vein has a vein thickness equal to and parallel to the slab thickness, | The Accused Instrumentalities lack the claimed "substantially bowed pigmented vein has a vein thickness equal to and parallel to the slab thickness." |
| wherein the slab comprises at least two different particulate mineral mixes distributed in a series of successive layers | |
| according to a predefined pattern, | The Accused Instrumentalities lack the claimed "predefined pattern." |
| a first of the two different particulate mineral mixes defining the first substantially bowed pigmented vein, and | |
| wherein the first particulate mineral mix occupies the entire slab thickness at a first region that defines the first substantially bowed pigmented vein and a second of the two different particulate mineral mixes occupies the entire slab thickness at a second region, the first particulate mineral mix being absent from the second region and the second particulate mineral mix being absent from the first region. | Certain of the Accused Instrumentalities lack the claimed "first particulate mineral mix occupies the entire slab thickness at a first region that defines the first substantially bowed pigmented vein and a second of the two different particulate mineral mixes occupies the entire slab thickness at a second region." The Accused Instrumentalities lack the claimed "first particulate mineral mix being absent from the second region" and "the second particulate mineral mix being absent from the first region." |

17

| | |
|---|---|
| 2. The processed slab of claim 1, further comprising a plurality of transverse pigmented veins extending transversely to and intersecting the first substantially bowed pigmented vein, the transverse pigmented veins having a different color than the first substantially bowed pigmented vein. | The Accused Instrumentalities lack the claimed "plurality of transverse pigmented veins extending transversely to and intersecting the first substantially bowed pigmented vein" and "the transverse pigmented veins having a different color than the first substantially bowed pigmented vein." See also claim 1. |
| 3. The processed slab of claim 2, wherein at least one of the transverse pigmented veins extends generally widthwise from edge-to-edge. | The Accused Instrumentalities lack the claimed "transverse pigmented veins extends generally widthwise from edge-to-edge." See also claim 2. |
| 4. The processed slab of claim 2, wherein the transverse pigmented veins are thinner than the first substantially bowed pigmented vein. | The Accused Instrumentalities lack the claimed "transverse pigmented veins are thinner than the first substantially bowed pigmented vein." See also claim 2. |
| 5. The processed slab of claim 1, wherein the different particulate mineral mixes each include a quartz material, one or more pigments, and at least one binder. | See claim 1. |
| 6. The processed slab of claim 1, wherein the two different particulate mineral mixes are differently colored particulate mineral mixes | Certain of the Accused Instrumentalities lack the claimed "two different particulate mineral mixes are differently colored particulate mineral mixes." See also claim 1. |
| 7. The processed slab of claim 6, wherein the first substantially bowed pigmented vein separates at least second and third veins extending generally lengthwise, the second and third veins positioned on opposing edges of the first substantially bowed pigmented vein, and wherein at least a second of the two differently colored particulate mineral mixes defines the second vein. | See claim 6. |
| 8. The processed slab of claim 7, wherein the second vein is a second substantially bowed pigmented vein. | See claim 7. |
| 9. The processed slab of claim 8, wherein the second substantially bowed pigmented vein extends generally lengthwise from edge-to-edge such that the second substantially bowed pigmented vein forms one or more parallel curves with the first substantially bowed pigmented vein. | The Accused Instrumentalities lack the claimed "second substantially bowed pigmented vein forms one or more parallel curves with the first substantially bowed pigmented vein." See also claim 8. |
| 10. The processed slab of claim 8, wherein the first and second substantially | See claim 8. |

18

| | |
|---|---|
| bowed pigmented veins each include more than one bowed portion bowed in a first direction toward a first long edge of the major surface and away from an opposing long edge of the major surface. | |
| 11. The processed slab of claim 7, wherein the second and third veins extend generally lengthwise from edge-to-edge of the slab. | See claim 7. |
| 12. The processed slab of claim 7, wherein the major surface of the slab is polished and emulates an appearance of a quarried stone slab due at least in part to the two differently colored particulate mineral mixes distributed in the series of successive layers according to the predefined pattern. | The Accused Instrumentalities lack the claimed "predefined pattern." |
| 13. The processed slab of claim 7, wherein the first, second, and third veins are visible on both a front major surface and a rear major surface of the processed slab. | Certain of the Accused Instrumentalities lack the claimed "first, second, and third veins are visible on both a front major surface and a rear major surface of the processed slab." |
| 14. The processed slab of claim 1, wherein the first substantially bowed pigmented vein has a vein width on a front major surface of the processed slab that is less than the slab thickness. | See claim 1. |
| 15. A set of separately processed slabs, each respective slab of the set comprising at least two different particulate mineral mixes distributed in a series of successive layers according to a predefined pattern for all of the separately processed slabs, the two different particulate mineral mixes each comprising | The Accused Instrumentalities are not offered or manufactured as a "set." The Accused Instrumentalities lack the claimed "predefined pattern for all of the separately processed slabs." |
| a quartz material, | |
| one or more pigments, | |
| and one or more resin binders, | |
| wherein each respective slab has a major surface at least 2 feet wide by at least 6 feet long and extending perpendicularly to a slab thickness, | |
| the major surface having a first substantially bowed pigmented vein that extends generally lengthwise from edge-to-edge, | The Accused Instrumentalities lack the claimed "major surface having a first substantially bowed pigmented vein that extends generally lengthwise from edge-to-edge." |

19

| | |
|---|---|
| wherein the first substantially bowed pigmented vein has a vein thickness equal to and parallel to the slab thickness, | The Accused Instrumentalities lack the claimed "first substantially bowed pigmented vein has a vein thickness equal to and parallel to the slab thickness." |
| wherein the slab comprises at least two different particulate mineral mixes distributed in the series of successive layers | |
| according to the predefined pattern, | The Accused Instrumentalities lack the claimed "predefined pattern." |
| a first of the two different particulate mineral mixes defining the first substantially bowed pigmented vein, wherein the first particulate mineral mix occupies the entire slab thickness at a first region that defines the first substantially bowed pigmented vein and a second of the two different particulate mineral mixes occupies the entire slab thickness at a second region, the first particulate mineral mix being absent from the second region and the second particulate mineral mix being absent from the first region; | The Accused Instrumentalities lack the claimed "first particulate mineral mix being absent from the second region and the second particulate mineral mix being absent from the first region." |
| and wherein the major surface of each respective slab in the set has similarly positioned and colored substantially bowed pigmented veins. | The Accused Instrumentalities lack the claimed "set" of slabs. |
| 16. The set of separately processed slabs of claim 15, wherein the two different particulate mineral mixes are differently colored mineral mixes distributed in the series of successive layers according to the predefined pattern, a first of the two differently colored particulate mineral mixes defining the respective first substantially bowed veins. | The Accused Instrumentalities lack the claimed "predefined pattern." See also claim 16. |
| 17. The set of separately processed slabs of claim 16, wherein the respective first substantially bowed pigmented veins separate at least second and third veins extending generally lengthwise, the second and third veins positioned on opposing edges of the first pigmented vein, and wherein at least a second of the two differently colored particulate mineral mixes defines the second veins | See claim 16. |

| | |
|---|---|
| 18. The set of separately processed slabs of claim 17, wherein the respective second veins are second substantially bowed pigmented veins. | See claim 18. |
| 19. The processed slab of claim 18, wherein the respective second substantially bowed pigmented veins extend generally lengthwise from edge-to-edge adjacent to the first substantially bowed pigmented veins such that the first substantially bowed pigmented veins form one or more parallel curves with the second substantially bowed pigmented veins. | The Accused Instrumentalities lack the claimed "second substantially bowed pigmented veins extend generally lengthwise from edge-to-edge adjacent to the first substantially bowed pigmented veins such that the first substantially bowed pigmented veins form one or more parallel curves with the second substantially bowed pigmented veins." |
| 20. The set of separately processed slabs of claim 15, wherein the major surface of each respective slab of the set further comprises a plurality of transverse pigmented veins extending transversely to and intersecting the first substantially bowed pigmented veins, the transverse pigmented veins having a different color than the first substantially bowed pigmented veins. | The Accused Instrumentalities lack the claimed "plurality of transverse pigmented veins extending transversely to and intersecting the first substantially bowed pigmented veins, the transverse pigmented veins having a different color than the first substantially bowed pigmented veins." |

**B.    L. Pat. R. 3.2A(c)**

With the Contentions, Defendant is producing document labelled HIRSCH_0000117-

HIRSCH_0001277, on which Defendant may rely in making its defense against any Infringement

Contentions. Discovery is just beginning, and Defendant reserves all right to produce additional

documents as the case proceeds, as issues in the case develop, and as Defendant's investigation

continues. Further, Defendant's other documents and things are available for inspection by

Plaintiff's attorneys. If Plaintiff desires an inspection, a mutually agreeable date and time can be

arranged with the undersigned attorneys.

IV.    **L. PAT. R. 3.3**

A.    **L. Pat. R. 3.3(a): The identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious. Each prior art patent shall be identified by its number, country of origin, and date of issue. Each prior art publication shall be identified by its title, date of publication, and where feasible, author and publisher. Prior art under 35 U.S.C. § 102(b) shall be identified by specifying the item offered for sale or publicly used or known, the date the offer or use took place or the information became known, and the identity of the person or entity which made the use or which made and received the offer, or the person or entity which made the information known or to whom it was made known. Prior art under 35 U.S.C. § 102(f) shall be identified by providing the name of the person(s) from whom and the circumstances under which the invention or any part of it was derived. Prior art under 35 U.S.C. § 102(g) shall be identified by providing the identities of the person(s) or entities involved in and the circumstances surrounding the making of the invention before the patent applicant(s)**

Subject to its reservations and pursuant to the Scheduling Order (Dkt. 43), Defendant identifies each item of prior art that anticipates or renders obvious one or more of the Asserted Claims in Table 1 below. Discovery is ongoing and Defendant's prior art investigation are not yet complete. Defendant reserves the right to present additional items of prior art under one or more of 35 U.S.C. §§ 102(a), (b), (e), and (g) and/or 35 U.S.C. § 103 that may be located during the course of discovery or after further investigation. In addition, Defendant reserves the right to assert invalidity under one or more of 35 U.S.C. § 102 (c), (d), and (f) to the extent that discovery or further investigation yields information forming the basis for such invalidity. To the extent not specifically mentioned herein, Defendant incorporates by reference any and all prior art contained or identified in documents produced thus far by Plaintiff, and also, any and all additional materials regarding invalidity, to the extent such exist, that have been, or will be, produced during this case.

**Table 1: Prior Art Patents and Publications**

| Ex. | Number | Country of Origin | Priority Date | Issue Date |
|-----|--------|-------------------|---------------|------------|
| A1 | EP Patent No. 2,944,443A1 (EP443) | Spain | 2013-01-11 | 2015-11-18 |
| A2 | EP Patent No. 2,944,443B1 (EP443) | Spain | 2013-01-11 | 2020-07-08 |
| A3 | US Patent No. 5,795,513 (US513) | United States | 1995-12-28 | 1998-08-18 |
| A4 | US Patent No. 4,421,466 (US466) | United States | 1981-06-29 | 1983-12-20 |
| A5 | PCT Application No. WO2005097447A2 (WO447) | Italy | 2004-04-08 | 2005-10-20 |
| A6 | U.S. Patent Application No. 2011/0034586A1 (US586) | United States | 2008-09-25 | 2011-02-10 |
| A7 | U.S. Patent Application No. 2015/0360507A1 (US507) | United States | 2013-01-11 | 2015-12-17 |
| A8 | JP Patent Application No. 2014069350A (JP350) | Japan | 2012-09-27 | 2014-04-21 |
| A9 | PCT Application No. WO2002007939A1 (WO939) | Italy | 2000-07-20 | 2002-01-31 |
| A10 | U.S. Patent No. 9,469,990B2 (US990) | United States | 2013-03-15 | 2016-10-18 |

| Ex. | Number | Country of Origin | Priority Date | Issue Date |
|-----|--------|-------------------|---------------|------------|
| A11 | CN Patent Application No. 102806599A (CN599) | China | 2011-06-03 | 2012-12-05 |
| A12 | PCT Application No. WO2008000168 (WO168) | China | 2006-06-25 | 2008-03-01 |
| A13 | CN Patent No. 1,718,403A (CN403) | China | 2005-06-16 | 2006-01-11 |
| A14 | CN Patent No. 1,184,039A (CN039) | China | 1997-11-13 | 1998-06-10 |
| A15 | US Patent No. 5,976,642 (US642) | United States | 1996-04-02 | 1999-11-02 |
| A16 | EP Patent No. 1,717,000B1 (EP000) | Thailand | 2005-04-25 | 2009-04-01 |
| A17 | CN Patent Application Publication No. 102,581,927A (CN927). | China | 2010-01-10 | 2012-07-18 |
| A18 | EP Patent No. 940,235B1 (EP235) | Italy | 1998-03-06 | 2003-07-09 |
| A19 | U.S. Patent No. 4,680,155 (US155) | United States | 1984-05-09 | 1987-07-14 |
| A20 | U.S. Patent No. 3,870,777 (US777) | United States | 1972-11-02 | 1975-03-11 |
| A21 | EP Patent No. 1,787,779A2 (EP779) | Italy | 2005-11-16 | 2007-05-23 |

24

| A22 | U.S. Patent Application No. 2012/0153526A1 (US526) | United States | 2010-01-21 | 2012-06-21 |
| A23 | U.S. Patent No. 4,698,010 (US010) | United States | 1985-07-12 | 1987-10-06 |
| A24 | U.S. Patent No. 4,204,820 (US820) | United States | 1978-01-30 | 1980-05-27 |
| A25 | U.S. Patent No. 9,085,090 (US090) | United States | 2010-08-06 | 2015-07-21 |
| A26 | US. Patent No. 9,073,239 (US239) | United States | 201-03-24 | 2015-07-07 |
| A27 | German Patent Publication DE19640281A1 (DE281) | Germany | 1995-10-16 | 1997-04-17 |
| A28 | German Patent Publication DE4320860A1 (DE860) | Germany | 1992-07-14 | 1994-01-20 |
| A29 | PCT Publication No. 2006134179A2 | Spain/PCT | 2005-06-15 | 2006-12-21 |

**Table 2**: Prior art publications

| Ex. | Title | Date of Publication | Author | Publisher |
|---|---|---|---|---|
| A30 | *Clay Product-Faced Precast Concrete Panels,* | 1994 | S. Freedman | Volume 39, PCI Journal |

The above list is not exclusive or exhaustive and Defendant's or Plaintiff's production, as well as third-party productions, may contain additional references that render one or more of the asserted claims invalid. Defendant reserves the right to rely on both the listed and unlisted references produced, as well as other prior art that may become known and/or relevant during the course of litigation, including the prior art of record for each of the Patents-in-Suit, as well as any related patent or patent application in the U.S. or in any foreign jurisdiction. Further, Defendant

25

may rely on additional references, testimony (including expert testimony), and other materials (for example, prosecution history) to provide context or to aid in the understanding of the above-listed references. Defendant reserves the right to further and/or more specifically contest the priority date of each of the Patents-in-Suit.

> **B.    L. Pat. R. 3.3(b): Whether each item of prior art anticipates each asserted claim or renders it obvious. If obviousness is alleged, an explanation of why the prior art renders the asserted claim obvious, including an identification of any combinations of prior art showing obviousness;**

> **a.    Invalidity Due to Anticipation**

Defendant's claim charts for the Asserted Utility Patents accompanying this document as Appendices A–AB. In those charts, where one reference is shown as teaching all limitations of a claim of an Asserted Patent, that claim is anticipated by (and also obvious in light of) that reference. Defendant reserves all right to amend this contention, as its analysis of the prior art continues, as discovery in this case continues, and as the claim construction process in this case continues.

> **b.    Invalidity Due to Obviousness**

Regarding the obviousness of the asserted utility patent claims under 35 U.S.C. § 103, one or more of the principles enumerated by the United States Supreme Court in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) apply to the claims of the Asserted Utility Patents, including, for example:

(a) combining various claimed elements known in the prior art according to known methods to yield a predictable result;

(b) making a simple substitution of one or more known elements for another to obtain a predictable result;

(c) using a known technique to improve a similar device or method in the same way;

(d) applying a known technique, known device or method ready for improvement to yield a predictable result;

(e) choosing from a finite number of identified, predictable solutions with a reasonable expectation of success or, in other words, the solution was one which was "obvious to try";

(f) a known work in one field of endeavor prompting variations of it for use either in the same field or a different based on given design incentives or other market forces in which the variations were predictable to one of ordinary skill in the art; and/or

(g) a teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill in the art to modify the prior art reference or to combine the teachings of various prior art references to arrive at the claimed invention.

The above criteria are collectively referred to herein as the "*KSR* Criteria."

### c.    Motivations to Combine

The prior art to the Asserted Utility Patents referenced herein all relates to compositions of fabricated slabs, including ceramic and concrete slabs, and methods for making same. All this prior art uses similar technology with similar purposes—i.e., to form particulate matter (including collections of different particulate matter) into solid slabs. As such, the prior art cited herein is analogous to each other, and the person of ordinary skill in the art would have been motivated to look to the various prior art cited herein concerning manufactured slabs and methods for making the same in furtherance of the known goal of creating manufactured slabs for use as, e.g., countertops. This would have motivated the person of ordinary skill in the art to combine the various prior art cited herein.

27

Each combination of art would have no unexpected results and, at most, would simply represent a known alternative to one of ordinary skill in the art. *See KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1739–40 (2007) (rejecting the Federal Circuit's "rigid" application of the teaching, suggestion, or motivation to combine test, instead espousing an "expansive and flexible" approach). Indeed, the Supreme Court has held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id*. at 1742. Nevertheless, in addition to the information contained in the section immediately above and elsewhere in these contentions, including in the Exhibits, Defendant hereby identifies additional motivations and reasons to combine the cited prior art.

One or more combinations of the prior art references identified above would have been obvious because these references would have been combined using: known methods to yield predictable results; known techniques in the same way; a simple substitution of one known, equivalent element for another to obtain predictable results; and/or a teaching, suggestion, or motivation in the prior art generally. In addition, it would have been obvious to try combining the prior art references identified above because there were only a finite number of predictable solutions and/or because known work in one field of endeavor prompted variations based on predictable design incentives and/or market forces either in the same field or a different one. In addition, the combination of the prior art references identified above would have been obvious because the combination represents the known potential options with a reasonable expectation of success.

Additional evidence that there would have been a motivation to combine the prior art references identified above includes, the interrelated teachings of multiple prior art references; the

effects of demands known to the design community or present in the marketplace; the existence of

a known problem for which there was an obvious solution encompassed by the Asserted Claims;

the existence of a known need or problem in the field of the endeavor at the time of the invention(s)

and the background knowledge that would have been possessed by a PHOSITA. For example, the

standard depth for a home countertop is 25 inches. Thus, market pressures would have provided

the motivation to arrive at the Asserted Utility Patents' claims' dimension of at least 2 feet by at

least 6 feet. This dimensional limitation is also taught by U.S. Patent No. 8,026,298 at 12:24–28

(a slab of 306 cm x 144 cm). Similarly, the market pressures to emulate natural stone would have

motivated the person of ordinary skill in the art to arrive at the other claimed aesthetic limitations

of the Asserted Patents.

      In sum, motivation to combine any of the prior art references discussed herein, is found,

explicitly or implicitly, for example, in one or more of the following:

1. The PHOSITA's own knowledge or common sense;

2. The prior art references themselves, as well as the interrelated teachings of the prior art references;

3. The subject matter acknowledged as prior art any of the Patents-in-Suit, including any application that claims priority thereto, including divisionals, continuations, and continuations-in-parts;

4. The nature of the problem to be purportedly solved by the Patents-in-Suit and the existence of similar improvements in similar applications;

5. The number of identified, predictable solutions to the problems purportedly solved by the Patents-in-Suit;

6. Design incentives and other market forces, including the advantages of creating a superior and more desirable product and the effects of demands known to the design community or present in the marketplace;

7. The ability to implement the alleged invention as a predictable variation of the prior art; and

8. Improvements in similar devices.

Certain claim limitations and certain of these rationales are discussed more specifically below. The fact that other rationales are not specifically discussed is not an admission or concession that such a rationale(s) does not apply. The discussion below simply provides a more specific discussion or explanation relating to some of the rationales.

Any reference or combination of references that anticipates or renders obvious an asserted independent claim also renders obvious any Asserted Claim dependent from that independent claim, because every limitation of each dependent claim was known by a person of ordinary skill at the time of the alleged invention, and it would have been obvious to combine those known limitations with the independent claims at least as a matter of common sense and routine work. Accordingly, Defendant contends that each Asserted Claim would have been obvious not only from the example combinations explicitly set forth in these Preliminary Invalidity Contentions, but also by any combination of the references identified herein that renders obvious an Asserted Claim. Further, Defendant incorporates by reference any statements and reasons set forth by the Examiner during prosecution of the Patents-in-Suit and any related U.S. or foreign patents or applications as to why it would have been obvious to modify or combine references to arrive at the limitations of the Asserted Claims.

    **d.**      **Why the Asserted Prior Art Renders the Claims Obvious**

    **1.**    **The '303 Patent**

The '303 patent is directed to "Processed Slabs, and Systems and Methods Related Thereto." '303 patent, at Title. According to its Abstract, the '303 patent "describes systems and processing for forming improved synthetic molded slabs suitable for use in living or working spaces (e.g., along a countertop, table, floor, or the like). According to the '303 patent's Summary, the appearance of the slabs is "generally repeatable and predefined as a part of the manufacturing process." '303 patent, 1:45–49. Further, "the appearance of each synthetic molded slab can provide complex striations or other veining patterns that emulate a quarried stone slab." '303 patent, 1:50–52. The patent goes on to describe various possible materials for us as slabs (e.g., quartz), possible slab sizes (e.g., at least 2 feet wide by at least 6 feet long), and other possible manufacturing specifications (e.g., colors used, various veining shapes and sizes, etc.).

Claim 1 of the '303 patent reflects this idea, including by requiring processed slab that is at least 2 ft. x 6 ft. and which has defined veining patterns according to a "predefined layer pattern." The other independent claim, claim 14, has similar requirements, and also requires a "set" of slabs in which "the major surface of each respective slab in the set has similarly positioned and colored substantially lengthwise veins." The dependent claims add requirements for various design permutations, e.g., additional particulate mixes, transverse veins, etc.

As reflected in the prior art cited herein, the inventors were not the first to arrive at the idea of creating a processed slab with veining that emulates a quarried stone and whose pattern can be controlled. Once one arrives at that idea, all the other elements reflected in the '303 patent's claims are obvious permutations of the basic idea of a processed slab. That is, the claims of the '303 patent simply specify different "looks" of a processed slab. Those claims would have been obvious to the

31

person of ordinary skill, because those claims simply seek to emulate the appearance of natural quarried stone. Thus, market pressures (to emulate natural stone) and routine optimization (to provide more and more complicated or precise patterns to better emulate natural stone) would have made the claims obvious to the person of ordinary skill in the art. This is confirmed by the prior art cited herein, and as further shown in the claim charts accompanying these Contentions as Appendices A–G.

### 2.    The '626 Patent

The '626 patent's specification, aside from the claims, is the same as the '303 patent's specification. Like the '303 patent, the '626 patent's claims are directed to processed slabs (or a set of slabs, in the case of claims 15–20) that are at least 2 ft. x 6 ft. and which have defined veining patterns according to a "predefined pattern." The '626 patent's claims also require a "substantially bowed pigmented vein" and that the first particulate mix is absent from the second particulate mix. As with the '303 patent, the '626 patent's dependent claims add requirements for various design permutations, e.g., additional particulate mixes, transverse veins, etc.

As reflected in the prior art cited herein, the inventors were not the first to arrive at the idea of creating a processed slab with veining that emulates a quarried stone and whose pattern can be controlled. Once one arrives at that idea, all the other elements reflected in the '626 patent's claims are obvious permutations of the basic idea of a processed slab. That is, the claims of the '626 patent simply specify different "looks" of a processed slab. Those claims would have been obvious to the person of ordinary skill, because those claims simply seek to emulate the appearance of natural quarried stone. Thus, market pressures (to emulate natural stone) and routine optimization (to provide more and more complicated or precise patterns to better emulate natural stone) would have made the claims obvious to the person of ordinary skill in the art. This is confirmed by the prior

32

art cited herein, and as further shown in the claim charts accompanying these Contentions as Appendices H–O.

### 3.    The '942 Patent

The' 942 patent's specification, aside from the claims, is the same as the '303 patent's. The '942 patent's claims are directed to methods of forming a processed slab, which generally involve (claim 1) positioning a slab mold in a substantially non-horizontal orientation, dispensing multiple differently-pigmented particulate mineral mixes into the substantially non-horizontally oriented mold so as to fill a mold space that is at least 6 feet long by at least 2 feet wide, adjusting the mold to a substantially horizontal orientation while the particulate mixes are in the mold, and vibrating and compacting the particulate mixes while the mold is in the substantially horizontal position. Independent claim 20 tracks claim 1, and also adds a limitation requiring the mixes be dispensed according to a predefined pattern to provide at least a first vein extending generally lengthwise from edge-to-edge. Claim 27 is like claim 1, but lacks the sizing requirement. The dependent claims of the '942 patent add various manufacturing permutations (e.g., particular design permutations like transvers veins, different colors, percentage of quartz, etc.).

Creating a processed slab by filing a non-horizontal (e.g., vertical) mold with particulate and then moving the mold to a horizontal position before curing it was known in the art before the '942 patent's filing date. Further, vibrating and compacting a particulate material to form a process slab was also known in the art. For example, well before Cambria's alleged invention, Marcello and Luca Toncelli of Bretonstone invented a process of creating an engineered stone slab of, e.g., quartz, in which particles were filled into a mold and then subjected to vibration and compacting. Others, including Rochefort and Wood of Imperial Chemical Industries PLC in 1985, invented a process in which a vertical mold is filled with polymerizable materials, which resulted in limited intermixing of the compositions to create an attractive simulated marble effect. The person of

33

ordinary skill in the art would have been motivated to combine the technique of Rochefort and Wood (which allows for simulation of natural stone) with the horizontal vibrating and compacting of the Toncellis (which is a robust curing process for countertops). Further, moving a mold between a vertical position and a horizontal position was known and was not a technical hurdle to be overcome, as illustrated by, e.g, U.S. Patent No. 4,421,466 and CN1718403. These and other obviating combinations are reflected in the claim charts at Appendices P–AB.

Once one arrived at the idea for the manufacturing process of the '942 patent's claims 1, 20, and 27, all the other elements reflected in the '942 patent's claims are obvious permutations of the basic idea of a manufactured slab. That is, the claims of the '942 patent simply specify different "looks" of a manufactured slab. Those claims would have been obvious to the person of ordinary skill, because those claims simply seek to emulate the appearance of natural quarried stone. Thus, market pressures (to emulate natural stone) and routine optimization (to provide more and more complicated or precise patterns to better emulate natural stone) would have made the claims obvious to the person of ordinary skill in the art. This is confirmed by the prior art cited herein, and as further shown in the claim charts accompanying these Contentions as Appendices P–AB.

### e.    Exemplary Prior Art Combinations

#### 1.    The '303 Patent

Appendices A–G set forth exemplary prior art combinations, including in the alternative as specified in these Appendices. Appendices A–G thus provide an identification of any combinations of prior art showing the obviousness of the claims of the '303 patent.

#### 2.    The '626 Patent

Appendices H–O set forth exemplary prior art combinations, including in the alternative as specified in these Appendices. Appendices H–O thus provide an identification of any combinations of prior art showing the obviousness of the claims of the '626 patent.

34

### 3.    The '942 Patent

Appendices P–T set forth exemplary prior art combinations, including in the alternative as specified in these Appendices. Appendices P–AB thus provide an identification of any combinations of prior art showing the obviousness of the claims of the '942 patent.

### f.    Asserted Design Patents

The following chart identifies the prior art that anticipates and renders obvious the claimed designs of the Asserted Design Patents.

**Table 3:** Prior Art Relevant to the Asserted Design Patents

| Relevant Asserted Design Patent | Ex. | Title | Date of Publication | Author | Publisher |
|---|---|---|---|---|---|
| D'670 | A31 | 12x12 Granite Field Tile SKU: ISHT1134 | presently unknown | Stone & Tile Shoppe, Inc. | https://www.wayfair.com/Stone-and-Tile-Shoppe-Inc.--12x12-Granite-Field-Tile-GRTICARIOCAGOLD1251-GRTIIMPERRED12516-L2970-K~ISHT1134.html?refid=GX433639646809-ISHT1134_38784802&device=c&ptid=901110800347&network=g&targetid=pla-901110800347&channel=GooglePLA&ireid=72426830&fdid=1817&PiID%5B%5D=38784802&gclid=EAIaIQobChMIj-jD1ZuQ8AIVaz6tBh0wowA1EAQYASABEgKCQvD_BwE |

35

| Relevant Asserted Design Patent | Ex. | Title | Date of Publication | Author | Publisher |
|---|---|---|---|---|---|
| D'670 | A32 | Caroline Summer Granite Brown Kitchen Countertop Item #416339Model #902166 | presently unknown | Cosentino's | https://www.lowes.com/pd/SenSa-Caroline-Summer-Granite-Kitchen-Countertop-Sample/50142019?cm_mmc=shp-_-c-_-prd-_-kab-_-google-_-pla-_-233-_-soscountertopproductandaccess-_-50142019-_-0&placeholder=null&ds_rl=1286981&gclid=EAIaIQobChMIj-jD1ZuQ8AIVaz6tBh0wowA1EAQYBSABEgLIKPD_BwE&gclsrc=aw.ds |
| D'670 | A33 | Santa Cecilia Granite Brown Kitchen Countertop Item #1068221Model #NG2002 | presently unknown | allen + roth™ | https://www.lowes.com/pd/allen-roth-Santa-Cecilia-Granite-Kitchen-Countertop-Sample/1000507485 |
| D'670 | A34 | Carla Aston Design and Portfolio | presently unknown | Carla Aston Design | https://carlaaston.com/designed/vein-cut-stone-texture-with-zen-ambience |
| D'670 D'570 | A35 | WO D037756-009 | 1996-12-30 | Horatsch Elfriede | WIPO |
| D'670 | A36 | WO D037756-007 | 1996-12-30 | Horatsch Elfriede | WIPO |
| D'670 | A37 | WO D037756-004 | 1996-12-30 | Horatsch Elfriede | WIPO |
| D'670 D'577 | A38 | US Patent No. D428590 | 2000-07-25 | Harm M. Lagaay | USPTO |

| Relevant Asserted Design Patent | Ex. | Title | Date of Publication | Author | Publisher |
|---|---|---|---|---|---|
| D'670 | A39 | US Patent No. D705,955 S | 2014-05-27 | Soo-Jheong Choi | USPTO |
| D'670 | A40 | US Patent No. D602,258 S | 2009-10-20 | Jason Simione | USPTO |
| D'670 | A41 | US Patent No. D677,955 S | 2013-03-19 | James Bender | USPTO |
| D'670 | A42 | US Patent No. D491372 S | 2004-06-15 | Anabela Dugas | USPTO |
| D'670 | A43 | US Patent No. D705954 | 2014-05-27 | Soo-Jheong Choi | USPTO |
| D'670 | A44 | Granite vs. Quartz in the Kitchen | 2011-05-23 | Neal's Design Remodel | https://www.youtube.com/watch?app=desktop&v=2d3XcgtUybU |
| D'577 | A45 | EU 001417646-0010 | 2014-07-25 | Armstrong World Industries, Inc. | EPO |
| D'577 | A46 | EU 001417646-0001 | 2014-07-25 | Armstrong World Industries, Inc. | EPO |
| D'577 | A47 | US Patent No. D746064 S | 2015-12-29 | Mark Zeamer | USPTO |
| D'577 | A48 | EM 0014147646-0015 | 2014-07-25 | Armstrong World Industries, Inc. | EPO |
| D'577 | A49 | US Patent No. D715563 S | 2014-10-21 | Mark Zeamer | USPTO |
| D'577 | A50 | US Patent No. D714559 S | 2014-10-07 | Jeannette McCuaig | USPTO |

| Relevant Asserted Design Patent | Ex. | Title | Date of Publication | Author | Publisher |
|---|---|---|---|---|---|
| D'905 D'332 D'333 | A51 | EU 001417737-0021 | 2014-10-13 | Armstrong World Industries, Inc. | EPO |
| D'905 | A52 | EM 000359971-0001 | 2005-01-11 | Metten Stein + Design Gmbh & Co. | EPO |
| D'905 | A53 | EM 00359971-0002 | 2005-01-11 | Metten Stein + Design Gmbh & Co. | EPO |
| D'905 | A54 | EM 00359971-0003 | 2005-01-11 | Metten Stein + Design Gmbh & Co. | EPO |
| D'905 | A55 | EM 000359971-0005 | 2005-01-11 | Metten Stein + Design Gmbh & Co. | EPO |
| D'905 | A56 | US D746066 | 2015-12-29 | Jeannette McCuaig | USPTO |
| D'905 | A57 | EM 001418057-0006 | 2005-01-11 | Metten Stein + Design Gmbh & Co. | EPO |
| D'332 | A58 | Vadara Collections | presently unknown | presently unknown | https://www.vadaraquartz.com/colors/ |
| D'332 | A59 | Vadara Quartz Kitchen | presently unknown | presently unknown | https://www.houzz.com/hznb/photos/vadara-quartz-kitchen-transitional-orange-county-phvw-vp~98923327 |
| D'332 D'333 | A60 | US Patent No. D0682557 | 2013-05-21 | Lee Ji-Yoon | USPTO |
| D'332 D'333 | A61 | KR 300777994.0000 | 2017-12-06 | John Zeng | KPO |

38

| Relevant Asserted Design Patent | Ex. | Title | Date of Publication | Author | Publisher |
|---|---|---|---|---|---|
| D'332 D'333 | A62 | JP D1454121 | 2012-02-23 | Ri Satoshi Ethics | JPO |
| D'332 D'333 | A63 | CN 302025837 | 2012-08-08 | Li Zhilun | CNIPA |
| D'332 D'333 | A64 | KR 20150088686 | 2015-08-03 | Shin Yong Ha | KIPO |
| D'332 | A65 | US Patent No. D776254 | 2017-01-10 | Rocky Albert Clevenger | USPTO |
| D'332 | A66 | US Patent No. D623319 | 2010-09-07 | Guillaume Martin | USPOT |
| D'332 D'333 | A67 | 5th pole Golden abstract | presently unknown | Kai Herrmann | https://www.saatchiart.com/art/Photography-5th-pole-golden-abstract/262364/1237075/view |
| D'333 | A68 | Artificial Stone Factory Price Calacatta Marble Vein Quartz Slabs | presently unknown | Stonecontact.com | https://www.stonecontact.com/products-642705/artificial-stone-factory-price-calacatta-marble-vein-quartz-slabs |
| D'333 | A69 | Abstract vector seamless background wallpaper stock ID:477881937 | 2013-08-28 | Ninevian | https://www.istockphoto.com/vector/abstract-vector-seamless-background-wallpaper-gm477881937-26697001 |
| D'333 | A70 | US Patent No. D678556 | 2013-03-19 | Elizabeth Egan Metcalf | USPTO |
| D'333 | A71 | US Patent No. D92186 | 1934-05-08 | J. B. Little | USPTO |
| D'333 | A72 | US Patent No. D731086 S | 2015-06-02 | Guillaume Martin | USPTO |

For clarity, each prior art reference both anticipates, and renders obvious, the claim of the corresponding Asserted Design Patent as identified below. With respect to obviousness, it would have been obvious for the person of ordinary skill in the art to arrive at the claimed designs based on the prior art designs identified below because the claimed designs reflect at most slight and insubstantial differences from the prior art, such that the person of ordinary skill in the art would have been motivated to arrive at the claimed designs in an effort to emulate a wide variety of naturally-occurring stone designs.

       **1.**      **D'670**

The following prior art anticipates and renders obvious D'670:

- https://www.wayfair.com/Stone-and-Tile-Shoppe-Inc.--12x12-Granite-Field-Tile-GRTICARIOCAGOLD1251-GRTIIMPERRED12516-L2970-K~ISHT1134.html?refid=GX433639646809-ISHT1134_38784802&device=c&ptid=901110800347&network=g&targetid=pla-901110800347&channel=GooglePLA&ireid=72426830&fdid=1817&PiID%5B%5D=38784802&gclid=EAIaIQobChMIj-jD1ZuQ8AIVaz6tBh0wowA1EAQYASABEgKCQvD_BwE

- https://www.lowes.com/pd/SenSa-Caroline-Summer-Granite-Kitchen-Countertop-Sample/50142019?cm_mmc=shp-_-c-_-prd-_-kab-_-google-_-pla-_-233-_-soscountertopproductandaccess-_-50142019-_-0&placeholder=null&ds_rl=1286981&gclid=EAIaIQobChMIj-jD1ZuQ8AIVaz6tBh0wowA1EAQYBSABEgLIKPD_BwE&gclsrc=aw.ds

- https://www.lowes.com/pd/allen-roth-Santa-Cecilia-Granite-Kitchen-Countertop-Sample/1000507485

- https://carlaaston.com/designed/vein-cut-stone-texture-with-zen-ambience

- WO D037756-009

- WO D037756-007

- WO D037756-004

- US D428590

- US D705955

40

- US D602258

- US D677955

- US D491372

- US D705954

- https://www.youtube.com/watch?app=desktop&v=2d3XcgtUybU

In addition, Cambria's L. Pat. R. 3.1 disclosures assert that its Bradshaw product (shown below) practices the claim of the D'670 patent.



Cambria's website (https://www.cambriausa.com/quartz-colors/#!/design/Bradshaw) states, regarding the Bradshaw product, that "Copper flecks dust the surface of Bradshaw like the stained glass that graced a 16th century church famous in this part of England." Furthermore, Cambria's website also lists the Bradshaw product as an alternative to the Praa Sands product that is number 5 on Cambria's list of "Top 10 Cambria Designs for Granite Alternatives" (see https://refineanddefine.cambriausa.com/cambria-countertops-designs-granite-alternatives/).

41

The granite design which the Bradshaw product emulates, and the 16th century stained glass which the Bradshaw product is said to emulate, are by necessity prior art to the D'670 patent. That prior art natural stone and stained glass both anticipates the D'670 patent (35 U.S.C. § 102) and renders its claim obvious (35 U.S.C. § 103).

**2.    D'577**

The following prior art anticipates and renders obvious D'577:

- WO D037756-009

- WO D037756-007

- WO D037756-004

- US D0428590

- EU 001417646-0010

- EU 001417646-0001

- US D746064

- https://www.youtube.com/watch?app=desktop&v=2d3XcgtUybU

- EM 0014147646-0015

- US D715563

- US D714559

In addition, Cambria's L. Pat. R. 3.1 disclosures assert that its Berwyn product (shown below) practices the claim of the D'577 patent.

42



Cambria's website lists the Bradshaw product as number 2 on Cambria's list of "Top 10

Cambria Designs for Granite Alternatives" (see

https://refineanddefine.cambriausa.com/cambria-countertops-designs-granite-alternatives/). The

granite design which the Berwyn product emulates is by necessity prior art to the D'577 patent.

That prior art natural stone both anticipates the D'577 patent (35 U.S.C. § 102) and renders its

claim obvious (35 U.S.C. § 103).

       **3.**    **D'905**

The following prior art anticipates and renders obvious D'905:

- EU 001417737-0021

- EM 000359971-0001

43

- EM 00359971-0002

- EM 00359971-003

- EM 000359971-0005

- US D746066

- EM 001418057-0006

In addition, Cambria's L. Pat. R. 3.1 disclosures assert that its Roxwell product (shown

below) practices the claim of the D'905 patent.

Formatted: Font color: Text 1



The natural stone design which the Roxwell product emulates is by necessity prior art to

the D'905 patent. That prior art natural stone both anticipates the D'905 patent (35 U.S.C. § 102)

and renders its claim obvious (35 U.S.C. § 103).

### 4.   D'332

The following prior art anticipates and renders obvious D'332:

- https://www.vadaraquartz.com/colors/

- https://www.houzz.com/hznb/photos/vadara-quartz-kitchen-transitional-orange-county-phvw-vp~98923327

- US D0682557

- KR 300777994.0000

- JP D1454121

- EU 001417737-0021

- CN 302025837

- KR 20150088686

- US D776299

- US D623319

- https://www.saatchiart.com/art/Photography-5th-pole-golden-abstract/262364/1237075/view

In addition, Cambria's L. Pat. R. 3.1 disclosures assert that its Brittanicca product (shown

below) practices the claim of the D'332 patent.



-

    Cambria's website lists the Brittanicca product as one of Cambria's marble alternatives.

See https://www.cambriausa.com/quartz-

45

colors/#!/?filters=%7B%22hues%22:%5B%5D,%22styles%22:%5B%22Marble%20Alternatives
%22%5D,%22designSeries%22:%5B%5D,%22groups%22:%5B%5D%7D. The natural stone

design which the Brittanicca product emulates is by necessity prior art to the D'332 patent. That

prior art natural stone both anticipates the D'332 patent (35 U.S.C. § 102) and renders its claim

obvious (35 U.S.C. § 103).

### 5.    D'333

The following prior art anticipates and renders obvious D'333:

- US D0682557

- KR 300777994.000

- JP D1454121

- EU 001417737-0021

- CN 302025837

- https://www.stonecontact.com/products-642705/artificial-stone-factory-price-calacatta-marble-vein-quartz-slabs

- https://www.saatchiart.com/art/Photography-5th-pole-golden-abstract/262364/1237075/view

- https://www.istockphoto.com/vector/abstract-vector-seamless-background-wallpaper-gm477881937-26697001

- US D678556

- US D92186

- US D731086

In addition, Cambria's L. Pat. R. 3.1 disclosures assert that its Roxwell product (shown

below) practices the claim of the D'333patent.

46



The natural stone design which the Roxwell product emulates is by necessity prior art to

the D'333 patent. That prior art natural stone both anticipates the D'333 patent (35 U.S.C. § 102)

and renders its claim obvious (35 U.S.C. § 103).

    **C.**    **L. Pat. R. 3.3(c): Other than for design patents, a chart identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in each item of prior art that performs the claimed function; and**

The charts required by L. Pat. R. 3.3(c) are provided at Appendices A–AB.

    **D.**    **L. Pat. R. 3.3(d): Any grounds of invalidity based on 35 U.S.C. § 101, indefiniteness under 35 U.S.C. §112(b) or enablement or written description under 35 U.S.C. § 112(1) of any of the asserted claims including a detailed explanation of the bases for the asserted grounds.**

    **a.**    **35 U.S.C. § 101**

Defendant is currently unaware of any ground of invalidity based on 35 U.S.C. § 101,

with respect to the Asserted Utility Patents. Defendant reserves all rights to present a validity

47

challenge based on 35 U.S.C. § 101 as this case, including the claim construction phase,

proceeds.

    **b.**     **Indefiniteness under 35 U.S.C. § 112(b)**

        **1.**     **The Asserted Utility Patents**

A "patent is invalid for indefiniteness if its claims, read in light of the specification

delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those

skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572

U.S. 898, 901 (2014). Under this standard, various claims of the Asserted Utility Patents are

invalid for indefiniteness. Specifically, the claims that include the following claim terms (either

explicitly or by dependence) are invalid for indefiniteness:

- "substantially unmixed layer"

- "predefined layer pattern"

- "generally widthwise"

- "general lengthwise"

- "predefined [pattern]"

- "repeatable pattern"

- "predetermined pattern"

- "substantially bowed" and

- "emulates the appearance of quarried stone."

2.      **The Asserted Design Patents**

The claims of the Asserted Design Patents are each invalid for indefiniteness under 35

U.S.C. § 112(b). The definiteness requirement of 35 U.S.C. § 112 applies to design patent

claims. *In re Maatita*, 900 F.3d 1369, 1375 (Fed. Cir. 2018). The following standard applies:

> Ultimately, a patent is indefinite for § 112 purposes whenever its claim, read in light of the
> visual disclosure (whether it be a single drawing or multiple drawings), "fail[s] to inform,
> with reasonable certainty, those skilled in the art about the scope of the invention."

*In re Maatita*, 900 F.3d at 1376. Here, the claims of each of the Asserted Design Patents fail to

inform those of ordinary skill in the art about the scope of the invention with reasonable

certainty. The below chart shows the claimed designs, the corresponding Accused

Instrumentalities, and the Cambria products which Cambria alleges practice the Asserted Design

Patents. The designs of the Accused Instrumentalities and the alleged corresponding Cambria

products differ substantially from each other, and from the corresponding design patent claim.

Based on Cambria's broad reading of its Asserted Design Patents' claims, it is impossible for a

person of ordinary skill in the art to ascertain, with reasonable certainty, where the Asserted

Design Patents' claim scope ends. The Asserted Design Patents are thus invalid for

indefiniteness.

49

| Asserted Design Patent | Claimed Design | Accused Instrumentality | Cambria Design Identified as Practicing the Design Patent |
|---|---|---|---|
| D'670 |  | Carefree  | Bradshaw  |
| D'577 |  | Poise Light  | Berwyn  |
| D'950 |  | Symphony  | Roxwell  |



| Asserted Design Patent | Claimed Design | Accused Instrumentality | Cambria Design Identified as Practicing the Design Patent |
|---|---|---|---|
| D'332 | | Summit / Pinnacle | Brittanicca |
| D;333 | | Symphony | Roxwell |

     **c.**      **Lack of Enablement or Written Description under 35 U.S.C. § 112([a])**

     **1.**      **The Asserted Utility Patents**

To satisfy the written description requirements of 35 U.S.C. § 112(a), a patent must "reasonably convey[] to those skilled in the art that the inventor had possession of" and "actually invented" the claimed subject matter. *E.g.*, *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). "[T]he hallmark of written description is disclosure." *Id.*

Claims 1, 27, and 28 of the '942 patent are invalid for lack of written description because the '942 patent's specification does not convey to those of ordinary skill in the art that the invention covers processes that do not include a "predefined and repeatable" pattern of depositing material.

     **2.**      **The Asserted Design Patents**

"Because design patent claims are limited to what is shown in the application drawings, *see In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988), there is often little difference in the design patent context between the concepts of definiteness (whether the scope of the claim is clear with reasonable certainty) and enablement (whether the specification sufficiently describes the design to enable an average designer to make the design), *see Ex Parte Asano*, 201 U.S.P.Q. 315, 317 (B.P.A.I. 1978) (explaining that issues related to enablement were "generally the same as" issues concerning definiteness in the design patent context); MPEP 1504.04 (I)(A). *In re Maatita*, 900 F.3d at 1376. For the same reasons why the Asserted Design Patents are indefinite, they also fail to provide adequate written description of the alleged invention and also fail to meet 35 U.S.C. § 112's enablement requirement.

Furthermore, 35 U.S.C. § 171 states that "[w]hoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the

conditions and requirements of this title." To this point, "mere simulation or imitation of natural

forms, which any artisan has the right to apply to any object, is not properly the subject of a

patent." *In re Smith*, 77 F.2d 514, 515 (C.C.P.A. 1935), *see also Jas. H. Matthews & Co. v.*

*Bronze, Inc.*, 124 F.2d 770, 771 (7th Cir. 1941) ([T]he designs of the patents appear to involve a

mere limitation or simulation of what was old in stone by the use of bronze, and there is no such

departure from the natural form as to render the designs sufficiently distinctive to merit

allowance of the claims."); see also MPEP 1504.01(d). Because each of the Asserted Design

Patents simulate naturally-occurring stone, they are all invalid under 35 U.S.C. § 171.

### E.    *Inter Partes* Review Petitions Concerning the '303 Patent, the '626 Patent, and the '942 Patent

On February 10, 2022, Hirsch filed petitions for *inter partes* review, and accompanying

documents, requesting that the U.S. Patent and Trademark Office's Patent Trial and Appeal

Board ("PTAB") cancel the claims of the '303 Patent (IPR2022-00582) and certain claims of the

'942 Patent (IPR2022-00589). On February 11, 2022, Hirsch filed petitions for *inter partes*

review, and accompanying documents, requesting that the U.S. Patent and Trademark Office's

Patent Trial and Appeal Board cancel the claims of the '626 Patent (IPR2022-00583). The

petitions in IPR2022-00582, IPR2022-00583, and IPR2022-00589, and their respective

accompanying documents filed with the PTAB, are collectively referred to herein as the "IPRs".

The IPRs were served on Cambria on February 11, 2022.

In addition to the invalidity contentions provided above, and the claim charts provided on

August 20, 2021, Hirsch incorporates by reference the disclosures, claim mapping, and

arguments contains in the IPRs. Hirsch further contents that the disclosures, claim mapping, and

arguments provided in the IPRs show that the claims challenged therein are invalid under the

clear and convincing invalidity standard required pursuant to 35 U.S.C. § 282.

V.    **L. PAT. R. 3.4: DOCUMENT PRODUCTION ACCOMPANYING INVALIDITY
CONTENTIONS**

See below for the production numbers of documents corresponding to the categories of L.

Pat. R. 3.4. Further, in accordance with L. Pat. R. 3.4, Defendant's other documents and things

are available for inspection by Plaintiff's attorneys. If Plaintiff desires an inspection, a mutually

agreeable date and time can be arranged with the undersigned attorneys.

A.    **L. Pat. R. 3.4(a): Source code, specifications, schematics, flow charts,
artwork, formulas, or other documentation sufficient to show the operation,
composition, or structure of any aspects or elements of an Accused
Instrumentality identified by the party asserting patent infringement in its L.
Pat. R. 3.1(c) chart**

See    ~~accompanying    production~~previously-produced    documents    labelled

HIRSCH_0000117-HIRSCH_0000330.

B.    **L. Pat. R. 3.4(b): A copy or sample of the prior art identified pursuant to L.
Pat. R. 3.3(a) which does not appear in the file history of the patent(s) at
issue. To the extent any such item is not in English, an English translation of
the portion(s) relied upon shall be produced.**

See    ~~accompanying    previously-produced    production~~documents    labelled

HIRSCH_0000331-HIRSCH_0001337, and the IPRs.

C.    **L. Pat. R. 3.4(c): A party asserting invalidity shall also produce any other
document or thing on which it intends to rely in support of its assertion.**

None known at this time.

D.    **L. Pat. R. 3.4(d): With respect to each of the above document productions,
the producing party shall separately identify by production number which
documents correspond to each category**

See above.

April 6, 2022

HARNESS, DICKEY & PIERCE, PLC

By:  /s/
Glenn E. Forbis

HARNESS, DICKEY & PIERCE, PLC
5445 Corporate Drive
Troy, MI 48098

Douglas A. Robinson
HARNESS, DICKEY & PIERCE, PLC
7700 Bonhomme Avenue, Suite 400
St. Louis, MO 63105

Erik Dykema
KONING ZOLLAR LLP
169 Saxony Road, Suite 115
Encinitas, CA 92024
T: 858-252-3218 / F: 858-252-3238

55

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served electronically on the

following counsel of record, this ~~20th~~  th day of ~~August, 2021~~____, 2022:

James S. Richter jrichter@midlige-richter.com
MIDLIGE RICHTER, LLC
645 Martinsville Road
Basking Ridge, New Jersey 07920

Katherine Vidal KVidal@winston.com
Eimeric Reig-Plessis EReigPlessis@winston.com>
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, California  94025

David P. Dalke DDalke@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, California  90071-1543

/s/_____