UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CAMBRIA COMPANY LLC,

        Plaintiff,

      v.

HIRSCH GLASS CORP.,
  *d/b/a* SPECTRUM QUARTZ,

        Defendant.

Civ. No. 21-10092 (MAS)(JBD)

MEMORANDUM ORDER
(*REDACTED*)

The Court here resolves three discovery disputes [Dkts. 101, 103] in this

patent infringement action between plaintiff Cambria Company LLC ("Cambria")

and defendant Hirsch Glass Corp., d/b/a Spectrum Quartz ("Hirsch").  Hirsch seeks

to amend some of its (i) non-infringement contentions; (ii) invalidity contentions; and

(iii) responses to Cambria's requests for admission ("RFAs").  Cambria objects.

For the reasons set forth below, the Court will deny Hirsch's request to amend its

non-infringement contentions; deny Hirsch's request to amend its RFA responses;

and grant Hirsch's request to amend its invalidity contentions.[1]

---

[1]    Because this Memorandum Order refers to information and materials that may be designated "Highly Confidential—Attorneys' Eyes Only" or "Confidential" pursuant to the Discovery Confidentiality Order entered in this case, the Court is filing the Order under temporary seal.  Counsel for the parties are directed to meet and confer and, on or before September 7, 2023, submit to chambers via email agreed-upon redactions for a publicly filed version of this Order.  Honoring the public's right of access to judicial materials, the proposed redactions shall be the least restrictive necessary to protect the parties' sensitive information.

## I.     BACKGROUND

Cambria designs, manufactures, and markets natural quartz surface products, which have a variety of uses in homes and businesses, including countertops, floor tiles, vanities, fireplace surrounds, wet bars, and showers. [Dkt. 1] ¶ 11.  Cambria brought this action in February 2021 in the United States District Court for the Eastern District of Virginia, alleging that Hirsch, which manufactures and sells quartz surface products under the brand name Spectrum Quartz, willfully infringed eight patents—three utility patents and five design patents—that covered various products that Cambria claims to have originally designed.  *Id.* ¶¶ 1, 3, 23-46.  More specifically, Cambria alleged that Hirsch willfully designed its products "to imitate Cambria's innovative products using Cambria's proprietary technology."  *Id.* ¶ 22.  Hirsch answered Cambria's complaint in March 2021, denying liability and infringement and asserting that the patents-in-suit are invalid.  [Dkt. 17.]  Hirsch also moved to transfer the case to this Court, and the motion was granted in April 2021.  [Dkts. 21, 34.]

Since an initial scheduling conference in this Court in June 2021, the parties have been engaged in discovery and claim construction practice.  Following a *Markman* hearing in May 2022, the Court filed an opinion and order in September 2022 construing pertinent claims of the asserted patents.  [Dkts. 77, 88-89.]  Fact discovery closed in March 2023, and dispositive motions are scheduled to be filed in September 2023.  [Dkt. 98.]

2

On February 16, 2023 and again on March 7, 2023, the parties filed joint letters outlining their positions on, respectively, discovery disputes regarding Hirsch's requests to amend its non-infringement and invalidity contentions, as well as Hirsch's request to amend its responses to certain RFAs that Cambria had propounded.  [Dkts. 101, 103.]  The Court describes those disputes in Section III, below.

## II.   LEGAL STANDARDS

Local Patent Rules 3.1, 3.2A, and 3.3 govern the parties' disclosure of, among other things, infringement contentions, non-infringement contentions, and invalidity contentions.  Local Patent Rule 3.7 then governs a party's request to amend contentions previously disclosed.  It provides that "[a]mendment of any contentions, disclosures, or other documents required to be filed or exchanged pursuant to these Local Patent Rules may be made *only* by order of the Court upon a timely application and showing of good cause."  L. Pat. R. 3.7.  The rule sets forth non-exhaustive examples of circumstances that may, absent undue prejudice to the adverse party, support a finding of good cause.  *Id.*  The burden to establish good cause for an amendment rests on the moving party.  *See, e.g.*, *Razor USA LLC v. DGL Grp., Ltd.*, Civ. No. 19-12939 (JMV), 2022 WL 44627, at *4 (D.N.J. Jan. 5, 2022).  Whether to permit an amendment under Local Patent Rule 3.7 rests in this Court's sound discretion.  *See, e.g.*, *Celgene Corp. v. Natco Pharma Ltd.*, Civ. No. 10-5197 (SDW), 2015 WL 4138982, at *3 (D.N.J. July 9, 2015).

To that end, courts have identified several factors that should be weighed in determining whether good cause exists warranting leave to amend contentions. Those factors include: (i) the reason for the delay and whether the party has been diligent; (ii) the importance of what the court is excluding and the availability of lesser sanctions; (iii) the danger of unfair prejudice; and (iv) the availability of a continuance and the potential impact of a delay on judicial proceedings.

*See Cochlear Ltd. v. Oticon Med. AB*, Civ. No. 18-6684 (BRM), 2019 WL 3429610, at *7 (D.N.J. July 29, 2019)).  As is stated often in this context:

> The Local Patent Rules exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases.  The rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.  Distinguishable from the liberal standard for amending the pleadings, the philosophy behind amending claim charts [and contentions] is decidedly conservative, and designed to prevent the "shifting sands" approach to claim construction.  However, Rule 3.7 is not a straitjacket into which litigants are locked from the moment their contentions are served, but instead, a modest degree of flexibility [exists], at least near the outset.  Therefore, while preliminary infringement contentions are still preliminary, it is important to recognize that the Local Patent Rules strive to have the parties establish their contentions early on.

*King Pharms., Inc. v. Sandoz Inc.*, Civ. No. 08-5974 (GEB), 2010 WL 2015258, at *4 (D.N.J. May 20, 2010) (internal citations and quotation marks omitted).

Separately, Federal Rule of Civil Procedure 36 governs RFAs.  Subject to Rule 26(b)(1)'s overall limitation on the scope of discovery, the rule provides that "[a] party may serve on any other party a written request to admit . . . the truth of

4

any matters . . . relating to . . . (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). Relevant here, Rule 36(b) governs requests to withdraw or amend admissions previously made:

> A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

Fed. R. Civ. P. 36(b).

Consistent with its broad discretion to regulate pre-trial proceedings, the Court has "great discretion in deciding whether to withdraw or amend an admission." *United States v. Branella*, 972 F. Supp. 294, 301 (D.N.J. 1997) (citing *United States v. Stelmokas*, Civ. No. 92-3440 (JD), 1995 WL 464264, at *4 (E.D. Pa. Aug. 2, 1995)). "Rule 36(b) emphasizes 'the importance of having an action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not prejudice him.'" *Revlon Consumer Prods. Corp. v. L'Oreal S.A.*, 170 F.R.D. 391, 402 (D. Del. 1997) (quoting *Coca-Cola Bottling Co. of Shreveport, Inc. v. The Coca-Cola Co.*, 123 F.R.D. 97, 103 (D. Del. 1988)). Accordingly, courts typically require two showings before permitting amendment or withdrawal of admissions. *Id.* First, the party seeking to amend or

withdraw the admission must show that the presentation of the merits of the action will be subserved by the withdrawal or amendment. *Id.* Second, the party that obtained the admission must fail to show that it will suffer prejudice as a result of the withdrawal or amendment. *Id.* (citing *Coca-Cola Bottling Co.*, 123 F.R.D. at 102). Prejudice can be shown if "the party who obtained the admission will have difficulty obtaining evidence required to prove the matter previously admitted." *Id.* (citing *Coca-Cola Bottling Co.*, 123 F.R.D. at 103, 106).

But even if an amendment will promote the presentation of the merits and prejudice will not ensue, the Court still retains discretion to permit or deny the request if it will not serve the interests of justice. *See Honeywell Int'l Inc. v. ICM Controls Corp.*, Civ. No. 11-569 (JNE), 2013 WL 6169671, at *5-6 (D. Minn. Nov. 22, 2013); *Coca-Cola Bottling Co.*, 123 F.R.D. at 103 (citation omitted) (explaining that "[b]ecause the language of []Rule [36(b)] is permissive, the Court has substantial discretion in deciding whether to grant an amendment," and "need not make an exception to Rule 36 even if both the merits and prejudice issues cut in favor of the party seeking exception to the rule").

## III. DISCUSSION

The Court turns to the parties' disputes. The dispute concerning Hirsch's proposed amended non-infringement contentions overlaps significantly with the dispute regarding Hirsch's request to amend its RFA responses. Accordingly, the Court addresses first Hirsch's proposed amendments to its non-infringement

contentions and then addresses Hirsch's proposed amended responses to Cambria's

RFAs.  The Court then turns to Hirsch's request to amend its invalidity contentions.

A.      Non-Infringement Contentions

Hirsch seeks to amend its non-infringement contentions to add additional

bases of non-infringement regarding Cambria's three asserted utility patents.

Cambria challenges Hirsch's diligence in proposing the amendments.  "Motions to

amend contentions invariably are highly fact-sensitive," Allyn Z. Lite, N.J. FED.

PRAC. & RULES, L. Civ. R. 9.3, cmt. 4 (Gann 2023), and that is true here.

Accordingly, the Court details below the chronology of the parties' competing

infringement and non-infringement contentions before turning to their dispute.

Pursuant to Local Patent Rule 3.1, Cambria served its infringement

contentions in July 2021.  *See* July 6, 2021 Disclosure of Infringement Contentions

("Orig. Infr. Conts.").  Those contentions asserted that Hirsch's products infringed all

claims in each of the asserted utility patents—claims 1-20 of the '303 and '626

patents and claims 1-35 of the '942 patent.  *See id.* at 3, 29, 32, 66, 69, 92.

Throughout its original contentions, Cambria identified specific Hirsch products—

by product name and image—that allegedly infringed each asserted claim in each

asserted patent.  In addition to specifically identifying Hirsch's allegedly infringing

products, Cambria also extensively cited language in two after-acquired patents that

Hirsch's president, Alex Xie, had obtained (the "Xie patents").  The Xie patents,

Cambria contended, "provide[d] additional evidence that [Hirsch's accused products

and processes] infringe" claims in Cambria's utility patents.  *Id.* at 4, 33.  Indeed, in

its claim charts submitted pursuant to Local Patent Rule 3.1(c), Cambria quoted

from the Xie patents as evidence that Hirsch manufactured and marketed products

pursuant to those patents in ways that directly infringed the claims in Cambria's

patents.  *See generally id.*

In response, in August 2021, pursuant to Local Patent Rule 3.2A, Hirsch

served its first set of non-infringement contentions.  *See* [Dkt. 101-3] at 5-21.

In April 2022, with Cambria's consent, Hirsch served amended non-infringement

contentions.  [Dkt. 101-4] at 6-21.[2]  Those amendments—all of which were directed

at claim limitations in Cambria's '942 patent concerning the process of compacting

quartz composite material in a mold—made modest revisions to Hirsch's original

non-infringement contentions.  *See id.* at 12, 14, 16-17 (redline).  Specifically,

Hirsch's amendment asserted, with respect to several related limitations in the

'942 patent, that composite quartz material was not vibrated or compacted in

"the mold" during the accused processes, but that such material was removed from

"the mold" before "being vibrated and compressed."  *Id.*

In July 2022, with Hirsch's consent, Cambria amended its infringement

contentions by narrowing them considerably.  *See generally* July 28, 2022 First

Partial Amendment to Plaintiff's Disclosure of Asserted Claims and Infringement

---

[2]    Cambria at first objected to these amendments, but it ultimately consented to
them.  *See* [Dkt. 99] at 1-2.

Contentions ("Am. Infr. Conts.").  Whereas it originally asserted infringement with respect to claims 1 through 20 of both the '303 and '626 patents, Cambria's amended contentions narrowed its infringement assertions to claims 1, 2, 8, 10, 11, 13–15, 18, and 19 of the '303 patent, and to claims 1, 5–8, 11–13, and 15–18 of the '626 patent. And whereas it originally asserted infringement with respect to claims 1 through 35 of the '942 patent, Cambria's amended contentions narrowed its infringement assertions to claims 1–4, 7, 8, 14, 16–20, 22–24, 26–29.  *Id.* at 1.  Cambria also identified six additional Hirsch products that it alleged infringed the asserted utility patents, *id.* at 1-3, and it appended individual claim charts pursuant to Local Patent Rule 3.1(c), specifying how each accused product infringed the specific claim limitations that remained in dispute, based in part on Cambria's recent inspection of certain Hirsch slabs and product samples produced in discovery.[3]  Cambria's claim charts also asserted that those slabs and samples were "representative" of each Hirsch product line accused of infringement.[4]

---

[3]      Cambria noted that many of the limitations of the asserted claims were not disputed, based on Hirsch's first amended non-infringement contentions.  Am. Infr. Conts. at 4.

[4]      Although the parties' dispute about Cambria's "representativeness" theory appears directed at whether the slabs that Hirsch made available in discovery are representative of the product line to which they correspond, the Court notes that Cambria's amended infringement contentions also assert more broadly that each of Hirsch's accused products included in Cambria's claim charts is "representative for purposes of proving infringement of every other charted product," because "all such products are made using the same or substantially the same process and have the same or substantially the same characteristics for purposes of the limitations of the asserted claims."  Am. Infr. Conts. at 5.  At any rate, because the Court concludes

Roughly one-and-a-half months after Cambria served its amended infringement contentions; more than four months after Hirsch served its first amended non-infringement contentions; and more than 12 months after Hirsch served its original non-infringement contentions, Hirsch served a second set of proposed amended contentions, dated September 9, 2022, which are at issue here. [Dkt. 101-1.]  Unlike its first set of amended non-infringement contentions, Hirsch proposed in its second set of amendments to assert new non-infringement contentions to claims in all three utility patents, and with respect to numerous claim limitations.  *Id.* at 8-26.  Some of the amended contentions proposed to assert additional non-infringement arguments to claim limitations that Hirsch already had disputed.  But Hirsch's proposed amendments also sought to dispute many entirely new claim limitations that Hirsch had not previously challenged.[5]  Moreover, while Hirsch trains its arguments on what it refers to as the "inherent randomness contentions"—which permeate its proposed amendments and which the Court discusses below—the proposed amendments are not limited just to that category. Listed below are examples of Hirsch's new proposed non-infringement assertions

---

regardless that Hirsch should have included its proposed amended non-infringement contentions earlier, the scope of Cambria's "representativeness" theory is immaterial to the Court's analysis.

[5]     By the Court's count, Hirsch's proposed amendments in September 2022 sought to raise, for the first time, non-infringement arguments for at least 14 new claim limitations across the three utility patents that Hirsch had not previously challenged.

that do not expressly invoke the "inherent randomness" argument, and all of which

Hirsch proposed to add for the first time in September 2022:

- Assertions that the accused products do not necessarily comprise a major surface having a first pigmented vein extending generally lengthwise from edge-to-edge that separates at least second and third pigmented veins extending generally lengthwise and positioned on opposing sides of the first pigmented vein, and that the major surface of the accused products do not necessarily have a first pigmented vein.

- Assertions that mixing and combining occurs as ██████████████ ██████████████ such that there are not necessarily "layers" in the accused products.

- Assertions that pigmentation is ████████████ to the particulate mixes in the accused products.

- Assertions that some of the particulate mixes in the accused products do not comprise a quartz material and at least one binder or are not quartz mixes.

- Assertions that Hirsch does not necessarily ████ the particulate mixes in the accused products.

- Assertions that the accused processes lack a "slab" mold.

- Assertions that in the accused processes, the mold is not ████████ from a substantially vertical or substantially non-horizontal orientation to a substantially horizontal orientation.

- Assertions that during the accused processes, particulate mixes are ████ ██████████████████ of multiple different particulate mixes.

- Assertions that during the accused processes, mixing and combining occurs as ██████████████████, such that "layers" do not necessarily result.

- Assertions that the accused products do not necessarily have at least one vein visible on both a front major surface and a rear major surface of the processed slab.

- Assertions that during the accused processes, a mold end cap is ██████ ████████████████████████████████████████████████ and that depending on the implementation of the accused processes, the end cap of the mold ████████████████ depending on how much material is deposited into the mold.

*Id.* at 6-25.[6] Notably, several of Hirsch's proposed new contentions relate to limitations in the '942 patent that are within claims containing other limitations that Hirsch disputed in its first amendment served just four months earlier.[7]

Given this history, Cambria argues that Hirsch has not satisfied its burden of demonstrating its diligence in moving to amend its non-infringement contentions for a second time. Hirsch's only explanation for why it seeks to amend its contentions again is that its amendments respond to Cambria's own amended infringement contentions served in July 2022. Hirsch frames Cambria's amended contentions as having fundamentally altered its approach by no longer relying on language in the Xie patents, but instead proceeding based on, *inter alia*, pictures of slabs of the accused products produced in discovery, and Cambria's inspection of those slabs in June 2022. Moreover, Hirsch argues, its proposed amendments respond to

---

6    Although Hirsch directed some of its new proposed non-infringement assertions to claims that are no longer at issue, all of its new proposed non-infringement assertions identified above are directed to at least one claim that remains in dispute.

7    *Compare* [Dkt. 101-1] at 13-14, 17, 18-19, *with* [Dkt. 101-4] at 12, 14, 16.

Cambria's ostensibly new argument that the slabs and samples upon which Cambria relied are "representative" of all of the accused products. *See* [Dkt. 101] at 1-3, 9-14.

The Court agrees with Cambria. Hirsch has not adequately explained why it did not earlier assert—or could not have earlier asserted—the many non-infringement arguments that it now seeks to inject into the case at this late hour. Many of Hirsch's proposed amendments—the "inherent randomness contentions" referenced above—relate to one of its primary legal theories that the ultimate appearance of its products is a result of the inherent randomness of its processes. In defending the patent infringement claims against it, Hirsch has argued from the outset that its accused products and processes have a "significant degree of randomness" that it cannot control. *See* [Dkt. 101-3] at 6. Consequently, Hirsch could have and should have included the new proposed "inherent randomness contentions" long ago. And separate and apart from the "inherent randomness contentions," all of Hirsch's proposed amended non-infringement contentions were either known or readily knowable by those that know Hirsch's own products best— Hirsch and its representatives. To give but two examples (there are others), Hirsch fails adequately to explain why it did not earlier contend that during its accused processes, "the mold is not 'adjusted' [from a substantially vertical position] to a substantially horizontal orientation," or that "pigmentation is not necessarily added

13

by [Hirsch] to the particulate mixes," in response to asserted limitations in claims 4 and 20 of the '942 patent. [Dkt. 101-1] at 14, 17.[8]

As noted, Hirsch frames its amended contentions as direct responses to Cambria's amended contentions. Hirsch's arguments strike the Court as makeweight. The Court does not agree that Cambria shifted its approach substantially at all, let alone so fundamentally that it warrants the widespread additions that Hirsch now proposes. Hirsch had at its disposal everything it needed to revise its contentions well before Cambria revised its own by consent. Hirsch's explanations for seeking to amend its contentions a second time serve only highlight its lack of diligence.

First, Hirsch's focus on Cambria's citation of language in the Xie patents does not give the complete picture. Cambria previously identified the bases for infringement with respect to specific products, claims, and claim limitations, and it

---

[8]      As noted above, *see supra* note 2, Cambria originally opposed Hirsch's first amended non-infringement contentions before ultimately consenting to them. *See* April 22, 2022 Letter from Hirsch to the Court [Dkt. 73] at 1. In explaining to the Court in April 2022 why it should permit the modest proposed amendments already described, Hirsch argued that its "proposed amendment is based on its further investigation, with counsel, of [Cambria's] 85 asserted utility patent claims." *Id.* at 5. In fact, Hirsch represented to the Court at that time that its "proposed amendments provide the sole non-infringement defense for the independent claims, and certain dependent claims," in the '942 patent. *Id.* at 3. Hirsch said nothing of other potential non-infringement defenses with respect to the '942 patent (including "inherent randomness" arguments), and it said nothing at all about continued investigation of other potential non-infringement arguments concerning the '303 and '626 patents.

included as "evidence" of that infringement not only language from the Xie patents,

but also extensive reference to marketing materials of Hirsch's accused products.

*See, e.g.*, Orig. Infr. Conts. at 5 n.1.  Viewed in context, Cambria's revision of its

contentions to include evidence based on new information learned during its

June 2022 inspection of Hirsch slabs[9] was neither surprising nor the fundamental

shift in approach that Hirsch describes.  *Cf. In re Fetzima*, Civ. No. 17-10230 (ES),

2020 WL 468438, at *3-4 (D.N.J. Jan. 29, 2020) (granting leave to amend

infringement contentions to incorporate 700,000 pages of scientific documents that

plaintiff had received from defendants less than four months earlier, and explaining

that L. Pat. R. 3.7 requires parties to "proceed with diligence in amending when new

information comes to light in the course of discovery"); *Intellectual Ventures I LLC v.

AT&T Mobility LLC*, Civ. No. 13-1668-72 (LPS), 2017 WL 658469, at *5 (D. Del. Feb.

14, 2017) (declining to strike amendments to infringement contentions where,

although the plaintiff had formulated the theory on which the amendment was based

previously, it "was appropriately pursuing discovery with respect to that theory in

the preceding months" and had just deposed defendant's witness the month before);

*LMT Mercer Grp., Inc. v. Maine Ornamental, LLC*, Civ. Nos. 10-4615, 10-6699

(FLW), 2014 WL 284238, at *8 (D.N.J. Jan. 24, 2014) (concluding that defendant

established good cause to supplement its infringement contentions that were based

---

[9]      According to the parties, Cambria's inspection of selected slabs corresponding
to some of Hirsch's accused products occurred on June 8, 2022.  *See* [Dkt. 99] at 2.

on "newly discovered, non-public information").  Hirsch's proposed amendments, in turn, are inward-looking, a product of its own review of its own products and processes.  Hirsch could have—and thus should have—included its new proposed non-infringement contentions well before and irrespective of Cambria's own amended infringement contentions.

Second, Hirsch's complaint about Cambria's "representativeness" theory is similarly unpersuasive.  Again, Hirsch was well able to understand its own products and processes and, if it believed that asserted claim limitations did not apply to those products or processes on a universal or categorical basis, it easily could have said so.  This is particularly true given the primacy of Hirsch's "inherent randomness" theory that has pervaded its entire defense theory in this case from the start.  It did not take—or at least, it should not have taken—Cambria's amended infringement contentions for Hirsch to recognize that its randomness theory of non-infringement applied to other claim limitations that Cambria had placed in issue as early as July 2021.  If, as Hirsch now seeks to argue, there were other claim limitations to which its randomness theory applied, it should have said so sooner.

What the Court has said thus far is sufficient to deny Hirsch's application because Hirsch has not demonstrated diligence.  *See Merck Sharp & Dohme Corp. v. Sandoz, Inc.*, Civ. No. 12-3289 (PGS), 2014 WL 997532, at *7 (D.N.J. Jan. 6, 2014) ("The key and primary consideration in determining the existence of good cause is the diligence of the moving party."); *Jazz Pharms., Inc. v. Roxane Labs., Inc.*,

16

Civ. No. 10–6108 (ES), 2013 WL 785067, at *5 (D.N.J. Feb. 28, 2013) (stating that "[o]nly if the moving party is able to show diligence may the court consider the prejudice to the non-moving party"). The Court adds, however, that Hirsch's proposed amended contentions, brought to the Court's attention just before fact discovery was set to end, also would significantly expand the number and scope of disputed issues on the eve of dispositive motion practice, whereas Cambria's amended contentions materially narrowed them. In that regard, Hirsch's belated contentions are different in kind and out of balance with the amended infringement contentions to which they purport to respond. And the substance of Hirsch's proposed amended contentions, it bears repeating, relates to many issues and limitations that Hirsch had never before disputed.

Regardless of motivation or purpose, it is apparent that Hirsch seeks to inject a significant swath of new issues, arguments, and theories into the case "at the eleventh hour" without providing a sufficient justification for having failed to do so earlier. *Eisai R&D Mgmt. Co. v. Shilpa Medicare Ltd.*, Civ. No. 19-19998 (CPO), 2023 WL 2588580, at *5 (D.N.J. Feb. 15, 2023). Although it is not exactly clear how litigation of these new issues would play out were the Court to permit them, the Court is firmly convinced that Hirsch's amendments would seriously complicate the proceedings going forward and "frustrate[] the purpose of the Local Patent Rules in shaping discovery." *Razor*, 2022 WL 44627, at *6, *8 (citation omitted) (considering

the impact of delay on judicial proceedings when denying permission to amend infringement contentions).

Ultimately, the Court rejects the argument that Cambria's amendments represent a fundamental intervening shift that warrants the expansive and disruptive amendments that Hirsch now proposes to add.  The Court concludes that Hirsch could have, and thus should have, included its proposed non-infringement contentions far earlier in this litigation, regardless of Cambria's amended infringement contentions.  Because Hirsch has not met its burden of establishing good cause, the Court denies its request to amend its non-infringement contentions for a second time.

B.   <u>Requests for Admissions</u>

Hirsch next requests, pursuant to Rule 36(b), permission to serve amended responses to Cambria's RFAs.  As both parties agree, the RFAs at issue here— RFAs 4, 9, 11, 12, 14, 19, and 21—asked Hirsch to admit certain things about its accused products and processes regarding whether those instrumentalities meet certain claim limitations in Cambria's asserted utility patents.  *See* [Dkt. 103-12.] Hirsch answered the RFAs initially in early February 2022, some seven months into fact discovery and shortly before Hirsch filed its responsive *Markman* brief.  *See id.*; [Dkts. 43, 64.]  As a general matter, Hirsch admitted as a matter of fact that its products and processes practiced or embodied those aspects of the claim limitations to which the RFAs were targeted.  Hirsch's proposed amended RFA responses,

served on Cambria several months later in July 2022 but first brought before the Court in March 2023,[10] now seek to withdraw some of those admissions, and to qualify, caveat, and narrow others.

For many of the reasons set forth in the extended discussion in Section III.A, above, the Court concludes (i) that Hirsch has failed to establish that the proposed amendments will promote a presentation of the merits of the case, (ii) that permitting the amendment will cause prejudice, and (iii) that under the present circumstances, permitting Hirsch to amend its responses to RFAs will not serve the interests of justice. Exercising its discretion under Rule 36(b), the Court will deny Hirsch's request to amend its RFA responses. *See Honeywell Int'l Inc.*, 2013 WL 6169671, at *5-6 (exercising discretion to deny a request to amend response to an RFA, concluding that permitting the amended RFA response in light of the protracted litigation would "not serve the interests of justice").

Hirsch correctly acknowledges that its proposed amended RFA responses "are reflected in and consistent with its proposed Amended Non-Infringement contentions" that the Court has just rejected. [Dkt. 103] at 11. As with the non-infringement contentions, the Court agrees with Cambria that through Hirsch's amended RFA responses, it is seeking belatedly to insert into the case a significant

---

[10]    *See* [Dkt. 103] at 11 (stating that Hirsch served its amended RFA responses on July 25, 2022). The Court stayed discovery in September 2022 to explore settlement, but proceedings resumed in early December 2022 with a new fact discovery deadline of March 10, 2023.

volume of new substantive legal theories, contentions, arguments, qualifications, and caveats, without any factual support and without a sufficient explanation of why it did not do so earlier.  Indeed, in many respects, the proposed amended RFA responses are simply different vehicles by which Hirsch seeks to dispute claim limitations that Cambria has argued Hirsch's accused instrumentalities infringe, and which Hirsch had not previously disputed.  *See id.* at 10 (Hirsch characterizing Cambria's RFAs as "contention" requests that seek admissions "concerning ultimate issues of whether the [a]ccused [p]roducts and [p]rocesses meet limitations of the asserted claims of the patents-in-suit").  In one way or another, new arguments raised in Hirsch's amended RFA responses correspond neatly with new arguments raised in its proposed amended non-infringement contentions addressed above. *Compare, e.g.*, [Dkt. 101-1] at 8 (new proposed contention raising non-infringement argument regarding claim 1 of the '303 patent) *with* [Dkts. 103-8, 114] at 9 (proposed amended response to RFA 4 raising same issue); *compare generally* [Dkt. 101-1] (proposing throughout proposed amended non-infringement contentions the "inherent randomness" argument discussed above) *with* [Dkts. 103-8, 114] at 15 (raising "inherent randomness" argument in proposed amended response to RFA 9); *compare generally* [Dkt. 101-1] at 8, 11, 20-21, 23-24 (proposing new non-infringement argument concerning multiple limitations in the '303 and '626 patents that "mixing and combining occurs as the mixes are deposited into the mold and during steps of vibration and compaction, such that there are not necessarily 'layers'

in the [a]ccused [i]nstrumentalities") *with* [Dkts. 103-8, 114] at 15 (raising same argument in amended response to RFA 9).

Much like its proposed amended non-infringement contentions, Hirsch explains in ambiguous fashion that "based on further investigation" of its own products and processes, it realized that some of its admissions were inaccurate or not universally true.  [Dkt. 103] at 11-12.  And much like the Court's conclusion above, Hirsch's explanation is insufficient.  Beyond a generalized reference to a "further investigation," Hirsch does not explain why it did not earlier identify aspects of its own products and processes before responding to RFAs with careful, certified answers on which Cambria reasonably relied.  To use one of the two examples identified above, *see supra*, at 13-14, Hirsch fails to explain why it did not recognize earlier that its own processes do not universally involve adding pigmentation to the particulate mixes that are poured into the molds.  *See* [Dkts.103-8, 114] at 20, 26 (concerning amended responses to RFAs 14 and 19).  The proposed amended RFA responses set forth contentions that Hirsch should long ago have identified about its own instrumentalities.  Hirsch's failure to do so does not warrant permitting it to revisit its admissions at this stage of the case.  *See Gregory v. Home Retention Servs., Inc.*, Civ. No. 14-5366 (SRC), 2015 WL 3490092, at *4 (D.N.J. June 2, 2015) (denying request to amend RFA responses because prior responses had been "studied" and because requesting party did not provide sufficient explanation or factual support to

show why its original responses had been in error)[11]; *Honeywell*, 2013 WL 6169671, at *5-6 (denying request to amend RFA response where, despite having multiple opportunities to do so earlier, the plaintiff waited to formally move to amend its RFA response until defendant, relying on the original RFA response, moved for partial default judgment and partial dismissal of plaintiff's complaint; the Court determined that "the parties' discovery responses are what they are and each party, aided by experienced counsel, has litigated accordingly," and that "[p]ermitting [plaintiff] to amend its response to [the] RFA [at issue] at this stage in the litigation does not serve the interests of justice"); *Coca-Cola Bottling Co*, 123 F.R.D. at 107-08 (noting that defendant had not shown "why it could not have qualified its initial or revised responses to plaintiffs' Second Request for Admissions," instead choosing "to admit unambiguously" the fact at issue).

Along the same lines, Hirsch points to nothing in the record that contradicts its present admissions or that supports its supplemental responses.  Like its proposed non-infringement contentions, Hirsch's amended RFA responses seek to inject qualifications, provisos, and caveats that appear to set up an argument that some, but not all, of Hirsch's products meet particular limitations in Cambria's

---

[11]    Hirsch argues that *Gregory* is distinguishable because, unlike here, the proposed amendment was in connection with summary judgment briefing. [Dkt. 103] at 12.  True but irrelevant.  Regardless when the proposed amendments were made, the court in *Gregory* explained that "Plaintiff's nuanced admission on this point appears carefully crafted and deliberate.  Legal decisions on how to navigate consequential areas of discovery carry weight under the federal rules." 2015 WL 3490092, at *4.  The same is true here.

patents.  But within those qualifications, provisos, and caveats, Hirsch never

specifies which of its products it continues to admit meet the asserted claim

limitations, and which it is seeking to carve out through its amended RFA responses.

Accordingly, where there was clarity with Hirsch's original RFA responses, its

amended responses prompt little but ambiguity and uncertainty.  *See Revlon*,

170 F.R.D. at 402; *In re Paulsboro Derailment Cases Clark v. Consol. Rail Corp.*,

Civ. Nos. 13-784, 13-3935 (RBK), 2016 WL 7427117, at *1-2 (D.N.J. July 19, 2016)

(finding defendant's explanation that "later research and investigation by

[d]efendant [] indicate[d] that this admission was erroneously admitted" to be an

insufficient description of how the admission was contrary to the evidence of record);

*Branch Banking and Trust Co. v. Deutz-Allis Corp.*, 120 F.R.D. 655, 658-60

(E.D.N.C. 1988) (denying defendants' request to amend admissions where they did

not explain in detail why they sought to deny their prior admission and upon what

"new evidence" the new denial was based; there was "no affidavit, verified pleading,

or other evidence at bar to suggest the admission, if left standing, would render an

unjust result under the law" and thus "simply . . . no 'evidence' controverting

defendants' [original] admission"; the admission was not "so vital to defendants' case

that it amounts to a complete concession of liability" and the "record disclose[d] no

reason why defendants, with due diligence, could not have denied [the admission]

request [earlier] or, if they were uncertain of how to respond, state the reasons why

they could not truthfully admit or deny the matter at that time"); *Owens v. IQ Data*

*Int'l, Inc.*, Civ. No. 20-4099 (JS), 2022 WL 4225391, at *2 (E.D. Pa. Sept. 13, 2022) (citing *Airco Indus. Gases, Inc. v. Teamsters Health & Welfare Pension Fund*, 850 F.2d 1028, 1036 (3d Cir. 1988) (noting that contemporaneous and compelling evidence contradicting admissions may be cause for withdrawal)); *Bridgestone Sports Co., Ltd. v. Acushnet Co.*, Civ. No. 05-132 (JJF), 2007 WL 9811093, at *7 (D. Del. May 24, 2007) (permitting withdrawal of response to RFA where the evidence in plaintiff's expert report contradicted defendant's admission).

Upon inspection and for reasons already addressed, the Court also is persuaded that permitting Hirsch's amended RFA responses at this late stage would cause prejudice to Cambria and the orderly resolution of the proceedings. As the Court has recounted above, in its amended infringement contentions Cambria narrowed the scope of disputed claims. Cambria argues that it did so in reliance on Hirsch's RFA responses, including those that Hirsch now seeks to revise. Cambria's argument is borne out by the amended claim charts that it served in July 2022— right around the time that Hirsch first sought to amend the RFA responses at issue here. Cambria's amended claim charts—for all three asserted utility patents and numerous claim limitations within them—repeatedly cite Hirsch's original admissions to RFAs 9, 11, 12, 19, and 21 as evidence that specific Hirsch products

infringe Cambria's patents.[12]  Cambria thus reasonably and substantially relied on Hirsch's original admissions in formulating its litigation position.

Moreover, two of Hirsch's amended RFA responses include arguments about terms that might have been susceptible to (or even required) the Court's construction at the *Markman* stage.  *See, e.g.*, [Dkt. 114] at 16-18 (proposed amended RFA responses 11 and 12 inserting new objection to the use of the term "slab mold" in '942 patent); *id.* at 19-20, 26 (proposed amended RFA responses 14 and 19 newly arguing that "pigmented" means "adding pigmentation").  This further underscores the complicating nature of Hirsch's proposed amendments.

Finally, although the Court here is dealing with RFAs under Rule 36 and not contentions under Local Patent Rule 3.7, the spirit behind the local rules—which "require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed"—applies equally to the contention RFAs here.  *TFH Publ'ns, Inc. v. Doskocil Mfg. Co.*, 705 F. Supp. 2d 361, 366 (D.N.J. 2010) (citation omitted).  Permitting the amendments, in the Court's judgment, will require a substantial amount of additional time, energy, and

---

[12]    *See* Cambria's July 28, 2022 Amended Infringement Contentions, Exs. A-01 to 14, B-01 to 14, and C-01 to 14 (relying on RFA No. 9 for claims 1.c, 1.d, and 14.3 of the '303 patent, claim 14 of the '942 patent, and claims 1.d, 1.f, and 16 of the '626 Patent; RFA No. 11 for claims 1.a and 27.a of the '942 patent; RFA No. 12 for claim 28 of the '942 patent; RFA No. 19 for claims 1.b, 4, 7, and 27.b of the '942 patent; and RFA No. 21 for claims 1.c, 1.d, 2, 8, and 14.3 of the '303 patent, and claims 1.pre, 1.d, 1.f, 5, and 16 of the '626 patent).

resources to unpack the multitude of questions that Hirsch's amended RFA responses raise.

All of this is complicated further by the nature of the discovery in this case; there is an apparent dearth of internal Hirsch documents related to the accused products, and the production of samples and the coordination of the inspection of full slabs of the accused products "took many months."[13]  Both parties describe the efforts involved in arranging for the inspection of slabs corresponding to the accused products, given that those products were discontinued "years ago," weigh "hundreds of pounds," and are located throughout the country or have been sold.  *See* [Dkt. 101] at 13-14; [Dkt. 101-8].  The challenges Cambria would face in obtaining more samples and inspecting additional slabs, combined with the apparent shortage of internal Hirsch documents, would make it difficult for Cambria to obtain evidence to prove the facts underlying those that Hirsch previously admitted.  *See Revlon*, 170 F.R.D. at 402 (explaining that prejudice is shown where "the party who obtained the admission will have difficulty obtaining evidence required to prove the matter previously admitted").  Hirsch did not seek leave from the Court to amend its RFAs until days before fact discovery was set to close, and this case is now on the eve of summary judgment practice.  The Court concludes that to permit Hirsch to unwind its admissions now would prejudice Cambria and unnecessarily prolong and complicate the proceedings.  *See Honeywell*, 2013 WL 6169671, at *6 (denying

---

[13]      Hirsch does not dispute this.  *See* [Dkt. 103] at 10-14.

amendment to RFA response "based on the facts and circumstances of this protracted litigation and in light of the discretion accorded to the Court under Rule 36").

Hirsch's proposed amended RFA responses, the Court concludes, would not serve the interests of justice and must meet the same fate as the proposed amended non-infringement contentions. The Court is not satisfied that permitting Hirsch to amend its answers to RFAs 4, 9, 11, 12, 14, 19, or 21 would promote a presentation on the merits, and the Court is persuaded that prejudice would result from the amendments. Accordingly, Hirsch's request to amend its responses to those RFAs is denied.

C.    Invalidity Contentions

Finally, Hirsch seeks to amend its invalidity contentions to add additional references to prior art that, it contends, anticipate and make obvious Cambria's asserted design patents, rendering them invalid. [Dkt. 101] at 5. As noted above, Hirsch served its first set of invalidity contentions in August 2021, which included a series of claimed references to prior art relevant to Cambria's design patents. *See* [Dkt. 101-3] at 35-47. As also noted, Hirsch served amended contentions in April 2022; those amended contentions did not add new references to prior art. *See* [Dkt. 101-4.]

In September 2022, Hirsch served a second set of proposed amended invalidity contentions, which are at issue here. *See* [Dkt. 101-1.] In those contentions, Hirsch

27

proposed to add five supplemental charts corresponding to Cambria's five asserted design patents.  Each of those charts proposes to add examples of additional design elements that Hirsch believes is prior art undermining the validity of Cambria's patents.  *See id.* at 48; [Dkt. 101-2].  As a general matter, the proposed additional prior art comes from websites and catalogs of other surface manufacturers and retailers, as well as more generic internet websites, such as Houzz.com and YouTube.  It also includes references to some materials that Cambria produced in discovery.  *See, e.g.*, [Dkt. 101-2], App'x AE (proposed additional prior art corresponding to the D'670 patent); *id.*, App'x AC (proposed additional prior art corresponding to the D'322 patent); [Dkt. 101] at 5, 8; [Dkt. 127] at 3 n.1.  Hirsch contends that its search for prior art relevant to the design patents was diligent, and that the new art it seeks to add was difficult to find because, by its nature, it is not keyword indexed or searchable.  *See* [Dkt. 101] at 4-6, 11-12.  Hirsch also explains (albeit without specification) that some of the prior art it seeks to add was identified through Cambria's own productions in discovery, and some of it was identified through responses to third-party subpoenas.  *Id.* at 4-5, 11-12.

Cambria, for its part, does not claim that permitting Hirsch to amend its invalidity contentions will cause it prejudice in this litigation.  Instead (as with Hirsch's proposed amended non-infringement contentions), Cambria challenges Hirsch's diligence in failing to locate the prior art references that it now proposes to add.  Specifically, Cambria argues that Hirsch has not sufficiently explained "what it

was doing for 10 months between August 2021 and June 202[2], or why it took so long to begin a prior art search that should have been undertaken at the outset of the case." *Id.* at 7.  Cambria argues, in short, that had Hirsch undertaken a diligent search, it would have located the proposed additional art earlier.

At the Court's direction, Hirsch filed a supplemental declaration that provided details about two outside search firms that it commissioned to conduct a prior art search, and the parameters and results of those firms' searches.  *See* [Dkt. 124]. Cambria responded [Dkt. 127], and the Court has taken those supplemental submissions into consideration.

On review, the Court is satisfied and thus concludes that Hirsch sought to locate references to prior art relevant to the asserted design patents with sufficient diligence and seriousness of purpose.  Accordingly, Hirsch's proposed amendments will be permitted.  According to its supplemental submission, Hirsch retained two outside firms beginning, respectively, in the spring and summer of 2021, to conduct searches for relevant prior art.  [Dkt. 124-1] ¶¶ 3, 7.  Hirsch and its representatives identify in detail the scope and timing of those searches, the search parameters, the costs incurred, and the reasons why the firms did not locate the new proposed art that Hirsch now seeks to add.  [Dkt. 124-1 – 124-4.]  Cambria takes issue with the quality of those searches, asserting, for instance, that under one firm's search protocol "the prior art that Hirsch now seeks to add could have been found sooner." [Dkt. 127] at 1.  But whether the prior art could have been located sooner, or

whether the firms' searches could have been better optimized, are not the pertinent questions, because one can be diligent yet unsuccessful.  On review of Hirsch's supplemental submission, the Court concludes that Hirsch's commission of outside search firms at the outset of this litigation constitute "earlier diligent search[es]" for prior art to be included in its invalidity contentions.  L. Pat. R. 3.7.

Cambria argues, however, that even if the Court accepts that Hirsch's initial search effort through these firms was diligent early in the litigation, Hirsch still was under a continuing obligation to search diligently for prior art, and that it failed to do so between the time it received the firms' search results in mid-2021 and September 2022 when it served the amended invalidity contentions now in dispute. [Dkt. 127] at 2.  While the Court agrees that Hirsch was under a continuing duty of diligence, *see Chiesi USA, Inc. v. Aurobindo Pharma USA, Inc.*, Civ. No. 19-18756 (FLW), 2021 WL 6774679, at *5 (D.N.J. Mar. 26, 2021), the Court does not agree that Hirsch failed to honor it, at least insofar as it concerns its search for relevant prior art.  In the Court's view, Cambria seeks to impose here an exacting level of diligence beyond that which Local Patent Rule 3.7 requires.  "[G]ood cause 'does not require perfect diligence.'"  *Eisai*, 2023 WL 2588580, at *5 (quoting *Fujifilm Corp. v. Motorola Mobility LLC*, Civ. No. 12-3587, 2014 WL 491745, at *4 (N.D. Cal. Feb. 5, 2014)).  Upon review, the Court accepts Hirsch's submission that following its receipt of its outside firms' search results, it continued diligently to search for prior art during this litigation and promptly sought to amend its invalidity contentions upon

30

identifying the proposed new art last summer, including based on materials produced during discovery in this case.  [Dkt. 101] at 4-6, 11-12.  In contrast with the Court's conclusion above concerning Hirsch's non-infringement contentions regarding its own internal products and processes, the Court does not perceive Hirsch's proposed amendments based on its search for prior art existing in the outside world to be "motivated by . . . an effort to recast legal arguments at the eleventh hour."  *Eisai*, 2023 WL 2588580, at *5.  The Court concludes that Hirsch acted with sufficient, if imperfect, diligence in its search for prior art.

Moreover, as noted, Cambria does not argue that permitting Hirsch to amend its invalidity contentions to add additional prior art will cause it any prejudice.  And unlike Hirsch's proposed amended non-infringement contentions, the Court believes that the additional prior art amendments will not be unduly disruptive to the proceedings or frustrate the purpose of the Local Patent Rules.  Indeed, based on the parties' correspondence and the Court's May 1, 2023 telephone status conference with counsel, it appears that the parties have been conducting expert discovery in a way that accounts for the proposed additional prior art now at issue, and that supplemental discovery will not be required as a result of this Order.  To eliminate any possible residual prejudice, however, if Cambria believes that Hirsch's addition of the prior art requires it, the Court will entertain a modest adjustment to the schedule to allow for limited supplemental expert discovery and a modest commensurate adjustment to the summary judgment briefing schedule.  If that is

the case, the parties are directed to meet and confer on the issue and file a letter promptly regarding the proposed timing and scope of the supplemental expert discovery and the proposed adjustment to the summary judgment briefing schedule.

The Court concludes that Hirsch was sufficiently diligent in seeking to identify relevant prior art and that permitting the proposed amendment will not cause any appreciable delay in the proceedings or prejudice to Cambria. The Court, accordingly, will grant Hirsch's request to amend its invalidity contentions.

## IV. CONCLUSION

For the reasons stated,

IT IS on this 31st day of August, 2023,

ORDERED that Hirsch's request to amend its non-infringement contentions is DENIED; and it is further

ORDERED that Hirsch's request to amend its responses to Cambria's Requests for Admission is DENIED; and it is further

ORDERED that Hirsch's request to amend its invalidity contentions is GRANTED; and it is further

ORDERED that counsel for the parties shall meet and confer and, on or before September 7, 2023, shall submit by email to chambers agreed-upon proposed redactions for a publicly filed version of this Memorandum Order.


_____
J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE