UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAMBRIA COMPANY LLC, | Civ. No. 21-10092 (MAS)(JBD) |
| Plaintiff, | MEMORANDUM ORDER **(REDACTED)** |
| v. | |
| HIRSCH GLASS CORP.,<br>*d/b/a* SPECTRUM QUARTZ, | |
| Defendant. | |

Before the Court is Plaintiff Cambria Company LLC's ("Cambria") Motion for Miscellaneous Relief Relating to Defendant's Public Disclosure of Settlement Communications and Confidential Information. [Dkt. 107.] Cambria requests that the Court enter an order (i) prohibiting further public disclosure of settlement communications in this case absent court order or agreement by the parties; (ii) requiring defendant Hirsch Glass Corp., d/b/a/ Spectrum Quartz ("Hirsch") to demonstrate that Cambria's confidential information obtained during discovery in this case was not used to prepare a separate civil complaint filed in the Eastern District of Texas ("EDTX Complaint") by a related entity, SQIP (*i.e.*, Spectrum Quartz Intellectual Property); and (iii) requiring Hirsch to pay Cambria's costs and fees associated with this motion. Hirsch opposes and asks the Court to award it fees for having to defend the motion. [Dkt. 110.]

For the reasons set forth below, the Court grants Cambria's request to prohibit further disclosure of confidential settlement communications in this case.

The Court also grants Cambria's request to order Hirsch to demonstrate that the EDTX Complaint was prepared without using Cambria's confidential information obtained during discovery in this action; the Court will direct Hirsch to make a detailed *ex parte* submission that the Court will review *in camera*.  Finally, the Court denies both parties' requests for fees as they relate to the disclosure of settlement communications.  The Court denies the parties' requests for fees— without prejudice and subject to the Court's forthcoming review of Hirsch's *ex parte* submission—as they relate to Hirsch's alleged use of Cambria's confidential information to prepare the EDTX Complaint.[1]

## I.    BACKGROUND

Cambria and Hirsch both manufacture and sell engineered natural quartz surface products used for a variety of purposes in homes and businesses. In February 2021, Cambria brought this action alleging that Hirsch willfully infringed eight patents that covered various products that Cambria claims to have originally designed.  *See generally* [Dkt. 1 ("Compl.").]  More specifically, Cambria alleged that Hirsch willfully designed its products to "imitate Cambria's innovative

---

[1]     Because this Memorandum Order refers to information and materials that may be designated "Highly Confidential—Attorneys' Eyes Only" or "Confidential" pursuant to the Discovery Confidentiality Order entered in this case, the Court is filing the Order under temporary seal.  Counsel for the parties are directed to meet and confer and, on or before September 15, 2023, submit to chambers via email agreed-upon redactions for a publicly filed version of this Order.  Honoring the public's right of access to judicial materials, the proposed redactions shall be the least restrictive necessary to protect the parties' sensitive business information.

products using Cambria's proprietary technology." *Id.* ¶ 22. Hirsch answered Cambria's complaint in March 2021, denying infringement and liability and asserting that the patents-in-suit are invalid. [Dkt. 17.]

After the initial scheduling conference before this Court in June 2021, the parties commenced discovery and, at the Court's direction, also began discussing the possibility of settlement. On September 15, 2021, with consent of the parties, the Court entered a Discovery Confidentiality Order ("DCO") to govern the handling of confidential information and documents in this matter. [Dkt. 54.] Among other things, the DCO provided that the parties may only use the confidential information obtained in this litigation "for prosecuting, defending, or attempting to settle the litigation." *Id.* ¶ 7.1.

After several months of written and oral exchanges, on December 6, 2021, counsel for Cambria conveyed an opening settlement demand via telephone to counsel for Hirsch. [Dkt. 107-1 ("Reig Decl.")] ¶ 11, Ex. B. Cambria marked each electronic communication to Hirsch leading up to the opening proposal "FRE 408 Communication." *Id.* Ex. B. Cambria's opening settlement proposal included a demand for ███████████████████████ and ███████████████ ████████████████████████████████. *Id.* Ex. D. Hirsch initially rejected this offer, but responded with a formal letter on March 14, 2022, which it marked "FOR SETTLEMENT PURPOSES ONLY" and "SUBJECT TO FRE 408." *Id.* In the letter, Hirsch stated that it considered █████████

3

 and rejected Cambria's proposal for ███████████, which it viewed as ██████████████████. *Id.* Hirsch, however, suggested that ████████████████ might be feasible. *Id.* Before it would consider █ ████████████, however, Hirsch demanded from Cambria ████████ ████████████████████████████████████ ████████████████████████████████████ ████. *Id.* Cambria rejected this proposal. Counsel for both parties consequently asked the Court to adjourn the settlement conference then scheduled for April 28, 2022. [Dkt. 67.]

In August 2022, the Patent Trial and Appeal Board (PTAB) denied Hirsch's petitions to invalidate Cambria's asserted patents. Approximately one month later, this Court issued an opinion and order construing pertinent claims in Cambria's asserted utility patents in this case. [Dkts. 88, 89.] The Court denied without prejudice Hirsch's request for a finding of indefiniteness and rejected Hirsch's proposed claim constructions, adopting a plain and ordinary construction of the six disputed claim terms. *Id.* Following the Court's and PTAB's rulings, Hirsch reopened settlement discussions by sending an updated counterproposal—marked "FOR SETTLEMENT PURPOSES – SUBJECT TO FRE 408"—to Cambria's December 2021 proposal. Reig Decl. Ex. E. In that proposal, Hirsch also indicated that it was ████████████, and as a result, could only pay to Cambria ███████

█████████████████. *Id.*  Hirsch also said that it ████████████████████

██████████ would not agree to any press release regarding the settlement.  *Id.*

The Court held a settlement conference with the parties on October 28, 2022.

The discussion with the Court primarily focused on ██████████████████████

██████████████████ as part of any negotiated resolution.  *Id.* ¶ 12.  ████████████

████████████████████████████████████████████████████████

██████████████████.  Hirsch's counsel, however, represented that ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████.  *Id.*  The parties, therefore, reached an impasse and the settlement

conference was adjourned.  Nevertheless, at the Court's direction, counsel for the

parties continued to negotiate via email and telephone between October and

November 2022.  *Id.* Ex. F.  Cambria marked each email to Hirsch during this period

"For Settlement Purposes Only" and "Confidential and Subject to Fed. R. Evid. 408."

*Id.*  On November 22, 2022, Hirsch proposed its "final offer," which included ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████.  *Id.*  Hirsch also wanted to keep the settlement agreement

confidential.  *Id.*  Cambria rejected this proposal and the parties moved forward with

discovery.

On March 7 and 8, 2023, Hirsch deposed two of Cambria's executives: Summer Kath, Executive Vice President of Design, and Jon Grzeskowiak, Executive Vice President of R&D and Process Operations. *Id.* Exs. G, H. The depositions covered a wide range of topics, including Cambria's manufacturing processes. *Id.* Before these depositions, Cambria had produced more than 5,000 pages of documents marked "Highly Confidential—Attorneys' Eyes Only" ("HC-AEO") pursuant to the DCO. *Id.* ¶ 15. Cambria also designated both deposition transcripts HC-AEO. Fact discovery closed shortly thereafter.

On March 13, 2023—one business day after fact discovery closed in this case—SQIP sued Cambria in the United States District Court for the Eastern District of Texas, alleging that Cambria-branded products infringed five SQIP patents. *Id.* Ex. A. SQIP filed the EDTX Complaint publicly and not under seal. The EDTX Complaint confirmed that Alex Xie—who appeared before this Court as Hirsch's President at the October 2022 settlement conference—is a member of SQIP and the sole inventor of the utility patents asserted in that case. *Id.* Ex. A ¶¶ 10, 12.[2]

The EDTX Complaint alleged, among other things, that "no later than December 2021 . . . Cambria requested that SQIP grant a license to its portfolio of patents, including the Patents-in-Suit, as part of a settlement offer to resolve Cambria's ongoing litigation against Hirsch Glass." *Id.* Ex. A ¶ 35. SQIP also

---

[2]     Notably, counsel for Hirsch admitted *pro hac vice* in this case is the same counsel who is representing SQIP as *pro hac vice* counsel in the EDTX action.

alleged that "[i]n the fall of 2022, Cambria again requested SQIP to grant Cambria a license to SQIP's patent portfolio, including the Patents-in-Suit, as a component to a settlement offer to resolve the ongoing litigation between Cambria and Hirsch Glass." *Id.* Ex. A ¶ 38.  SQIP further alleged that as part of the settlement efforts, Cambria repeatedly tried to secure licenses to SQIP's full patent portfolio because it knew that its products infringed SQIP's patents.  *Id.* Ex. A ¶ 41.

SQIP also included in the EDTX Complaint several detailed allegations, asserted "on information and belief," about Cambria's manufacturing processes. For instance, SQIP alleged that Cambria's accused products "are made using a computer processor to controllably supply the first mixture to the inner chamber of the mold." *Id.* Ex. A ¶¶ 49-50.  SQIP also alleged that Cambria's accused products "are made by a process that includes depositing a first material having a color into the first crack of the slab, so that the first crack deposited with the first material becomes a vein having a color of the first material."  *Id.* Ex. A ¶ 63.  SQIP further alleged that Cambria's accused products "are made by a process that includes layering different types of composite material . . . while being stirred" or "disrupted." *Id.* Ex. A ¶¶ 76, 90.  And SQIP alleged that Cambria's products are "made by a process that includes supplying a first material to a conveyor belt of a main conveyor device," "moving the first material by use of [a] conveyor belt," and "supplying a second material on top of the first material, while the first material is on [a] conveyor belt."  *Id.* Ex. A ¶¶ 102–104.

On March 20, 2023, Cambria submitted a letter to this Court complaining that Hirsch had improperly disclosed Cambria's settlement position and used Cambria's confidential information in the EDTX Complaint.  At the Court's direction, Cambria filed this motion, which is now fully briefed and before the Court.

On May 1, 2023, the Court held a telephone status conference in this action to discuss several pending motions, including this one.  Based on that telephone conference and without objection by any party, the Court issued an interim order directing all parties to refrain from disclosing, publicizing, or otherwise using in any other proceeding any information obtained solely through or in connection with any settlement discussions between the parties or their counsel in this case except by prior agreement of counsel for the parties, or by order of the Court.  [Dkt. 116.]

## II.    DISCUSSION

Cambria asks this Court to enter an order (i) prohibiting public disclosure of any settlement communications in this case without leave of Court; (ii) requiring Hirsch to demonstrate that it did not misuse information that Cambria designated as HC-AEO to prepare the EDTX complaint; and (iii) requiring Hirsch to pay Cambria costs and fees associated with filing the instant motion.  For its part, Hirsch requests an award of attorney's fees associated with defending the motion. The Court addresses each request in turn.

8

A.    <u>Disclosure of Settlement Communications</u>

Cambria argues that Hirsch improperly disclosed Cambria's confidential settlement position, and more generally information exchanged during the parties' settlement-related communications, in the publicly filed EDTX Complaint.  Cambria asks this Court to order Hirsch and its counsel to refrain from further public disclosure of settlement communications without Cambria's consent or this Court's authorization.  Hirsch does not appear to dispute that it included in the EDTX Complaint information obtained in the context of settlement discussions in this case.  Rather, Hirsch asserts that its disclosure was not improper.

It is noted at the outset that in publicly disclosing in the EDTX action settlement-related information obtained in this case, Hirsch and its attorneys did not—so far as this Court can tell—violate the explicit terms of any statute, rule, regulation, agreement, or court order.  That does not mean, however, that this Court condones the disclosure.  Far from it.  In light of the strong policy favoring the settlement of disputes and the candid communications that must happen to achieve those ends, it is troubling to say the least that the Court needs even to say that parties and their counsel ought to keep confidential settlement communications confidential.  Regardless whether it violated the explicit terms of a court order, agreement, or positive law, Hirsch's and its attorneys' public disclosure of settlement-related communications was inappropriate, irresponsible, contrary to

well-accepted practice, and beneath the dignity of sophisticated counsel engaged in complex federal civil litigation.

Courts have long recognized the strong public interest in encouraging settlement, because non-trial resolutions save all parties substantial costs and they conserve scarce judicial resources. *Bank of Am. Nat. Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986).  For settlement negotiations to be fruitful, parties "must be able to make hypothetical concessions, offer creative *quid pro quos*, and generally make statements that would otherwise belie their litigation efforts." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003).  And parties are unlikely to make such compromises unless they are confident that the contents of their discussions will not be used against them.  *Id.*  Without the assurance of confidentiality, parties "will feel constrained to conduct themselves in a cautious, tight-lipped, non-committal manner more suitable to poker players in a high-stakes games than to adversaries attempting to arrive at a just resolution of a civil dispute." *In Re Paulsboro Derailment Cases*, Civ. No. 13-00784 (RBK), 2015 WL 12835672, at *2 (D.N.J. Aug. 18, 2015) (quoting *Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*, 608 F.2d 928, 930 (2d Cir. 1979)); *see also United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 858 (2d. Cir. 1998) ("Few cases would ever be settled if the press or public were in attendance at a settlement conference or privy to settlement proposals.  A settlement conference is an opportunity for the parties, with the court

acting as an impartial mediator, to have a frank discussion about the value of avoiding a trial.  During these colloquies the parties are often called upon to evaluate both the strengths and weaknesses of their respective cases.").  Accordingly, "[t]here exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations."  *Goodyear Tire & Rubber Co.*, 332 F.3d at 980.

The public interest in maintaining confidentiality of settlement negotiations also is reflected in Federal Rule of Evidence 408.  Rule 408 expressly prohibits admission of settlement discussions at trial "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408.  The purpose of Rule 408, then, is to encourage compromise and settlement of disputes, which would be difficult or impossible if such evidence were admissible at trial.  *Id.*, Advisory Committee Notes; *Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 526 (3d Cir. 1995) ("The policy behind Rule 408 is to encourage freedom of discussion with regard to compromise.").  Though Rule 408 governs evidence admissible at trial, courts have relied on the policy underlying the rule to prevent disclosure of confidential settlement discussions in pleadings.  *See Philadelphia's Church of Our Savior v. Concord Twp.*, Civ. No. 03-1766, 2004 WL 1824356, at *2 (E.D. Pa. July 27, 2004) ("While Rule 408 does not apply to pleadings directly, repeated decisions from this Court have held that allegations in a complaint may be stricken, under Rule 12(f), as violative of

11

these policies."); *Washington v. Pac. Summit Energy LLC*, Civ. No. 20-290, 2021 WL 229653, at *4 (S.D. Tex. Jan 21, 2023) ("Although Rule 408 patently applies to evidence, the rationale for the exclusion of evidence equally applies to excluding confidential settlement discussion from being revealed in pleadings.").

Moreover, "confidential settlement communications are a tradition in this country," *Goodyear Tire & Rubber Co.*, 332 F.3d at 980, and a well-accepted principle in this district.  For instance, courts in this district have sealed documents containing settlement discussions, finding that settlement communications and negotiations are "the kind[s] of material that [are] generally considered confidential by courts."  *Miller Indus. Towing Equip. Inc. v. NRC Indus.*, Civ. No. 21-08158 (NLH), 2023 WL 2326918, at *11 (D.N.J. Mar. 2, 2023); *accord Morgan v. Wal-Mart Stores, Inc.*, Civ. No. 14-4388 (MAS), 2015 WL 3882748, at *2 (D.N.J. June 23, 2015) (granting motion to seal plaintiff's contingent fee application because "disclosure would result in the dissemination of confidential settlement negotiations and confidential settlement amounts" and "the public has no legitimate interest in gaining access to this confidential information").  Courts in this district also have emphasized the importance of confidentiality during court-sponsored settlement proceedings.  *See In Re Paulsboro Derailment Cases*, 2015 WL 12835672, at *2 ("It is well recognized that confidentiality in court-sponsored settlement processes is essential in order to foster settlement and preserve judicial resources.").  *See also* L. Civ. R. 301.1(e)(5) ("All information presented to the mediator shall be deemed

confidential unless requested otherwise and shall not be disclosed by anyone, including the mediator, without consent, except as necessary to advise the Court of an apparent failure to participate. . . . No statement made or documents prepared for mediation shall be disclosed in any subsequent proceeding or construed as an admission.").  It is, accordingly, a well-accepted and well-understood tradition that information exchanged during discussions held for the purpose of settlement should be kept confidential.

In this case, the parties began discussing settlement in 2021 and in the ensuing months continued to exchange their settlement positions through emails, letters, and telephone conversations.  And the parties consistently indicated that their communications were for settlement purposes only, *i.e.*, not to be used for any other purpose.  In December 2021, Cambria communicated via telephone its opening settlement offer, including a proposal ██████████████████████████ ████████, which Cambria believed would be kept confidential and used only for the purpose of settling the case.  Reig Decl. ¶ 11.  Before and after conveying its initial settlement offer, Cambria marked each email to Hirsch "FRE 408 Communication," or "For Settlement Purposes Only" and "Confidential and Subject to Fed. R. Evid. 408."  *Id.* Exs. B, F.  Hirsch also marked its response letters to Cambria's settlement offer, "FOR SETTLEMENT PURPOSES ONLY" and "SUBJECT TO FRE 408," or "FOR SETTLEMENT PURPOSES – SUBJECT TO FRE 408."  *Id.* Exs. D, E. In October 2022, the parties attended a settlement conference before this Court,

during which they discussed various potential compromises to resolve the litigation. Specifically, as described above, the Court brokered extensive discussions between the parties regarding Cambria's proposal for ███████████████████████. *Id*. ¶ 12.  The Court is firmly convinced that the parties engaged in these discussions—either under the Court's direct supervision or informally between themselves at its direction—solely for the purpose of settling the case.  In these circumstances, the parties clearly intended and thus reasonably expected that those discussions would remain confidential and not be used against them in future litigation.

Hirsch offers a series of explanations for why its disclosure was not improper. First, despite Cambria having consistently marked its settlement communications as confidential, for settlement purposes only, and subject to Rule 408, Hirsch argues that Cambria had no basis for its "expectation" that its settlement position would be confidential.  [Dkt. 110] at 7.  In that regard, Hirsch says that it had no obligation— either under a court order or agreement by the parties—that prevented Hirsch from publicly disclosing Cambria's settlement position in this case.  *Id*.  Hirsch also argues that Rule 408 did not preclude Hirsch from revealing Cambria's settlement position in a publicly filed complaint.  *Id*. at 8.  Hirsch argues that Rule 408 is a rule of evidence only governing admissibility of settlement discussion at trial.  *Id*.  Hirsch also argues that even if Rule 408 applies, the disclosures in the EDTX Complaint

were "not used to 'prove' liability, but rather for the allowed purpose of illustrating SQIP's good faith belief that Cambria is liable for patent infringement." *Id.* at 8.

Hirsch's justifications are unpersuasive. For the reasons explained, Hirsch's assertion that Cambria unreasonably expected that settlement communications would remain confidential is wrong. Since the parties began engaging in settlement discussions, they consistently noted that their communications were for settlement purposes only and that they were subject to Rule 408. *See* Reig Decl. Exs. B, D, E, and F. Moreover, Hirsch's position is belied by its own insistence that "[t]he settlement would be confidential" when it rejected Cambria's proposal, as part of a settlement package, to issue a press release announcing the parties' settlement. *Id.* Ex. E.[3] It is true that the parties did not sign a non-disclosure agreement that specifically prohibited them from disclosing the contents of the settlement negotiations, and that the Court did not in the DCO specifically bar Hirsch from using Cambria's settlement position for any purpose other than for settlement. But the parties and the Court did not have to. As explained above, it is a well-recognized practice in this Court and throughout the country that parties' settlement conversations should be kept confidential to encourage them to engage in frank discussions to settle disputes. Hirsch is a sophisticated party represented by

---

[3]    Likewise, as Cambria notes, Hirsch presumably expected and did not want Cambria to disclose publicly its statement in back-and-forth settlement discussions that Hirsch was ████████████ Cambria appropriately preserved Hirsch's reasonable expectation of confidentiality, but Hirsch and its counsel unfortunately did not respond in kind.

sophisticated counsel well-versed in the public policy favoring settlement.  The settlement discussions between Cambria and Hirsch should have been kept confidential.

Additionally, that Hirsch did not disclose any statements that were made only in the context of the actual settlement conference in this Court is an insufficient explanation.  The bilateral discussions between the parties assuredly were in preparation for and in anticipation of the settlement conference with this Court.  And the Court specifically instructed the parties to engage in settlement discussions leading up to and following the settlement conference.  Moreover and more importantly, settlement negotiations should remain confidential whether conducted under the Court's directions or informally between parties.  *See Goodyear Tire & Rubber Co.*, 332 F.3d at 980 (acknowledging the strong public interest in maintaining confidentiality of settlement negotiations "whether settlement negotiations are done under the auspices of the court or informally between the parties.").  If the public policy favoring confidentiality of settlement negotiations applied only to court-sponsored settlement conferences, parties would be discouraged from engaging in informal discussions to achieve settlement, frustrating the interest in non-trial resolution of disputes.  Accordingly, Hirsch's explanation that it did not reveal any information that was disclosed exclusively during the October 28 settlement conference is unpersuasive.

The Court also rejects Hirsch's position that Rule 408 has no role to play here. Though Rule 408 is a rule of evidence governing admissibility of evidence at trial, courts have relied on the rule's underlying purpose to strike or prevent disclosure of certain statements contained in pleadings because they revealed parties' confidential settlement negotiations and thus would not be admitted under Rule 408. *See Philadelphia's Church of Our Savior*, 2004 WL 1824356, at *2; *Washington*, 2021 WL 229653, at *4. The EDTX Complaint expressly alleges that Cambria's settlement position "is indicative of Cambria's knowledge of the Patents-in-Suit and Cambria's knowledge that certain of its products infringe such patents." Reig Decl. Ex. A ¶ 41. Hirsch says that this allegation was not used to "prove" liability, but to illustrate SQIP's good-faith belief that Cambria is liable for patent infringement. [Dkt. 110] at 8–9. In the Court's view, however, SQIP appears to be using Cambria's settlement position precisely to allege that Cambria willfully infringed SQIP's portfolio of patents. And in any case, the Court concludes that Rule 408's underlying purpose to encourage settlement warranted protection of Cambria's settlement position from public disclosure.[4]

For the reasons described, the Court concludes that Hirsch's disclosure was inappropriate and so the Court grants Cambria's request to prohibit Hirsch and its

---

[4]     Obviously, the disclosure of confidential settlement communications in this case was made in the EDTX Complaint filed in another court. Any action regarding that pleading is the province of the United States District Court for the Eastern District of Texas.

counsel from further public disclosure of the parties' settlement communications or negotiations in this case.  In doing so, the Court makes two additional observations. First, Hirsch does not object to such an order on a going-forward basis.  Second, the Court already has entered an interim order granting exactly that relief; as a result, the Court now makes final the status quo effected on an interim basis through its May 2023 order.

Though the Court recognizes again that Hirsch did not as a technical matter violate any specific non-disclosure agreement, court order, statute, or rule, the Court nevertheless concludes that Hirsch's disclosure in the EDTX Complaint was contrary to the strong public policy favoring settlement of disputes, the spirit of Rule 408, and well-established practice and tradition in this Court and others.  The disclosure should not have happened.

### B.    Alleged Disclosure of Cambria's Designated HC-AEO Information

The Court turns next to Cambria's request for a Court order requiring Hirsch to demonstrate that Cambria's designated HC-AEO information was not misused to prepare the EDTX Complaint.  The Court grants Cambria's request, and orders Hirsch to submit, on an *ex parte* basis for the Court's review *in camera*, specific and detailed materials demonstrating the independent bases for certain allegations in the EDTX Complaint regarding Cambria's manufacturing processes.

The DCO entered in this case provides that any materials designated HC-AEO may be used only "for prosecuting, defending, or attempting to settle th[is]

litigation." DCO ¶ 7.1.  The DCO excludes from protection any information in the public domain at the time of disclosure and any information known to Hirsch before its disclosure. *Id.* at 4.  However, the DCO provides that if the accuracy of such information is "confirmed only through the review of [HC-AEO material], then the confirmatory information shall not be considered to be in the public domain." *Id.* Hirsch, as the receiving party of the HC-AEO information, bears the "burden of proving prior possession or prior knowledge of such Protected Material obtained from a public source." *Id.* at 5.

Here, given both the timing of the EDTX Complaint and the substance of the allegations in it, the Court has serious concerns about whether information subject to the DCO's protection was used impermissibly in drafting the complaint.  As to timing, the record reflects the following relevant chronology:

- Before March 7, 2023:  Cambria produced 5,129 pages of documents marked HC-AEO.  Reig Decl. ¶ 15.

- March 7, 2023:  Hirsch deposed Summer Kath, Cambria's Executive Vice President of Design.  During the deposition, Hirsch asked Ms. Kath detailed questions about Cambria's manufacturing processes.  The entire deposition was designated HC-AEO.  *Id.* Ex H.

- March 8, 2023:  Hirsch deposed Jon Grzeskowiak, Cambria's Executive Vice President of R & D and Process Operations.  During the deposition, Hirsch asked Mr. Grzeskowiak similar detailed questions about Cambria's manufacturing processes.  The entire deposition was designated HC-AEO. *Id.* Ex G.

- March 10, 2023:  Last day of fact discovery in this case.  [Dkt. 98.]

- March 13, 2023:  SQIP filed the EDTX Complaint against Cambria in the United States District Court for the Eastern District of Texas, alleging that

Cambria-branded products infringed five of SQIP's patents.  Reig Decl. Ex. A.

SQIP filed its complaint against Cambria only one business day after the close of fact discovery in this case, and less than a week after Hirsch deposed Cambria's witnesses and asked highly technical questions about Cambria's manufacturing processes.

As to substance, the EDTX Complaint—to support SQIP's claims that Cambria infringed its process patents—contains specific allegations about Cambria's technical manufacturing processes that appear to correspond with specific topics that Hirsch asked about during contemporaneous HC-AEO depositions in this case. The HC-AEO information includes Cambria's ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████. *Id.* Ex. A ¶¶ 49–50, 63, 76, 90, 102–104.  In other words, the technical allegations in the EDTX Complaint with which Cambria takes issue were reflected in Kath's and Grzeskowiak's deposition testimony that had been obtained just days earlier, and in other materials designated HC-AEO that Cambria had produced in discovery.

Hirsch argues that it could not have used Cambria's HC-AEO information from this case to draft the EDTX Complaint because counsel preparing the EDTX complaint had no access to the deposition testimony and had substantially completed drafting before the conclusion of the depositions.  Hirsch's counsel who prepared the EDTX Complaint submitted a declaration stating that he drafted the allegations

concerning two of the patents on March 6 and 7 and sent a draft to his client around mid-day on March 7, the day of Summer Kath's deposition.  [Dkt. 110-1 ("Forbis Decl.")] ¶ 5.  Counsel also states that he drafted the rest of the complaint on March 8, 2023, the day of Jon Grzeskowiak's deposition, and sent a draft to his client on March 9, 2023.  *Id.* ¶ 6.  Counsel says that the initial drafts of the EDTX Complaint were substantially unchanged until the time of filing, and that he did not have any access to the depositions of Cambria's witnesses.  *Id.* ¶¶ 5–6.  Additionally, Hirsch's counsel who took the two depositions states that he did not participate in the drafting of the EDTX Complaint and did not tailor any deposition questions to any of the allegations in the complaint.  [Dkt. 110-2 ("Robinson Decl.")] ¶ 4.  Counsel also states that he did not confirm any of the infringement allegations in the EDTX Complaint before it was filed.  *Id.*

The Court concludes that counsel's declarations are not sufficient to satisfy Hirsch's heavy burden of demonstrating an independent basis of knowledge for the allegations at issue in the EDTX Complaint.  *See Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Research.*, Civ. No. 15-2044 (AJN), 2017 WL 2418742, at *5 (S.D.N.Y. June 5, 2017) (explaining that plaintiff must show "[i]ndependently verifiable information" to substantiate its allegations in a new complaint that are also found in AEO documents, and that this "heavy burden cannot be satisfied merely through [plaintiff's] own attestation").  Indeed, Hirsch did not submit any drafts of the EDTX Complaint or any other documents or information

supporting or identifying independent sources of the allegations regarding Cambria's technical manufacturing processes.

Hirsch asserts that it relied on (i) SQIP's principal, Alex Xie's "extensive expertise in the quartz slab manufacturing industry" and (ii) ██████████████ ███████████████████████████████████████ as part of a settlement offer in this case, which SQIP interpreted to believe that there is at least a risk that Cambria is infringing SQIP's patents.  [Dkt. 110] at 11.  But Hirsch does not provide any evidence of Xie's "technical analysis," including how Xie was "able to infer the manner in which Cambria's accused products were made" to the level of detail alleged in the EDTX Complaint.  *Id.* at 12, 22.

It may well be that the EDTX Complaint was prepared without reliance on any HC-AEO information obtained in this litigation.  It may also be true that Hirsch had a good-faith basis to ask the questions that it did during the depositions of Cambria's witnesses for the sole purpose of defending this litigation and not for the improper purpose of developing the affirmative infringement allegations set forth in the EDTX Complaint.  But even if Hirsch and its counsel had every legitimate reason to ask the questions it did for the purpose of defending this lawsuit, Hirsch still is not entitled to reveal any confidential information obtained in this litigation for any purpose other than "for prosecuting, defending, or attempting to settle the litigation."  DCO ¶ 7.1.

Because the EDTX Complaint contains information that also appears in Cambria's HC-AEO designated materials in this case, Hirsch has the burden to show that it had an independent basis for the allegations in the EDTX Complaint. The DCO does not and would not have prevented Hirsch from using any information known to Hirsch before Cambria's disclosure or in the public domain at the time of Cambria's disclosure. *Id.* But as the recipient of the HC-AEO information in these circumstances, Hirsch has the "burden of proving prior possession or prior knowledge of [HC-AEO material] obtained from a public source." *Id.* at 5. Although the Court is reserving judgment, it presently harbors serious concerns. On review of the record before it, the Court concludes that Hirsch must do substantially more to meet its burden.

For the reasons stated, the Court orders Hirsch to submit *ex parte* the following materials for the Court's review *in camera*:

- Any drafts of the EDTX Complaint, including metadata showing the date and time that each document was last modified, any redlines and comments, and any transmittal emails attaching the drafts;

- An affidavit or declaration from Alex Xie or another Hirsch or SQIP principal explaining the analysis conducted in advance of the filing of the EDTX Complaint and how SQIP developed the allegations regarding Cambria's manufacturing process independent of materials and information obtained in discovery in this case;

- Any evidence of the technical analysis conducted by Alex Xie in preparation for and prior to the filing of the EDTX Complaint that would demonstrate SQIP's independent revelation of Cambria's technical manufacturing processes alleged in the EDTX Complaint; and

- Any other evidence demonstrating independent bases for SQIP's allegations relating to Cambria's manufacturing process in the EDTX Complaint.

Hirsch is directed to make this submission within 30 days of this Order.  Upon review of Hirsch's submission, the Court will take further appropriate action.[5]

    C.    <u>Cambria and Hirsch's Requests for Attorney's Fees and Costs</u>

Finally, Cambria and Hirsch both ask the Court to award them attorney's fees associated with litigating this motion.  With respect to the issue regarding the disclosure of Cambria's settlement position, the Court denies both parties' requests. With respect to the alleged improper use of materials and information designated HC-AEO, the Court denies both parties' requests, without prejudice, pending the Court's *in camera* review of Hirsch's submission that the Court orders herein.

Rule 37(b)(2) provides that the Court may issue sanctions against a party that fails to obey a discovery order.  And "[i]nstead of or in addition to the orders [enumerated in Rule 37(b)(2)(A)], the [C]ourt must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C). Moreover, "[t]he Court also has the inherent power to impose a variety of sanctions it deems appropriate in a particular case for abuses of the judicial process." *Mogavero*

---

[5]    The Court recognizes that Hirsch's submission will likely include privileged information, and therefore the Court will review Hirsch's submission *in camera*.

*v. Seterus, Inc.*, Civ. No. 15-1314 (WHW), 2015 WL 7300501, at *2 (D.N.J. Nov. 18, 2015). This inherent power includes the ability to impose sanctions and attorney's fees. *Id.*

In this case, with respect to Cambria's motion regarding Hirsch's disclosure of settlement-related information, the Court does not find that imposing fees against either party is warranted or appropriate. Although the Court concludes that Hirsch inappropriately disclosed Cambria's settlement position (and for that reason alone denies Hirsch's own request for fees as to this issue), the Court again notes that the disclosure did not expressly violate any specific order from this Court or agreement between the parties. Though the Court does not condone such behavior and will not tolerate it going forward, it will not impose fees on Hirsch for its prior disclosure.

As for Cambria's motion regarding the alleged disclosure of HC-AEO materials in the EDTX Complaint, the Court presently does not have sufficient evidence to determine whether any violations of the DCO have occurred. Accordingly, the Court will reserve judgment and revisit this issue upon Hirsch's submission of its independent bases for the allegations in the EDTX Complaint. Accordingly, the parties' requests for fees on this issue are denied without prejudice.

## III.   CONCLUSION

For the reasons stated, it is on this 8th day of September, 2023,

ORDERED that Cambria's motion for an order prohibiting further public disclosure of any settlement communications in this case without the consent of all parties or leave of Court is GRANTED; and it is further

ORDERED that Cambria's motion for an order directing Hirsch to demonstrate that Cambria designated HC-AEO information was not misused to prepare the EDTX complaint is GRANTED; and it is further

ORDERED that within 30 days of the date of this Order, Hirsch shall submit to the Court, *ex parte*, the following:

- Any drafts of the EDTX Complaint, including metadata showing the date and time that each document was last modified, any redlines and comments, and any transmittal emails attaching the drafts;

- Affidavit or declaration from Alex Xie or another Hirsch or SQIP principal explaining the analysis conducted in advance of the filing of the EDTX Complaint and how SQIP developed the allegations regarding Cambria's manufacturing process independent of materials and information obtained in discovery in this case;

- Any evidence of the technical analysis performed by Alex Xie in preparation for and prior to the filing of the EDTX Complaint that would demonstrate SQIP's independent revelation of Cambria's technical manufacturing processes alleged in the EDTX Complaint; and

- Any other evidence demonstrating independent bases for SQIP's allegations relating to Cambria's manufacturing process in the EDTX Complaint; and it is further

ORDERED that contemporaneous with its *ex parte* submission, Hirsch shall file publicly via CM/ECF a notice of the submission; and it is further

ORDERED that all parties shall be prohibited from using information designated HC-AEO for any purpose other than this case, unless a party can demonstrate that the information is in the public domain or known to the party prior to the disclosures (*see* DCO ¶ 3); and it is further

ORDERED that both parties' requests for fees as they relate to the disclosure of Cambria's settlement position are DENIED; and it is further

ORDERED that both parties' requests for fees as they relate to the alleged use of Cambria's confidential information to prepare the EDTX Complaint are DENIED without prejudice; and it is further

ORDERED that the Clerk of the Court shall mark the motion filed at Dkt. 107 closed.


_____
J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE

27